**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JOSHUA D. JONES, JOEY PYCKE, | ) | |
| EDWARD PURCELL, | ) | |
| CHARLES R. IRONS, | ) | |
| RONDA THOMPSON, and | ) | **CLASS ACTION COMPLAINT** |
| KELLY SCHREIBER et al., | ) | |
| | ) | **FLSA COLLECTIVE ACTION** |
| Plaintiffs | ) | **COMPLAINT UNDER** |
| | ) | **29 USC § 216(b)** |
| | ) | |
| vs. | ) | CASE NO. 1:11-cv-1431 JMS-DKL |
| | ) | |
| C & D TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant | ) | |

*PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT*

Come now the Plaintiffs, by counsel, and submit the following Brief in Support of their

Motion for Partial Summary Judgment.

## I.  INTRODUCTION

This case is particularly suited for disposition on summary judgment.  All material facts

have been stipulated.  The case is planned for a trial to the Court, anyway.  The outcome hinges

upon the Court's interpretation of Section 3(o), 29 USC § 203(o), of the Fair Labor Standards

Act ("FLSA") and a corresponding provision in Defendant C&D Technologies, Inc.'s ("C&D")

collective bargaining agreement with the Plaintiffs' Union concerning compensation for

changing into safety clothing and equipment at the beginning of each work shift and showering

after each work shift.

The Plaintiffs work for C&D at an industrial battery manufacturing plant in Attica,

1

Indiana.  Plaintiffs work in toxic materials, particularly lead.  Both C&D and government regulations require Plaintiffs to don protective clothing and equipment prior to working and to doff the protective clothing and shower after working.  Applying the FLSA's ordinary principles, C&D would be required to pay Plaintiffs each workday from the time they beginning donning their protective clothing until the time they doff the clothing, shower and change into their street clothes.  Section 3(o) provides a limited exception (an "exclusion") to this rule, but only if C&D and the Plaintiffs' Union collectively bargained and agreed to exclude the clothes changing and washing time from the Plaintiffs' compensable workday.

C&D has admitted that it has not been paying Plaintiffs wages for all their time each shift from the moment they don protective clothing to the moment they shower and return to their street clothes.  Instead, C&D has alleged Section 3(o) of the FLSA as a defense to its failure to pay full wages for the Plaintiffs' entire workday.  Section 3(o) provides no relief to C&D.

First, C&D's collective bargaining agreement with Plaintiffs' Union contains an express provision, Section 18(B), which **includes** clothes changing and showering as part of the Plaintiffs' compensable workday.  Section 3(o) only helps C&D if it had an agreement to **exclude** clothes changing and showering from the workday.  Second, C&D has admitted that it and the Union have no evidence at all that the two sides have otherwise bargained over clothes changing and showering, and that the express language of their collective bargaining agreement is the only evidence of any agreement regarding the inclusion of clothes changing and showering in the workday.  Finally, C&D has admitted that it was not paying wages to Plaintiffs under a system whereby C&D measured the workday from a first principal activity until a last principal activity, as required under the FLSA, but instead C&D was paying Plaintiffs wages based upon

2

scheduled hours of work.  C&D's payment scheme violates the FLSA in and of itself.  The FLSA requires that wages be paid based upon actual hours of work, not estimated or scheduled hours of work.

The Court can make quick work of its summary judgment ruling by issuing two challenges to C&D:

1.    Ask C&D to provide a single case, regulation or even a wage and hour opinion letter that would provide the benefit of a Section 3(o) exclusion to an employer who expressly included rather than exclude the activities of clothes changing and washing from its employees' compensable workday in a collective bargaining agreement.

2.    Ask C&D to provide a single case, regulation or wage and hour opinion letter that would permit an employer to adjust its employees' wages downward through a payroll scheme in which the employer pays wages only for scheduled hours of work rather than a greater amount owed based upon actual hours worked.

Based upon the undisputed and stipulated facts, the Plaintiffs must prevail on summary judgment.  A summary judgment ruling in Plaintiffs' favor will streamline the litigation and will allow the Court and the parties to focus on a trial to determine damages.

## II.  STIPULATED FACTS

For purposes of the parties' cross motions for partial summary judgment on the briefing issues outlined in the Court's Order of February 23, 2012 (Docket Number 49), Plaintiffs and Defendant entered into the following stipulations which were filed with the Court on July 13, 2012 (Docket Entry 78):

1.    C & D Technologies, Inc.'s ("C&D"or the "Company") hourly manufacturing employees at its Attica facility have long been represented by the International Union of Electrical Workers, and Communication Workers of America IUE-CWA Local No. 84950 ("the

Union") as their exclusive collective bargaining representative. A true and accurate copy of the current Collective Bargaining Agreement between C&D and the Union was attached as Exhibit A (Docket Entry 78-1) to the parties' July 13, 2012 Factual Stipulations.

2.     C&D's collective bargaining agreement with the Union contains no express terms excluding from compensable time worked any time spent in changing clothes or washing at the beginning or end of each work day.

3.     C&D's collective bargaining agreement with the Union does contain express terms regarding changing clothes and washing, which reads:

**ARTICLE 18 – Health and Safety**

(B)     To ensure and safeguard the health and safety of all employees the Company has installed and maintains certain protective facilities and provides time for their use. An allowance time of five (5) minutes is provided between the start of the shift and the time and (sic) employee must be at his work station for changing into acid resistant or dust proof clothing. In addition, a wash-up allowance time of five (5) minutes before lunch and ten (10) minutes wash-up and shower period before quitting time is given to all employees. A fifteen minute rest period in the midmorning and mid-afternoon is given to all employees. The allowances for changing clothes, wash-up, shower and rest periods must be observed for the purposes for which they are established.

Article 18 of the 1967 labor agreement between the Company and the Union stated:

**ARTICLE XVIII – Health and Safety**

(B)     To insure and safeguard the health and safety of all employees the Company has installed and maintains certain protective facilities and provides time for their use. An allowance time of five (5) minutes is provided between the start of the shift and the time an employee must be at his work station for changing into acid resistant or dust proof

4

> clothing. In addition, a washup (sic) allowance time of five
> (5) minutes before lunch and ten (10) minutes wash-up and
> shower period before quitting time is given to all
> employees. The allowances for changing clothes, wash-up,
> shower and rest periods must be observed for the purposes
> for which they are established.

Neither the Company nor the Union have located any notes or records reflecting any bargaining over time spent in changing clothes or washing that would substantively change this language from the labor agreement between C&D and the Union since 1967.  A true and accurate copy of the 1967 Collective Bargaining Agreement between C&D and the Union was attached as Exhibit B (Docket Entry 78-2) to the parties' July 13, 2012 Factual Stipulations.

4.      Plaintiffs, employees who work at C&D's Attica, Indiana manufacturing facility work with toxic materials, particularly lead. For safety reasons, clothes changing and showering are activities required by both C&D and governmental regulations.

5.      At C&D's Attica, Indiana manufacturing facility, employees punch a yellow time card upon arrival on site and prior to changing into required protective clothing. Employees punch yellow time cards again upon exit from the facility after completion of all work, and after showering and changing back into personal clothing. C&D does not measure its employees' working time or pay its employees based upon the yellow time card punches.

6.      Barring unusual circumstances (e.g., employee leaves work early, employee works overtime), C&D pays its Attica, Indiana employees based upon the amount of time the employee was scheduled to work—typically an eight-hour scheduled shift. C&D runs three eight-hour shifts, First, Second, and Third. The starting times and quitting times of these shifts are as follows: First = 7 a.m. to 3 p.m.; Second = 3 p.m. to 11 p.m.; Third = 11 p.m. to 7 a.m.

7.      Generally, if C&D paid its Attica, Indiana wages based upon time measured between yellow time card punches rather than pay wages based upon the eight-hour shift schedule, C&D would pay its employees for additional time worked whenever those punches fell outside the scheduled shift times stated in paragraph 8 above. Employees have never been paid based on the time between their yellow time card punches.

8.      Additionally, at C&D's Attica, Indiana manufacturing facility, an employee punches a white time card at his/her work station before beginning production work and punches a white time card when leaving his/her work station at the end of a shift. White time cards are used to establish and calculate pay particularly for incentive pay workers and for time spent on special pay rate activities, but C&D does not pay employees based upon the time between the employees' white time card punches. Rather, it pays employees based on the eight-hour scheduled shift.

9.      In chronological order, employees engage in the following activities upon arrival at C&D's Attica, Indiana manufacturing facility: Employees change clothes in a locker room. The employees who wear respirators and/or safety helmets with full-face masks then walk from the locker room to a separate respirator area where employees pick up the respirators and/or safety helmets. Employees then walk to their white time card area. After punching a white time card, the employee travels to his work station, dons their respirator or helmet, if they have one, and begins production work.

10.      In chronological order, employees end a work shift at C&D's Attica, Indiana manufacturing facility by leaving his/her work station and punching out on a white time card. Under the collective bargaining agreement, employees are allowed to punch out on the white

cards ten minutes prior to the end of their scheduled eight-hour shift. The employee then walks to a separate area called the "wash out" room where the employee returns safety equipment, particularly respirators, for cleaning and also can—if dusty—vacuum his/her C&D-provided safety clothing. Next, the employee walks into the locker room where the employee changes out of his/her work clothes, takes a required shower and changes back into his/her personal clothing. The employee leaves the locker room and punches out on a yellow time card before leaving the facility.

11.     C&D pays employees scheduled to work an eight-hour shift a full eight hours of pay, meaning breaks and a lunch during the shift are paid.

12.     Because C&D pays based on a scheduled eight-hour shift, when an employee engages in activities such as traveling, vacuuming clothes, picking up or dropping off respirators/safety helmets, donning or doffing clothes or washing up during the employee's scheduled eight-hour shift, those activities occur on paid time. If these activities are engaged in outside the scheduled eight-hour shift, then employees have not been compensated for such activities.

13.     The parties' stipulations and planned cross motions for partial summary judgment do not concern Plaintiffs' claims related to uncompensated medical testing time.

### III.  LEGAL ARGUMENT

### A.  Standard for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Federal Rules of Civil Procedure 56(c).  However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim.  *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the Plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *North Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 455 (7th Cir. 1996); *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323, 106 S.Ct. At 2553.  The non-moving

8

party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646,649 (7th Cir. 1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *Guenin v. Sendra Corp.*, 700 F. Supp. 973, 974 (N.D. Ind. 1988). In ruling on a summary judgment motion, the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence nor the credibility of witnesses. *Anderson*, 477 U.S. at 249-51, 106 S.Ct at 2511; *North Am. Van Lines, Inc.*, 89 F.3d at 455. However, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Ill. National Bank*, 704 F.2d 361, 367 (7th Cir. 1983).

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. At 1356; *First Nat'l Bank of Cicero v. Lewco Sec. Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586, 106 S.Ct. At 1356. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at

251-252, 106 S. Ct. at 2512.

### B.  C&D's FLSA Section 3(o) Defense Fails Because C&D's Collective Bargaining Agreement Expressly Includes Rather Than Excludes Clothes Changing and Washing From Its Employees' Compensable Workday

29 USC § 203(o) provides:

"Hours Worked-In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."

C&D's collective bargaining agreement with the Union contains an express term describing the compensability of changing clothes and washing (Stipulation 3).  That provision reads:

**"ARTICLE 18 – Health and Safety**

....

(B)    To ensure and safeguard the health and safety of all employees the Company has installed and maintains certain protective facilities and provides time for their use. ***An allowance time of five (5) minutes is provided between the start of the shift and the time and (sic)  employee must be at his work station for changing into acid resistant or dust proof clothing.***  In addition, a wash-up allowance time of five (5) minutes before lunch and ***ten (10) minutes wash-up and shower period before quitting time is given to all employees.***  A fifteen minute rest period in the mid-morning and mid-afternoon is given to all employees.  The allowances for changing clothes, wash-up, shower and rest periods must be observed for the purposes for which they are established."

(emphasis added).  In this case, the Court can make short work of its summary judgment evaluation by simply challenging C&D to provide the Court with a single case, FLSA regulation or even a wage and hour opinion letter which provides protection to an employer under Section 3(o) of the FLSA when the employer has collectively bargained and expressly ***included*** clothes changing and washing in its employees' compensable workday, rather than exclude those

activities from the workday.  No such legal support exists.

C&D raised Section 3(o) as an affirmative defense.  (Docket Entry 28, Affirmative Defense ¶5).  The Court has C&D's collective bargaining agreement (Docket Entry 78-1, Exhibit A to July 13, 2012 Factual Stipulations).  The facts have been stipulated (see Stipulations 2 & 3) and the law is very clear.  Plaintiffs are entitled to a summary judgment ruling in their favor defeating C&D's Section 3(o) affirmative defense.

### 1.  History of Relevant FLSA Provisions

Under the Fair Labor Standards Act, an employer must pay its employees a minimum wage for forty hours of work each week.  29 USC § 206(a).  For any hours worked in excess of forty hours per week, the employer must pay its employees "at a rate not less than one and one-half times the regular rate at which he is employed." *Id.*; § 207(a)(1). The FLSA does not define "work" or "workweek," and as a result, courts have been left to decide whether particular activities engaged in by employees constitute "work" and, if so, whether an employer has violated the FLSA by failing to compensate its employees for those activities. To define the term "work" as it is used in the Act:

> "The United States Supreme Court originally stated that employees subject to the [FLSA] must be paid for all time spent in "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123,* 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944)  Subsequently, the Court ruled that there need be no exertion at all and that all hours are hours worked which the employee is required to give his employer.... *Armour & Co. v. Wantock,* 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944); *Skidmore v. Swift,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944))."

29 CFR § 785.7.  In *Anderson v. Mount Clemens Pottery Co.,* 328 U.S. 680, 690–91, 66 S.Ct. 1187, 1194, 90 L.Ed. 1515 (1946), the Supreme Court defined the statutory workweek as "all

time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace," and held that employers are required to compensate employees for that time.  The Court held that the time necessarily spent by employees walking from timeclocks near the factory entrance gate to their workstations was part of the statutory workweek and, thus, compensable.  *Id.*

In the year following *Mount Clemens,* Congress passed the Portal–to–Portal Act, amending certain provisions of the FLSA and narrowing the coverage of the FLSA "by excepting two activities that had been treated as compensable under prior caselaw:  walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, and activities that are 'preliminary or postliminary' to that principal activity." *IBP, Inc. v. Alvarez,* 546 U.S. 21, 27, 126 S.Ct. 514, 520, 163 L.Ed.2d 288 (2005); *see* 29 USC § 254(a).  "Other than its express exceptions for travel to and from the location of the employee's 'principal activity,' and for activities that are preliminary or postliminary to that principal activity, the Portal–to–Portal Act [did] not ... change [the] Court's earlier descriptions of the terms 'work' and 'workweek,' or ... define the term 'workday.' " *Alvarez,* 546 U.S. at 28, 126 S.Ct. at 520; *see also* 29 CFR § 785.7 ("The Portal–to–Portal Act did not change the rule except to provide an exception for preliminary and postliminary activities.").

> "Accordingly, to the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday, the provisions of [the Portal–to–Portal Act] have no application."

29 CFR § 790.6(a).

Under the FLSA, the "workday" is "the period between the commencement and

completion on the same workday of an employee's principal activity or activities." *Id.* § 790.6(b).

"It includes all time within that period whether or not the employee engages in work throughout

all of that period." *Id.* The FLSA regulations define "principal activities" as those which the

employee is "employed to perform" or those integral and indispensable to a principal activity. *Id.*

§ 790.8.

> "If an employee in a chemical plant, for example, cannot perform his principal activities
> without putting on certain clothes, changing clothes on the employer's premises at the
> beginning and end of the workday would be an integral part of the employee's principal
> activity. On the other hand, if changing clothes is merely a convenience to the employee
> and not directly related to his principal activities, it would be considered as a
> "preliminary" or "postliminary" activity rather than a principal part of the activity."

*Id.* § 785.24(c); *see also Steiner v. Mitchell,* 350 U.S. 247, 252–56, 76 S.Ct. 330, 333–35, 100

L.Ed. 267 (1956) (changing clothes and taking showers in a battery plant, where the

manufacturing process involved the extensive use of toxic materials, was an integral part of the

employees' jobs); *Mitchell v. King Packing Co.,* 350 U.S. 260, 263, 76 S.Ct. 337, 339, 100 L.Ed.

282 (1956) (knife-sharpening activities of workmen in a meatpacking plant before and after their

scheduled shift time were integral and indispensable to their work). In other words, "any activity

that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity.' "

*Alvarez,* 546 U.S. at 37, 126 S.Ct. at 525. "Periods of time between the commencement of the

employee's first principal activity and the completion of his last principal activity on any workday

must be included in the computation of hours worked...." 29 CFR § 790.6; *see Gorman v.*

*Consol. Edison Corp.,* 488 F.3d 586, 591 (2d Cir.2007) (noting that "employees are paid for a

continuous workday—which begins with the first principal activity and ends with the last").

Two years after enacting the Portal-to-Portal Act, Congress amended the FLSA to add

Section 3(o).  29 USC § 203(o).  As described above, Section 3(o) removes from compensability

time spent changing clothes and washing at the start and end of each work day, but Section 3(o)

applies "only if it is agreed to in collective bargaining."  Id.;  *Sandifer v. U.S. Steel Corp*. 678

F.3d 590, 594 (7ᵗʰ Cir. 2012).

### 2.   *The Sandifer v. U.S. Steel Corp. Opinion Greatly Helps the Plaintiffs*

The Court has directed the parties' attention to the Seventh Circuit's recent opinion in

*Sandifer v. U.S. Steel Corp*. 678 F.3d 590 (7ᵗʰ Cir. 2012) (Docket Entries 68 & 81).  The *Sandifer*

decision really helps the Plaintiffs.  Indeed, Judge Posner highlights "the fact that the clothing

exclusion is operative only if it is agreed to in collective bargaining."  *Id*. at 594.

In *Sandifer*, the employer, U.S. Steel, negotiated an exclusion of clothes changing from

compensable work time under Section 3(o) of the FLSA (shower time was not an issue).  *Id*. at

591-592.  Because clothes changing time was negotiated away, the Seventh Circuit ruled that the

time U.S. Steel's employees spent traveling from their locker room to their actual work site was

also not compensable, under the Portal to Portal Act, 29 USC § 254(a), because the employees

would not begin to be paid until they worked their first principal activity of the day.  *Id*. at 596-

597.

The Plaintiffs' circumstances are the exact opposite of the *Sandifer* plaintiffs.  In this

case, the Plaintiffs very definitely did not negotiate away their right to be paid for clothes

changing and washing.  Indeed, the Plaintiffs' Union bargained with C&D to expressly ***include***

clothes changing and showering as part of Plaintiffs' compensable work day.  (Stipulations 2, 3)

Judge Posner's *Sandifer* opinion explains the difference in ways in which employees like the

Plaintiffs in this case and the *Sandifer* plaintiffs would have to be compensated depending upon

14

whether or not their union had negotiated to keep or to give away their right to be paid for clothes changing and showering:

> "The Portal–to–Portal Act exempts from the minimum wage and overtime provisions of the Fair Labor Standards Act "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a). Had the clothes-changing time in this case not been rendered noncompensable pursuant to section 203( *o* ), it would have been a principal activity. But unless changing into and changing out of work clothes are principal activities even when made noncompensable pursuant to section 203( *o* ), the exemption in section 254(a) applies, and U.S. Steel need not compensate for travel time."

*Id*. at 596. Here, the Plaintiffs did not negotiate away clothes changing and showering, so those activities remained compensable, principal activities. This meant that all activity afterward, including travel time to and from locker rooms, remained compensable as well. *Id.*

> "In *Steiner v. Mitchell,* 350 U.S. 247, 252–53, 76 S.Ct. 330, 100 L.Ed. 267 (1956), the Supreme Court held that the term "principal activity or activities" included all activities that are an "integral and indispensable part of the principal activities" for which the employee is employed, and the Court reaffirmed that ruling in *IBP, Inc. v. Alvarez, supra,* 546 U.S. at 37, 126 S.Ct. 514. If an employer requires his employees to don and doff work clothes at the workplace, then donning and doffing are an integral and indispensable part of the workers' main activity (in this case, making steel) and therefore a principal activity. *Steiner v. Mitchell, supra,* 350 U.S. at 256, 76 S.Ct. 330. *Alvarez* held that when this is the case the time the worker spends walking from the locker room to the worksite is not time walking to and from a principal activity, but instead time walking *between* principal activities, and so is not within the exemption created by the Portal–to–Portal Act, just as if the worker were a millwright who inspects, repairs, replaces, installs, adjusts, and maintains mechanical equipment in different parts of the steel mill and to do these tasks must walk from one piece of equipment to another. See *IBP, Inc. v. Alvarez, supra,* 546 U.S. at 37, 126 S.Ct. 514."

*Id*. at 596. Unlike the *Sandifer* plaintiffs, whose compensable work day did not begin until arrival at their work site, the Plaintiffs in this action began their work day when changing into their safety clothing and equipment and Plaintiffs remained on the clock until they showered and changed back into street clothes. Judge Posner commented on the different ways in which the

15

compensable work day would be measured:

> "The Court remarked "the clear implication" of section 203( *o* ) "that clothes changing and washing, which are *otherwise* a part of the principal activity, may be expressly excluded from coverage by agreement." *Steiner v. Mitchell, supra,* 350 U.S. at 255, 76 S.Ct. 330 (emphasis added). That is what happened in this case. Section 203( *o* ) permits the parties to a collective bargaining agreement to reclassify changing time as nonworking time, and they did so, agreeing that the workday would not start when the workers changed their clothes; it would start when they arrived at their work site. If clothes-changing time is lawfully not compensated, we can't see how it could be thought a principal employment activity, and so section 254(a) exempts the travel time in this case."

*Id*. at 596-597.

The *Sandifer* decision was a blow to some groups of plaintiffs who, up to that point, had succeeded in arguing that travel time to and from locker rooms was compensable even if a Section 3(o) collectively-bargained clothes changing and washing exclusion existed.  See *Franklin v. Kellogg Co.*, 619 F.3d 604, 618-619 (6th Cir. 2010); Wage and Hour Opinion Letter No. 2010-2, 2010 WL 2468195 (June 16, 2010).  However, the *Sandifer* opinion is a boon to the Plaintiffs in this case.  Judge Posner's opinion is very clear in its message to C&D -- if C&D wanted to avoid payment for clothes changing, showering and travel time, it had to negotiate with its employees' Union.  Its failure to do so means that the FLSA's ordinary method of calculating the Plaintiffs' paid work day applies, as articulated in *Steiner v. Mitchell,* 350 U.S. at 252–53, 256 and *IBP v. Alvarez*, 546 U.S. at 37, and reiterated in the *Sandifer* opinion.  *Id.* at 594-597.

### 3.  Under the FLSA, Time Spent By Battery Manufacturing Plant Employees Donning and Doffing Protective Equipment and Clothing and Showering is Compensable

As a starting point, the general application of the FLSA would require C&D to compensate its employees for all time worked from the moment the employees began donning

protective equipment and clothing until the time employees donned the protective equipment and

clothing, showered and changed back into personal clothing.  *Steiner v. Mitchell*, 350 U.S. 247,

76 S.Ct. 330 (1956).  Back in the 1950s, the U.S. Supreme Court ruled that time spent by

employees of battery manufacturers donning and doffing protective equipment and clothing and

showering is compensable under the FLSA.  *Id.*  The battery manufacturing industry appears to

have changed little in more than 50 years and the law remains well settled.  C&D employees are

required by C&D and by law to don protective gear and clothing and to shower after work.

(Stipulation 4)  OSHA regulations require the protective gear and the showers for C&D

employees.  29 CFR § 1910.

There is no factual or legal dispute between C&D and the Plaintiffs that Plaintiffs'

donning and doffing of protective equipment and clothing and shower time are "integral and

indispensable" to the Plaintiffs' "principal activities" working at C&D's battery manufacturing

facility.  (Stipulation 4).  *Steiner*, 350 U.S. at 253; *IBP v. Alvarez*, 546 U.S. at 33-34.

In a circumstance where workers in a battery plant have to use dangerously caustic and

toxic materials (lead) and were compelled by circumstances including vital considerations of

health to change clothes and to shower in facilities which the employer was required by law to

provide, such donning and doffing of protective gear and clothing and showering are an integral

and indispensable part of the employee's principal activity and are, therefore, compensable under

the Portal to Portal Act.  *Steiner*, 350 U.S. at 252-255.

It takes only a quick read of the *Steiner* opinion to recognize that the facts and the legal

issues in this litigation are identical to those in the *Steiner* case.  The employees in *Steiner* were

being cheated out of 30 minutes pay each day, losing ten minutes changing time at the beginning

of a shift and twenty minutes changing and showering after a shift.  *Steiner*, 350 U.S. at 251-252.

Because C&D did not negotiate an agreement with Plaintiffs' Union to exclude clothes changing and showering from the Plaintiffs' compensable work day, Section 3(o) of the FLSA does not apply.  Again, this means the FLSA's general rule and ordinary method of calculating the Plaintiffs' paid work day applies.  *Steiner,* 350 U.S. at 252–53, 256; *IBP v. Alvarez*, 546 U.S. at 37; *Sandifer,* 678 F.3d at 594-597.  In explaining its *Steiner* decision, the Supreme Court thought it significant that the employer and union had not collectively bargained for a Section 3(o) exclusion of clothes changing and washing.  *Steiner*, 350 U.S. at 255; *Sandifer*, 678 F.3d at 596.  Plaintiffs stand in the same position as the plaintiffs in *Steiner* and must prevail for the same reasons.

### 4.  The Plain Meaning of Section 3(o) and the Express Terms of C&D's Collective Bargaining Agreement Mandate the Conclusion That C&D Did Not Bargain to Exclude Clothes Changing and Washing from Plaintiffs' Measured Work Time

The language of Section 3(o) is unambiguous.  Section 3(o) only applies if an employer and a union collectively bargain to "exclude from measured working time" "any time spent in changing clothes or washing at the beginning or end of each workday."  Applying the "fundamental canon of statutory construction," "words will be interpreted as taking their ordinary, contemporary, common meaning."  *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979); *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945).

The word "exclude" is plain.  "Exclude" is the antonym of "include."  Obviously, C&D cannot qualify for protection under Section 3(o), which hinges upon its "exclusion" of clothes changing and washing from the compensable work day, when the express terms of its own

18

collective bargaining agreement clearly include time for clothes changing after the work day begins and includes time for showering before the work day ends.

Indeed, the parties have stipulated that C&D's collective bargaining agreement does not contain any express term to exclude clothes changing or washing (Stipulation 2) and C&D stipulates that it has no notes or records to reflect that it bargained over clothes changing or washing at any time from 1967 forward (Stipulation 3). The parties stipulated that the only evidence of any collectively-bargained term related to clothes changing and washing exists in Article 18(B) of the current collective bargaining agreement, as that same language existed in all collective bargaining agreements as far back as 1967. (Stipulation 3)

Article 18(B) expressly describes the activity of "changing into acid resistant or dust proof clothing" as occurring "between the start of the shift and the time an employee must be at his work station." Obviously C&D and Plaintiffs' union negotiated clothes changing as an activity that occurs within measured work time as it is an activity that occurs after the start of the employee's shift. Stated differently, the language of Article 18(B) could not be construed to characterize clothes changing as an activity that is preliminary and occurs prior to the start of an employee's measured work day. In the same way, Article 18(B) describes the "wash-up and shower period" as an activity that occurs "before quitting time." No one could ever interpret showering as a postliminary activity when the parties bargained time for the activity to occur prior to "quitting time." "A collective bargaining agreement represents a contractual accord reached between an employer and its employees." *Brentwood Medical Associates v. United Mine Workers of America*, 396 F.3d 237, 240 (3rd Cir. 2005). Courts interpreting collective bargaining agreements will generally use traditional principles of contract interpretation and a *de*

19

*novo* standard of review would apply.  *Chicago Tribune Co. v. NLRB*, 974 F.2d 933, 937-938 (7th Cir. 1992).

The Court should look no further than Article 18(B) of C&D's collective bargaining agreement to rule that Section 3(o) of the FLSA does not apply in this case and does not provide an explanation for C&D's failure to pay its employees for all work time each work day. Plaintiffs are entitled to summary judgment on this issue.

### 5.  C&D's Anticipated Arguments Will Not Permit It to Avoid Summary Judgment

In discovery and in pre-trial discussions with the Court, C&D has indicated that it intends to defend its failure to pay the Plaintiffs for all of their work time by arguing for an indirect application of the FLSA's Section 3(o) exclusion.  Essentially, C&D argues:

1.    C&D's historical failure to pay its employees for all work time somehow justifies an inference that C&D had a "custom or practice" under a collective bargaining agreement to exclude clothes changing and washing time from the compensable workday;

2.    By using the term "allowance" in its collective bargaining agreement, C&D can manipulate the all or nothing "exclusion" language of Section 3(o) by agreeing to pay only a set amount of time for clothes changing and showering; and

3.    By paying wages only for scheduled shift time rather than paying wages for actual, measured work time, C&D can somehow avoid the FLSA's requirements that an employer pay its employees under the "continuous workday method" and that the employer keep accurate records of time worked and compensate employees based upon those recorded hours.

Plaintiffs will address each of these arguments in turn.

### a.  Because C&D's Collective Bargaining Agreement Contains an Express Term Including Clothes Changing and Washing Time Within the Workday, The Court Need Not Consider the Existence of Any Custom or Practice of Non-Compensation

A number of employers have had success arguing for a Section 3(o) exclusion in circumstances in which a collective bargaining agreement does not have an express provision

excluding compensation for clothes changing or shower time, but a long-standing custom or practice of non-payment exists and becomes an implied term of a labor agreement.  See *Salazar v. Butterball, LLC*, 644 F.3d 1130, 1141 (10th Cir. 2011); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 958 (11th Cir. 2007); *Turner v. City of Philadelphia*, 262 F.3d 222, 225-227 (3d Cir. 2001).  These cases do not help C&D.

In *Salazar*, the Court stated, "We hold that, where a CBA is silent on the issue and there is no other agreement regarding donning and doffing pay, a custom or practice of non-compensation exists for §203(o) purposes if there was an established practice of non-compensation prior to the execution of the CBA."  *Salazar*, 644 F.3d at 1141.  C&D's collective bargaining agreement is not silent on the clothes changing and washing issue.  Instead, it expressly includes clothes changing and showering as part of its employees workday.  Here, clothes changing and showering would only be non-compensable if C&D and Plaintiffs' union had negotiated such an agreement to exclude those activities from Plaintiffs' workday.  *Sandifer*, 678 F.3d at 596-597.  Very plainly, the two sides agreed that clothes changing and showering would be included in Plaintiffs' workday.  *Id.*

Because C&D's collective bargaining agreement is not silent and its express term directly contradicts C&D's position in this litigation, the Court has no basis to consider any "custom or practice" arguments related to clothes changing and washing.

### b.  C&D's "Allowance Time"

C&D indicated its intention to argue that its collective bargaining agreement's reference to a five minute "allowance time" for clothes changing and a ten minute allowance time for a wash-up and shower period is relevant to a Section 3(o) exclusion.  Essentially, C&D appears to

argue that it can control the different activities it pays for during the work day (e.g., employee on the clock for five minutes of clothes changing time, then off the clock walking to the respirator area, the white time card clock and to a work station, back on the clock upon arrival at a work station, then off the clock at the end of a shift to walk to the locker room, back on the clock for a ten minute shower, then off the clock a final time).  C&D's argument is flawed both factually and legally.

Factually, C&D's argument suffers from at least the following:

1.  Neither party has evidence to present the Court whether five minutes for clothes changing and ten minutes for showering adequately covers the amount of time necessary for employees to perform those particular activities.  The parties have no stipulations on the issue and no discovery exists studying the time it takes the average employee to change or to shower.

2.  C&D has stipulated that it has not used its yellow time cards or its white time cards to calculate wages owed to the Plaintiffs.  The yellow time cards measure Plaintiffs' time prior to the start of the shift clothes changing until the time employees leave the plant after showering and changing back into personal clothing.  The white time cards would measure only employee time from commencement of production activity at a work station to conclusion of that production work at the end of a shift.  C&D was not paying Plaintiffs based upon either set of records which measure time.  Instead, C&D paid only for scheduled shift time.

3.  Separate from the fact that it would be illegal (see discussion below), C&D's collective bargaining agreement contains no provision whereby Plaintiffs have agreed to be paid only for scheduled hours of work rather than actual hours of work.

Legally, the FLSA would never permit C&D to pay its employees based upon some lesser "allowance time" rather than pay wages based upon actual time worked.  A District Court in Arkansas recently dispensed with a similar payroll scheme in *Helmert v. Butterball, LLC*, 805 F.Supp.2d 655, 662-667 (E.D. Ark. 2011).  What C&D calls "allowance time," Butterball called

"plug time."  The *Helmert* court expressly rejected Butterball's argument that it could pay

employees for a "fixed, reasonable amount of time to conduct donning and doffing activities"

rather than pay wages for that actual time it took to conduct the activity.  *Id.*  That court held:

> "It is undisputed that Butterball compensates its employees for six minutes per day for
> donning and doffing, regardless of the amount of time that the employees actually spend
> doing so. Butterball contends that the six minutes per day is a reasonable amount of time
> for donning and doffing, Butterball refers to this mode of payment as "plug time." In its
> motion for summary judgment, Butterball asks the Court to dismiss all of the plaintiffs'
> claims for time other than a fixed, reasonable amount of time to conduct
> donning-and-doffing-related activities. In other words, Butterball asks the Court to
> determine as a matter of law that a plug time method of payment complies with the FLSA
> and the Arkansas Minimum Wage Act.  The Court declines to do so.
>
> It is clear from the Supreme Court's decision in *Alvarez* that employers are to record and
> pay employees for actual hours worked—in other words, all of the time between an
> employee's first principal activity and last principal activity that is not otherwise excluded
> under the Act.  See *supra* Part II; see also *Perez v. Mountaire Farms*, 610 F.Supp.2d 499,
> 522 (D.Md.2009) ("I find and conclude that any activity that occurs between the initial
> donning and final doffing ... is compensable."), aff'd in part, 650 F.3d at 376–77, 2011
> WL 2207110, at *17; see, e.g., *Williams v. Tri–County Growers, Inc.*, 747 F.2d 121, 128
> (3d Cir.1984) (finding that a farm labor contractor who used a "picking ticket" to estimate
> the number of hours its employees worked violated the FLSA, "which requires employer
> to maintain accurate records to ensure that all workers are paid the minimum wage for
> every hour worked"), abrogated on other grounds by *Martin v. Cooper Elec. Supply Co.*,
> 940 F.2d 896 (3d Cir.1991); *Wirtz v. Williams*, 369 F.2d 783, 785 (5th Cir.1966)
> (determining that the employer did not comply with the overtime compensation
> requirements of the FLSA when the employer did not record the actual amount of time its
> truck drivers spent en route but rather estimated how much time each trip should take)."

*Helmert*, 805 F.Supp.2d at 662-663 (footnotes omitted)

"An employer may not compensate employees based on the amount of time a reasonably

efficient employee would spend donning and doffing if the actual time is greater and the result is

that the compensation falls below the minimum wage and overtime requirements of the FLSA."

*Helmert*, 805 F.Supp.2d at 667.[1]  The FLSA will not permit C&D's "allowance time" method

any more than it permitted the "plug time" method in *Helmert.*

### c.  C&D Cannot Negotiate Away Its Obligation to Pay Wages Consistent with the FLSA's Continuous Workday Method

Section 3(o) is a very limited exclusion.  It permits only the bargaining away of

preliminary and postliminary clothes changing and washing time.  Moreover, the Portal to Portal

Act, 29 USC §254, only governs the compensability of preliminary and postliminary time.  The

Portal to Portal Act does not govern the computation of hours worked within the workday proper.

In this case, C&D included rather than exclude clothes changing and showering within

the Plaintiffs' compensable workday.  Plaintiffs' workday must be measured from their first

principal activity - clothes changing - through their last principal activity - changing back to

street clothes after showering.  In other cases in which employers have negotiated a Section 3(o)

clothes changing and washing exclusion, the workday must still be measured from a first to last

principal activity, however, because clothes changing and showering are rendered non-

compensable, the first principal activity may be an employee's commencement of production

work at his work station and the last principal activity may be cessation of production work for

the day.  See *Sandifer*, 678 F.3d at 596-597.  These are an employer's only two options.

Of course, the leading case is *IBP, Inc. v. Alvarez*, 546 U.S. 21, 36, 126 S.Ct. 514, 163

L.Ed.2d 288 (2005).  The U.S. Supreme Court relied upon the definition of "workday" from the

---

[1]The U.S. Department of Labor filed a very helpful Amicus Curiae Brief in support of the plaintiff in the *Helmert* case, explaining in detail the reasons under the FLSA that an employer must pay wages based upon actual time worked rather than "reasonable time" payment schemes.  See *Helmert v. Butterball, Inc.*, in the United States District Court for the Eastern District of Arkansas, Western Division, Case No. 4:08-cv-00342-JLH (Docket Entry 423)

Portal to Portal Act to determine when time was compensable.  "Workday" is defined at 29 CFR

§ 790.6 (footnotes omitted):

> (a)  Section 4 of the Portal Act does not affect the computation of hours worked within the "workday" proper, roughly described as the period "from whistle to whistle," and its provisions have nothing to do with the compensability under the Fair Labor Standards Act of any activities engaged in by an employee during that period.  Under the provisions of section 4, one of the conditions that must be present before "preliminary" or "postliminary" activities are excluded from hours worked is that they 'occur either prior to the time on any particular workday at which the employee commences, or subsequent to the time on any particular workday at which he ceases' the principal activity or activities which he is employed to perform. Accordingly, to the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday, the provisions of that section have no application. Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted.  The principles for determining hours worked within the "workday" proper will continue to be those established under the Fair Labor Standards Act without reference to the Portal Act, which is concerned with this question only as it relates to time spent outside the "workday" in activities of the kind described in section 4.

> (b)  "Workday" as used in the Portal Act means, in general, the period between the commencement and completion on the same workday of an employee's principal activity or activities. It includes all time within that period whether or not the employee engages in work throughout all of that period. For example, a rest period or a lunch period is part of the "workday", and section 4 of the Portal Act therefore plays no part in determining whether such a period, under the particular circumstances presented, is or is not compensable, or whether it should be included in the computation of hours worked.  If an employee is required to report at the actual place of performance of his principal activity at a certain specific time, his "workday" commences at the time he reports there for work in accordance with the employer's requirement, even though through a cause beyond the employee's control, he is not able to commence performance of his productive activities until a later time. In such a situation the time spent waiting for work would be part of the workday, and section 4 of the Portal Act would not affect its inclusion in hours worked for purposes of the Fair Labor Standards Act.

Citing to this regulation, the Supreme Court held that "during a continuous workday," the time

between when an initial "principal activity" is undertaken until the time a concluding "principal

activity" is completed falls outside of the Portal to Portal Act's limitations on compensable activity, and thus may be compensable under the FLSA.  *Alvarez*, 546 U.S. at 37.

The continuous workday includes all time within that period whether or not the employee engages in work throughout all of that period." 29 CFR § 790.6.  The FLSA regulations define "principal activities" as those which the employee is "employed to perform" or those integral and indispensable to a principal activity.  29 CFR § 790.8.

In *Alvarez*, the lower courts had held that the donning and doffing of unique protective gear were principal activities under Section 4 of the Portal to Portal Act, 29 USC § 254, and were thus compensable activities.  *Alvarez*, 546 U.S. at 32.  The employer, IBP, Inc., did not challenge that holding in the Supreme Court, but rather argued that the time its employees spent walking between locker rooms where they donned and doffed the protective gear and the production areas was excluded by Section 4(a)(1) of the Portal to Portal Act.  IBP, Inc. argued that the Portal to Portal Act excluded such preliminary and postliminary travel time from the FLSA's coverage.

The Supreme Court rejected IPB, Inc.'s arguments, and instead relied upon its earlier ruling in *Steiner v. Mitchell*.  See *Alvarez*, 546 U.S. at 33-34, citing *Steiner*, 350 U.S. 247, 253 (1956).  Relying on the *Steiner* decision, the Supreme Court held that Section 4 of the Portal to Portal Act does not remove from the FLSA's coverage those activities that are "integral and indispensable" to "principal activities."  Id.  "Any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under §4(a) of the Portal to Portal Act."  *Alvarez*, 546 U.S. at 37.  The Court concluded that any walking time that occurred after the employee's first principal activity - in that case, donning protective gear - and before the end of the employee's last principal activity - doffing protective gear - fell within the FLSA's coverage.  *Id.*

26

Thus, because donning and doffing were themselves compensable activities, they defined "the outer limits of the workday." *Alvarez*, 546 U.S. at 36.

In this case, it is important to remember that C&D has already stipulated that it does not base its employees' pay on yellow time card punches - which would measure time from clothes changing at the start of the shift until showering and change back to street clothes at the end of a shift (Stipulations 5 & 7) - and C&D does not base compensation on white time card punches - which would measure only the time an employee begins production work at his station until he completes production work and leaves that station (Stipulation 8).  The undisputed evidence establishes that C&D does not pay its employees properly under the continuous workday method required by the FLSA.

### 6.  C&D's Employees Cannot Waive or Contract Away Their FLSA Rights

Plaintiffs cannot waive their rights under the FLSA.  For this reason, even if Plaintiffs or their Union had agreed to it, C&D's "allowance time" and/or its payment scheme whereby it pays based upon a schedule rather than actual time worked would be unenforceable.

The Fair Labor Standards Act was not designed to codify or perpetuate those customs and contracts which allow an employer to claim all of an employee's time while compensating him for only part of it.  *Leahy v. City of Chicago, Ill.*, 96 F.3d 228, 234 (7th Cir. 1996)  Congress intended, instead, to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act.  *Id*.  Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights.  Id., citing *Tennessee Coal, Iron*

27

& *Railway Co. v. Muscoda Local No. 123,* 321 U.S. 590, 602-603, 64 S.Ct. 698, 705, 88 L.Ed.

949 (1944).  In short, the FLSA establishes statutory rights which may not be contracted away.

As the Supreme Court has stated, "... congressionally granted FLSA rights take precedence over

conflicting provisions in a collectively bargained compensation agreement." *Leahy*, 96 F.3d at

234, citing *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 740-41, 101 S.Ct.

1437, 1445, 67 L.Ed.2d 641 (1981).

The underlying District Court opinion that preceded the Supreme Court's decision in *IBP,

Inc. v. Alvarez,* 546 U.S. 21 (2005), included the following helpful explanation:

> "Even if the union did bargain away rights under 3(o), they are unable to negotiate and
> bargain beyond clothes changing and washing time. Union representatives may not
> bargain away employee rights under the FLSA. *See Featsent v. City of Youngstown,* 70
> F.3d 900, 905 (6th Cir.1995), *citing Walling v. Harnischfeger Corp.,* 325 U.S. 427,
> 431–32, 65 S.Ct. 1246, 89 L.Ed. 1711 (1945). The Ninth Circuit has held "that the
> FLSA's minimum wage and overtime provisions ... are guarantees to individual workers
> that may not be waived through collective bargaining." *Albertson's, Inc., v. United Food
> & Commercial Workers Union, AFL–CIO & CLC,* 157 F.3d 758, 761 (9th Cir.1998) (
> *internal quotations omitted* ) *citing Local 246 Utility Workers Union v. Southern Cal.
> Edison Co.,* 83 F.3d 292 (9th Cir1996) (holding that where employees' claim is based on
> substantive rights under the FLSA no resort to arbitration under the CBA is required). *See
> also Collins v. Lobdell,* 188 F.3d 1124, 1127–28 (9th Cir.1999) (holding that
> congressionally granted FLSA rights take precedence over conflicting provisions in a
> collectively bargained compensation arrangement). The Supreme Court also has held that
> FLSA rights "cannot be abridged by contract or otherwise waived because this would
> 'nullify the purposes' of the statute and thwart the legislative policies it was designed to
> effectuate." *Barrentine v. Arkansas–Best Freight Sys.,* 450 U.S. 728, 740, 101 S.Ct. 1437,
> 67 L.Ed.2d 641 (1981) ( *citations omitted.*) Conflicting provisions between FLSA and
> collective bargaining agreements are resolved in favor of the FLSA. *See id."*

*Alvarez v. IBP, Inc.,* 2001 WL 34897841, * 16 (E.D.Wash. 2001).

### 7.  *The Impact of a Summary Judgment Ruling on C&D's Section 3(o) Defense*

C&D admits that it did not pay its employees for all time from initial clothes changing

until end of the shift showering and changing (Stipulations 5 & 7).  C&D only claims that it has a

defense to its failure to pay for all of this work time measured by yellow time card punches under

Section 3(o) of the FLSA (Docket Entry 28, Affirmative Defense ¶5).  In fact, C&D even admits

that it owes money for additional time worked if wages were calculated using its yellow time

card punches (Stipulation 7).  By eliminating C&D's Section 3(o) defense with a summary

judgment ruling, Plaintiffs will streamline the litigation and leave only the issue of damages for

trial.  Indeed, the Plaintiffs will be in a position similar to the plaintiffs in the *Steiner* case, with

each Plaintiff cheated out of approximately 30 minutes pay each day.  *Steiner*, 350 U.S. at 251-

252.

### C.  C&D Violates the FLSA By Paying Wages For Only Scheduled Hours Rather Than Actual Hours Worked

C&D stipulated that it only pays its employees based upon scheduled hours of work

rather than actual hours of work measured by time card punches (Stipulations 5, 6, 7, 8 & 11).[2]

Just as important to this summary judgment motion, C&D stipulated that it would owe its

employees for additional time worked if yellow time card punches were used to measure the

workday rather than scheduled hours of work (Stipulation 7).

Workers are entitled to compensation for all time worked for the employer's benefit, even

if the time is outside their regularly scheduled shift.  An employee's "workday may ... be longer

---

[2]Prior to discovery, Plaintiffs' counsel mistakenly believed that C&D paid its employees based upon production work measured by white time card punches rather than all hours of work including donning and doffing time that was measured by yellow time card punches.  (See Plaintiffs' First Amended Complaint, ¶¶ 10-16, Docket Entry 24)  In discovery, C&D produced payroll records that showed conclusively that C&D based wages upon scheduled hours of work rather than the yellow or the white time card punches.  Consistently, C&D has stipulated that it pays wages based upon schedules, not time cards.  (Stipulations 5, 6, 7, 8 & 11)

than the employee's scheduled shift." and "its duration may vary from day to day."  29 CFR §

785.9; *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 718 (2d Cir. 2001)

(work outside the scheduled shift is compensable if the employer suffered or permitted work to

be done.)  Again, as described above, the Supreme Court has affirmed that pre and post-shift

work is compensable when the work is "an integral and indispensable part of the principal

activities for which covered workmen are employed."  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 30

(2005).

Much like the "hours worked" and Portal to Portal Act regulations, the FLSA's

recordkeeping requirements do not permit an employer to estimate hours worked (pay by the

schedule) when determining compensable or recordable hours worked.  See *Williams v. Tri-

County Growers, Inc.*, 747 F.2d 121, 128 (3d Cir. 1984) ("Estimating hours worked, however,

violates section 11(c) of the FLSA, 29 USC § 211(c), which requires employers to maintain

accurate records to ensure that all workers are paid the minimum wage for every hour worked.");

see also *Wirtz v. Williams*, 369 F.2d 783, 785-786 (5th Cir. 1966) (the employer "has not kept

records of the actual time consumed... but has recorded only an assigned number of hours....

Clearly, [the employer] has not fulfilled its duty to keep accurate daily and weekly records of the

hours actually worked by each employee.").  "In *Reich v. Cole Enterprises, Inc.,* the court held

that an employer who kept a record of the shifts that its employees worked instead of the exact

time the employees started and stopped working each day violated these recording requirements

by failing to maintain records of the *actual* hours that its employees worked. 901 F.Supp. 255,

258–60 (S.D.Ohio 1993). If the law requires that an employer record the hours that each

employee works, the reason for that requirement must be that the employer must compensate the

30

employees on the basis of those recorded hours." *Helmert*, 805 F.Supp.2d at 663 FN9.

The facts have been stipulated and the law is very clear that C&D violated the Plaintiffs' FLSA rights to be paid all wages earned when C&D paid only scheduled hours worked rather than the greater amount owed based upon actual hours worked. The FLSA provides C&D absolutely no justification for its downward adjustment of the Plaintiffs' wages based upon its payment scheme. A payment system or scheme designed to avoid the effect of the FLSA would violate the Act and be invalid. See *Walling v. Helmerich & Payne, Inc*., 323 U.S. 37, 40, 65 S.Ct. 11, 13, 89 L.Ed. 29 (1944); *Lamon v. City of Shawnee, Kan.,* 972 F.2d 1145, 1152 (10th Cir. 1992); *Wethington v. City of Montgomery*, 935 F.2d 222, 226 (11th Cir. 1991).

With this summary judgment motion, Plaintiffs ask the Court to rule that C&D's schedule-based pay violates the FLSA.

## IV.  CONCLUSION

For all of the above and foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for partial summary judgment, determining that C&D's Section 3(o) defense, 29 USC §203(o), fails as a matter of law, determining that C&D's payment scheme whereby it paid employees only for scheduled hours of work rather than actual hours of work violates the FLSA and is invalid, and for all other just and proper relief in the premises.

Respectfully submitted,

HUNT, HASSLER & LORENZ LLP


By /s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84

100 Cherry Street
Terre Haute, Indiana 47807
(812) 232-9691
kondras@huntlawfirm.net

### *CERTIFICATE OF SERVICE*

I certify that on August 6, 2012, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Martha M. Lemert
FAEGRE BAKER DANIELS LLP
111 E. Wayne Street, Suite 800
Fort Wayne, IN 46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
Email: martha.lemert@faegrebd.com

Tareen Zafrullah
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Phone: (317) 237-0300
Fax: (317) 237-1000
E-mail: tareen.zafrullah@bakerd.com

HUNT, HASSLER & LORENZ LLP

By   /s/Robert P. Kondras, Jr.
Robert Kondras, Jr.
Attorney No.18038-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Fax: (812) 234-2881
kondras@huntlawfirm.net