# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSHUA D. JONES, JOEY PYCKE, EDWARD PURCELL, CHARLES R. IRONS, RONDA THOMPSON, and KELLY SCHREIBER et al., <br><br> Plaintiffs <br><br> vs. <br><br> C & D TECHNOLOGIES, INC., <br><br> Defendant | **CLASS ACTION COMPLAINT** <br><br> **FLSA COLLECTIVE ACTION COMPLAINT UNDER 29 USC § 216(b)** <br><br> CASE NO. 1:11-cv-1431 JMS-DKL |

***PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT***

Come now the Plaintiffs, by counsel, and submit the following as their Reply Brief in Support of their August 6, 2012 Motion for Partial Summary Judgment and Response to Defendant's August 24, 2012 Motion for Partial Summary Judgment.

## *I. INTRODUCTION*

Without any hint of irony, Defendant C&D Technologies, Inc. ("C&D") begins its brief stating "A deal is a deal." This is the same C&D that has breached the express terms of its collective bargaining agreement with the Plaintiffs' Union (see Stipulations 3, 5, 7, 9 & 10), breached its agreement in this lawsuit to base cross summary judgment motions on stipulated facts (Dkt. 81, see C&D Brief, pp. 2-4), and plainly breached the Fair Labor Standards Act's ("FLSA") requirement that C&D pay its employees wages in full based upon a continuous

1

workday (see Stipulations 3, 5, 7, 9, 10, 11 & 12). The "deal," as C&D describes it, does not and has never existed. Plaintiffs would counter C&D's rhetoric with this reminder: the law is the law - and it must be obeyed.

Now that the Court has both parties' briefs, summary judgment must be granted to Plaintiffs as the following three (3) critical and dispositive issues are undisputed:

1. **Principal Activities**. The parties agree and Section 18(B) of the CBA expressly states that Plaintiffs' clothes changing and showering are compensated activities that occur during the Plaintiffs' work day. For the Plaintiffs, clothes changing and showering retained their status as principal activities, because the parties did not bargain under Section 3(o), 29 USC § 203(o), of the FLSA to exclude those activities from the Plaintiffs' compensated and measured work day.

2. **Continuous Workday**. C&D did not dispute (or even discuss) Plaintiffs' argument that C&D violates the FLSA because it fails to pay its employees based upon the continuous workday (from first principal activity to last principal activity).

3. **Wages Based on Scheduled Hours of Work Rather Than Actual Hours of Work.** Again, C&D did not dispute or even discuss Plaintiffs' argument that C&D violates the FLSA when it underpays employees by paying for only scheduled work hours rather than pay for actual work hours.

C&D repeatedly described Plaintiffs' first activities and last activities of each shift as "pre- and postshift activities." This oft-repeated characterization is directly contradicted by Article 18(B) of C&D's own CBA (Stipulation 3). Under that contract, C&D agreed that Plaintiffs' first work activity - clothes changing - occurred after the "start of the shift" and the

2

last work activity - showering - occurred "before quitting time." All other activities (walking, obtaining safety equipment at the separate respirator area, end of shift walking, cleaning safety gear and vacuuming clothing in the "wash out" room), occurred during the shift. C&D devotes the bulk of its argument to a discussion of Section 4 of the Portal to Portal Act, 29 USC §254. However, Section 4 of the Portal to Portal Act has no application to this case whatsoever, because Section 4 of the Portal to Portal Act only applies to activities which are preliminary to an employee's first principal activity of the day and those postliminary to an employee's last principal activity of the day.

Very simply, the argument C&D makes is directly contradicted by Section 18(B) of its CBA and binding precedent set by *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) and *Sandifer v. U.S. Steel Corp.*, 678 F.3d 590 (7th Cir. 2012). Plaintiffs must prevail on summary judgment.

## II. STATEMENT OF MATERIAL FACTS IN DISPUTE

After consultation with Magistrate Judge LaRue, the parties agreed to file cross motions for summary judgment based upon a set of stipulated facts. (Dkt. 81) Those Stipulations of Fact were filed with the Court by both parties on July 13, 2012 (Dkt. 78). Plaintiffs relied solely upon the stipulated facts and, in fact, reprinted them in the body of their August 6, 2012 Brief. (Dkt. 89) C&D did not honor the parties' agreement or the Court's July 19, 2012 Order (Dkt. 81) and filed its own "Statement of Undisputed Facts" (C&D Brief, pp. 2-4) Plaintiffs take particular exception to several of the false statements in C&D's "Statement of Undisputed Facts," and will address those below, but for purposes of these cross motions for summary judgment, would ask the Court to please disregard C&D's "Statement of Undisputed Facts" and instead rely upon the Joint Stipulations the parties prepared together and filed with the Court.

Plaintiffs dispute and, through citation to the parties' Joint Stipulations and the express terms of the collective bargaining agreement (CBA) between Plaintiffs' Union and C&D (Exhibit A to July 13, 2012 Joint Stipulations - Dkt. 78), will dispositively refute the following facts claimed by C&D:

1. **"Additional Minutes."** C&D claims that it pays an "additional" 15 minutes a day for the "pre- and postshift activities at issue in this case" (C&D Brief, p. 4). This is false. The Court has the entire CBA attached as Exhibit A to the parties July 13, 2012 Joint Stipulations (Dkt. 78). Under the terms of the CBA and factually, C&D never has paid any additional compensation for any activity which occurs "pre" (before the "start of the shift") or "postshift" ("before quitting time") (Stipulations 3, 9, 10).

2. **"Pre- and Postshift Activities."** C&D claims that it has a "custom or practice" to pay employees for "pre- and postshift activities conducted during 5 and 10 minute allowances" (C&D Brief, p. 4). This claim is false and is directly contradicted by the express language of Article 18(B) of C&D's collective bargaining agreement. (Stipulation 3) Neither by the language of the contract, nor by "custom or practice," does C&D pay the Plaintiffs for any activity whatsoever that occurs prior to the start of any work shift or after any work shift has concluded. Under the express terms of the collective bargaining, the first activity that occurs after the "start of the shift" is "changing into acid resistant or dust proof clothing." Chronologically, the next activities that occur during the shift and after clothes changing are 1) walking to the respirator area to pick up respirators and/or safety helmets, 2) walking to the white time card area, 3) walking to a work station, then 4) begin production work. (Stipulation 9) A shower is the last activity that occurs before the work shift ends ("before quitting time").

4

(Stipulation 3). Prior to the shower, and before "quitting time," Plaintiffs 1) travel from their work station to the white time card area, 2) travel to the "wash out" room to return and clean safety equipment and vacuum safety clothing, and 3) travel to the locker room for a shower. (Stipulation 10) All of this activity occurs between the time C&D's contract defines as the "start of the shift" and "quitting time." (Stipulation 3, citing Article 18(B) of the CBA)

3. **C&D's reference to its "CBA (Factual Stipulations, Exhibit A)" and its remarks about paying for "the entire 8 hour scheduled work shift"** (C&D Brief, p. 4). C&D implies that there is some contract or agreement between it and Plaintiffs' Union that permits it to pay an "8 hour scheduled work shift." Article 18(B) defines the first (clothes changing) and last activities (showering) which occur during each work shift, but Article 18(B) says nothing about the number of hours a work shift will last or an amount of hours C&D will pay employees for each work shift. (Stipulation 3) Moreover, in direct contradiction of C&D's claim that it has some agreement with its employees to pay for only eight (8) hours per work shift, regardless of actual time spent in work activity, Plaintiffs would ask the Court to review Article 4(B) of the CBA (Dkt. 78 - Joint Stipulations, Exhibit A). Under the CBA, C&D contractually promises: "Time worked in excess of eight (8) hours in any 24 hour period during the regularly scheduled work week shall be paid for at 1 and ½ times the straight time average hourly rate." Id. C&D admits that it has only been paying employees for 8 hours per shift (Stipulation 11), but that fact is related to C&D's underpayment of wages and breach of Article 18(B) asnd 4(B) of its contract, not evidence of some agreement by the Plaintiffs to provide some free work each shift or accept less than full pay for all hours worked.

### III. LEGAL ARGUMENT

5

### A.  C&D Does Not Dispute The Fact That Clothes Changing and Showering Are Principal Activities

C&D did not dispute Plaintiffs' argument that clothes changing and showering are "principal activities" under the FLSA and, therefore, mark the beginning and end of Plaintiffs' compensable workday as first and last principal activities. (Plaintiffs' Brief, pp. 15, 17, 24-27) Instead, C&D attempted to gloss over this critical issue by discussing the walking time and time spent with respirators or cleaning equipment that occurs after clothes changing and before showering and calling them "pre and post-shift activities." (C&D Brief, p. 6)  In this summary judgment proceeding, a determination of whether or not Plaintiffs' clothes changing and showering are principal activities will largely determine the outcome of this lawsuit.

C&D claims that the FLSA's Section 3(o) exclusion is not an "all or nothing" proposition. (C&D's Brief, p. 9)  C&D is quite incorrect.  According to the Seventh Circuit, if an agreement exists to exclude clothes changing or showering from an employee's compensable work time, then clothes changing and showering lose their status as principal activities. *Sandifer v. U.S. Steel Corp.*, 678 F.3d 590, 596-597 (7th Cir. 2012)  Conversely, if the parties do not agree to a Section 3(o) exclusion of clothes changing or washing time, clothes changing and washing remain a principal activity. *Id.* at 596.  Under *Sandifer*, clothes changing and showering would have to be wholly stripped of their status as principal activities for the Section 3(o) exclusion to make any difference in this lawsuit.[1]

In his *Sandifer* opinion, Judge Posner uses the term "reclassify" to describe the process by

---

[1] In other jurisdictions, the wholesale Section 3(o) exclusion of clothes changing and washing would still not rob those activities of their status as first and last principal activities. *Franklin v. Kellogg Co.*, 619 F.3d 604, 618-619 (6th Cir. 2010); Wage and Hour Opinion Letter No. 2010-2, 2010 WL 2468195 (June 16, 2010)

which clothes changing can lose its status as a principal activity. *Id*. at 596.

> "Section 203( *o* ) permits the parties to a collective bargaining agreement to reclassify changing time as nonworking time, and they did so, agreeing that the workday would not start when the workers changed their clothes; it would start when they arrived at their work site. If clothes-changing time is lawfully not compensated, we can't see how it could be thought a principal employment activity, and so section 254(a) exempts the travel time in this case."

*Sandifer*, 678 F.3d at 596-597. This is binding precedent. Applying Judge Posner's opinion to the express terms of C&D's collective bargaining agreement with the Plaintiffs' union, it is undisputable that the two sides entered into a contract whereby clothes changing was compensated working time that began after the "start of the shift" and showering was compensated working time that occurred "before quitting time." [Stipulation 3 - Article 18(B)] In so doing, C&D and the Union agreed that Plaintiffs' workday would start "when the workers changed their clothes" and would not end until they showered. *Sandifer*, 678 F.3d at 596-597. The Section 3(o) exclusion, 29 USC § 203(o), is only important to this lawsuit insofar as it determines when an employee's compensable workday begins (and ends).

> "Had the clothes-changing time in this case not been rendered noncompensable pursuant to section 203( *o* ), it would have been a principal activity. But unless changing into and changing out of work clothes are principal activities even when made noncompensable pursuant to section 203( *o* ), the exemption in section 254(a) applies, and U.S. Steel need not compensate for travel time."

*Id.* at 596. In the *Sandifer* case, Judge Posner makes it expressly clear that clothes changing lost its status as a "principal activity" only because the employer and union agreed that 1) "clothes changing time is lawfully not compensated" and 2)"not work time." *Sandifer*, 678 F.3d at 596-597. The opposite is true under the express terms of C&D's CBA with Plaintiffs' Union. Clothes changing and showering are defined as work activities that occur during the shift and the

parties agree that the activities are compensated activities. (Stipulation 3)

Finally, C&D's argument that *Steiner v. Mitchell*, 350 U.S. 247 (1956) is "inapplicable" (C&D Brief, p. 18) belies a misunderstanding of the FLSA's Section 3(o) exclusion altogether. By its very definition, the Section 3(o) exclusion could only be relevant if used to exclude clothes changing and washing time which would otherwise be deemed "integral and indispensable" and, therefore, a "principal activity." *Steiner v. Mitchell* establishes that the time employees spend donning and doffing protective clothing and equipment and showering in a battery factory, as is true of Plaintiffs, is integral and indispensable to the Plaintiffs' principal activities and, therefore, principal activities in and of themselves. *Id.,* 350 U.S. at 252-255. In this case, the parties stipulated that the clothes changing and showering were integral and indispensable, because the activities are required by C&D and by governmental (OSHA) regulations. (Stipulation 4) It is precisely because C&D did not negotiate an agreement with Plaintiffs' Union to exclude clothes changing and showering from the Plaintiffs' compensable work day, that Section 3(o) of the FLSA does not apply and the FLSA's general rule and ordinary method of calculating the Plaintiffs' paid work day applies. *Steiner,* 350 U.S. at 252–53, 256; *IBP v. Alvarez*, 546 U.S. at 37; *Sandifer,* 678 F.3d at 594-597.

### B. C&D Does Not Dispute The Fact That It Has Failed To Compensate Plaintiffs Based Upon a Continuous Workday

C&D did not dispute it, but failed to discuss Plaintiffs' argument that the FLSA requires an employer to pay an employee wages for all time worked within a continuous workday. *IBP v. Alvarez*, 546 U.S. at 33-37. C&D has attempted to confuse issues by referring to certain activities that occur after the Plaintiffs' first principal activity - clothes changing and last

8

principal activity - showering as "pre and postshift activities" (travel time and time spent in the respirator room and wash out room) (C&D Brief, pp. 1, 2, 4, 5, 6, 15) The U.S. Supreme Court expressly rejected these same arguments:

> "For the foregoing reasons, we hold that any activity that is 'integral and indispensable' to an 'principal activity' is itself a 'principal activity' under §4(a) of the Portal-to-Portal Act. Moreover, during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of that provision, and as a result is covered by the FLSA."

*Id.* at 37.

In this case, Section 3(o), 29 USC §203(o), only affects the measurement of time between first and last principal activity if C&D completely excluded clothes changing and showering time from "measured work time" and caused those activities to be reclassified as "noncompensable" and "nonworking time" so that the Plaintiffs' "workday would not start when the workers changed their clothes; it would start when they arrived at their work site." *Sandifer*, 678 F.3d at 596-597. Because C&D agreed that clothes changing and showering were part of each workday and would be compensated [Stipulation 3, Article 18(B)], clothes changing and showering remained the measuring points for the continuous workday that the U.S. Supreme Court describes as payment from "whistle to whistle." *IBP, Inc. v. Alvarez*, 546 U.S. at 36, citing 29 CFR §790.6.

Regardless of whether or not an employer and union agree to exclude clothes changing or showering under Section 3(o), the employer still has to pay its employees based on a continuous workday measured from a first until a last principal activity. *IBP, Inc. v. Alvarez*, 546 U.S. at 37; *Sandifer*, 678 F.3d at 596-597. This creates another circumstance in which the Court can

9

determine that C&D's wage payment scheme violates the FLSA with a few simple questions:

1. What does C&D claim to be Plaintiffs' first and last principal activities?

2. How can C&D claim that it properly measured and compensated Plaintiffs for a full, continuous workday, when C&D has already stipulated that it does not pay Plaintiffs from yellow to yellow card time punch measuring clothes changing through showering (Stipulations 5&7), but also stipulated that it does not pay Plaintiffs from white to white card time punch, which would measure only time spent when arriving at a work station until leaving a work station (Stipulation 8)?

3. Since C&D admits that clothes changing and showering are compensated and occur during the workshift [Stipulation 3, Article 18(B)], is C&D arguing that clothes changing and showering can be principal activities, but not principal activities at the same time?

This is the moment to return to the summary judgment issues. The parties agree that clothes changing and showering are compensated and part of the workday [Stipulation 3, Article 18(B)] and are, therefore, first and last principal activities. Importantly, C&D's arguments and interpretations of Article 18(B) are contradicted by its express terms, but C&D has absolutely zero evidence that it ever even bargained with Plaintiffs' Union to exclude any clothes changing time (Stipulation 2), much less evidence of any agreement through a custom or practice. Indeed, an employer's history of non-payment for clothes changing is not, in and of itself, sufficient to establish a custom or practice of exclusion under Section 3(o), or Section 3(o) would become an unlimited FLSA exemption applicable to every unionized employer that did not pay for clothes changing time. *Figas v. Horsehead Corp.*, 2008 WL 4170043 *15 (W.D. Pa., 2008), citing *Kassa v. Kerry, Inc.*, 487 F.Supp.2d 1063, 1071 (D. Minn. 2007). Even more important, because Article 18(B) of C&D's CBA contains an express, contractual agreement to compensate clothes changing and showering and treat the activities as activities after the "start of the shift" and "before quitting time," the CBA is not "silent" on the Section 3(o) issue, and the Court has no

basis to consider C&D's custom or practice arguments. *Salazar v. Butterball, LLC*, 644 F.3d 1130, 1141 (10th Cir. 2011).

C&D dismisses the *Helmert v. Butterball* decision (C&D Brief, pp. 22-24), but C&D's failed argument about "allowance" time is identical to Butterball's failed "plug time" argument. *Id.,* 805 F.Supp.2d at 662-667. Contrary to C&D's criticism, the continuous workday rule applies to all employers, unionized or non-unionized. An employer cannot negotiate its way out of paying for the entire, continuous workday. *Id.,* 805 F.Supp.2d at 662-663. An employer cannot control or limit the amount of time it pays for certain activities that occur within that continuous workday. *Id.* See also 29 CFR §790.6(a).

Finally, because the parties have presented cross-motions for summary judgment, Plaintiffs would also counter C&D's argument by pointing out that, if in the future the Plaintiffs' Union and C&D actually agree to exclude clothes changing and showering and Section 3(o) does begin to apply, the Court (or the parties) would have to determine which activity after clothes changing constitutes the first principal activity and which would serve as the last principal activity. The Court would certainly be within its right to rule that neither party has presented enough evidence or stipulation on this topic sufficient to make a dispositive ruling, however, the parties have stipulated that, after clothes changing in a locker room, C&D employees have to go to a "separate respirator area where employees pick up the respirators and/or safety helmets" (Stipulation 9) and before a shower, C&D employees must go to a "separate area called the 'wash out' room where the employee returns safety equipment, particularly respirators, for cleaning and also can - if dusty - vacuum his/her C&D provided safety clothing" (Stipulation 10). Without clothes changing and showering as the "whistle to whistle" activities, *IBP, Inc. v. Alvarez*, 546

11

U.S. at 36, these OSHA-required (See 29 CFR § 1910 and, more specifically 29 CFR § 1910.134) work activities from initial work in the "respirator area" to final cleaning of the equipment in the "wash out" area would serve as first and last principal activities of the continuous workday. See *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 (10th Cir. 1994) (holding that separate donning of safety equipment and cleaning safety equipment was a compensable, principal activity, even when changing clothes was not a principal activity)

For summary judgment purposes, Plaintiffs must prevail as the evidence is undisputed that C&D has not been paying Plaintiffs based upon a measured, continuous workday.

### C. C&D Does Not Dispute The Fact That It Violated The FLSA By Compensating Plaintiffs Only For Scheduled Hours of Work Rather Than Actual Hours of Work

C&D did not dispute or even address Plaintiffs' second summary judgment argument. C&D stipulated that it was not paying its employees based upon actual work time measured by yellow time card punches (Stipulations 5 & 7) and that it was not paying employees based upon actual work time measured by white time card punches (Stipulation 8). Instead, C&D has admitted and stipulated for summary judgment purposes that it was only paying its employees for the eight hour time the employee was scheduled to work. (Stipulations 7, 8, 11 & 12). Plaintiffs argued that they were entitled to a summary judgment ruling based upon C&D's admitted FLSA violation - payment of wages based upon a schedule rather than payment of wages based upon actual hours (Plaintiffs' Brief, pp. 2-3, 29-31). Inasmuch as C&D has not disputed or responded to that argument at all, Plaintiffs must be granted summary judgment. *Butler v. Indianpolis Metropolitan Police Dept.*, 2009 WL 2841079 *4 (S.D. Ind.) (the failure to "offer any response to a well developed and supported summary judgment argument that challenges a particular

claim should be considered an abandonment of that claim or issue."), citing *Weinstein v. Schwartz*, 422 F.3d 476, 477 n. 1 (7th Cir. 2005) and *Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003).

To reiterate, an employer violates the FLSA when it pays wages based upon scheduled hours of work rather than pay for all time worked for the employer's benefit, even if the time is outside the regularly scheduled shift. 29 CFR § 785.9; *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 718 (2d Cir. 2001); *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 128 (3d Cir. 1984) ("Estimating hours worked, however, violates section 11(c) of the FLSA, 29 USC § 211(c), which requires employers to maintain accurate records to ensure that all workers are paid the minimum wage for every hour worked."); *Wirtz v. Williams*, 369 F.2d 783, 785-786 (5th Cir. 1966) (the employer "has not kept records of the actual time consumed... but has recorded only an assigned number of hours.... Clearly, [the employer] has not fulfilled its duty to keep accurate daily and weekly records of the hours actually worked by each employee."). *Reich v. Cole Enterprises, Inc.,* 901 F.Supp. 255, 258–60 (S.D.Ohio 1993); *Helmert v. Butterball, LLC*, 805 F.Supp.2d 655, 663 FN9 (E.D. Ark. 2011).

The FLSA provides C&D absolutely no justification for its downward adjustment of the Plaintiffs' wages from actual hours worked to scheduled hours. Again, a payment system or scheme designed to avoid the effect of the FLSA would violate the Act and be invalid. See *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 40, 65 S.Ct. 11, 13, 89 L.Ed. 29 (1944); *Lamon v. City of Shawnee, Kan.,* 972 F.2d 1145, 1152 (10th Cir. 1992); *Wethington v. City of Montgomery*, 935 F.2d 222, 226 (11th Cir. 1991). Plaintiffs must be granted summary judgment based upon C&D's admitted payment of wages only for scheduled hours rather than actual.

### D. *Section 4 of The Portal to Portal Act Does Not Apply To the Facts At Issue In This Case*

C&D devoted the majority of its brief to its discussion of Section 4 of the Portal to Portal Act, 29 USC §254. C&D did not, however, respond in any way to the Plaintiffs' argument that Section 4 of the Portal to Portal Act does not apply at all to the facts in issue in this case. (Plaintiffs' August 6, 2012 Brief, pp. 24-27) The Portal to Portal Act's Section 4 only applies to activities which are preliminary to an employee's first principal activity of the day or postliminary to an employee's final principal activity of the day. 29 USC § 254(a); 29 CFR §790.6(a); *IBP, Inc. v. Alvarez*, 546 U.S. at 27-28, 37; *Steiner v. Mitchell*, 350 U.S. at 253; *Sandifer*, 678 F.3d at 596.

As described above and throughout Plaintiffs' August 6, 2012 Brief (Dkt. 89), each Plaintiff's first principal activity of each shift is clothes changing and each Plaintiff's final principal activity each shift is showering. (Stipulation 3, citing Article 18(B) of C&D's collective bargaining agreement with Plaintiffs' Union) The Plaintiffs are not claiming that C&D owes money for wages related to any activity preliminary to clothes changing at the start of any shift, nor are the Plaintiffs claiming, generally,[2] that C&D owes money for unpaid wages related to any activity postliminary to showering at the end of any shift. C&D is required to pay the Plaintiffs from first principal activity (clothes changing) to last principal activity (showering) under the continuous workday rule, *IBP, Inc. v. Alvarez*, 546 U.S. at 37, and the Portal to Portal Act's Section 4 does not apply to any activities which occur between these first and last principal

---

[2]The exception to this comment involves Plaintiffs' medical testing claim. Plaintiffs are seeking to recover wages for time spent in employer-mandated medical testing which occurs only occasionally, but does occur after shift-end showers. On the dates a Plaintiff had to wait at the end of a shift to submit to a medical test, the medical test would be the employee's final principal activity and the employer should have been paid to the point in time the medical test was completed.

activities. *Id.* The activities for which C&D must compensate the Plaintiffs, because the activities occur during the continuous workday, include all walking time after clothes are changed in the locker room and all time spent donning safety gear in the respirator room (Stipulation 9) and all time walking, cleaning equipment in the wash out room, and walking back to the locker room for a shower (Stipulation 10).

Because Section 4 of the Portal to Portal Act only relates to preliminary and postliminary activities, C&D's arguments about its subparts, particularly 29 USC §§ 254(c)&(d) (see C&D Brief, pp. 10-11) have no bearing on the issues in this lawsuit. While Section 4(a) of the Portal to Portal Act renders preliminary and postliminary activities non-compensable, Sections 4(b),(c) & (d) of the Portal to Portal Act give employers and employees permission to negotiate some payment for otherwise non-compensable preliminary and postliminary activities. 29 USC §254. To be clear, however, Sections 4(b),(c) & (d) of the Portal to Portal Act do not permit employers and employees to negotiate or limit the amount of time an employer pays employees for activities that occur after a first principal activity and before a final principal activity. *Id*.

Indeed, C&D is making the same type of failed argument that the employer made in *IBP, Inc. v. Alvarez,* 546 U.S. at 34-36. Walking time that occurs after a first principal activity must be compensated. *IBP, Inc. v. Alvarez,* 546 U.S. at 35. As argued in Plaintiffs' August 6, 2012 Brief (p. 22), the FLSA will not permit a payment scheme where an employer treats an employee as on the clock, then off the clock, back on the clock, off the clock, back on the clock, then off the clock a final time.

Inasmuch as C&D's defense of its payment scheme hinges upon its Portal to Portal Act argument (See C&D Brief, pp. 4 - 17), and the Portal to Portal Act's Section 4 does not apply at

all, Plaintiffs must be granted summary judgment and this wage and hour case should proceed to a trial on damages.

### E. C&D's Threats of Labor Unrest and Hard Line Stances

C&D threatens a "hard line approach," "labor unrest," "impasse" (C&D Brief, p. 14) and concludes its argument with "Long term, employees would end up losing out." (C&D Brief, p. 16)  C&D makes these threats in response to the notion that the Court will make C&D pay the Plaintiffs the wages they have already earned under the terms of C&D's CBA and are required by the FLSA.  Plaintiffs would remind C&D that the FLSA renders retaliation illegal and actionable. 29 USC § 215(a)(3).

Moreover, if either group has reason to be unhappy, it is the Plaintiffs.  Because of the FLSA's statute of limitations, Plaintiffs can only reach back three years prior to Joshua Jones October 26, 2011 Complaint to recover unpaid wages.  29 USC § 255(a).  If C&D is correct, the company has been unjustly enriching itself for decades, keeping money it should have paid in wages.  Regardless of the Plaintiffs' success in this lawsuit, C&D has kept millions of dollars over the decades in money that should have been paid as wages.

C&D's argument that it must be permitted to cheat its employees of pay for actual work, because employees will be "incentivized" to engage in "shower creep" to receive additional pay (C&D Brief, p. 15), is identical to the same arguments rejected in *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F.Supp.2d 941, 953-954 (W.D. Wis. 2008) and *Helmert v. Butterball, LLC*, 805 F.Supp.2d at 668 and expressly rejected under the FLSA's regulations:

> "It is the duty of management to exercise its control and see that the work is not performed if it does not want it to be performed.  It cannot sit back and accept the benefits without compensating for them.  The mere promulgation of a rule against such work is

not enough. Management has the power to enforce the rule and must make every effort to do so."

29 CFR §785.13. It is important to note, particularly as this is a summary judgment proceeding, the Court has no evidence (no stipulations) that any Plaintiff needed more than five (5) minutes for clothes changing or more than ten (10) minutes for showering. (Plaintiffs Brief, p. 22) Further, Plaintiffs would have no basis to complain it C&D controlled its employees' workday and limited to eight hours per day (instead of the approximate 8.5 hours Plaintiffs have actually been working) the time worked if the workday is measured from initial clothes changing until the completion of a shower. As was true in *Helmert*, C&D "as the employer, has the authority to manage its employees' continuous workday so as to avoid idle wait time" and, like the employer in *Helmert*, C&D "can control when its employees arrive to and leave from the plant and the activities they engage in while at the plant." *Helmert*, 805 F.Supp.2d at 668.

Finally, C&D will have to bargain with Plaintiffs' Union if it wants to exclude clothes changing and showering from the compensable workday. (C&D Brief, pp. 13-16) This bargaining is the entire point of the Section 3(o) exclusion. If C&D wants the Plaintiffs' Union to give away and exclude clothes changing/showering time in the future, changing the current agreement in Section 18(B) (Stipulation 3), C&D has to give the Plaintiffs' Union something in return (e.g., higher wages). *Sandifer*, 678 F.3d at 594. Otherwise, the Plaintiffs would be foolish to forfeit work time the FLSA otherwise requires C&D to compensate. *Steiner v Mitchell*, 350 U.S. at 252–53, 256.

### F. C&D's "One Case" Does Not Support C&D's Argument At All

C&D argues "at least one court has held that 203(o) allows for the type of agreement at

issue here" (C&D Brief, pp. 16-17) in apparent response to Plaintiffs' challenge that C&D "provide a single case, regulation or even a wage and hour opinion letter that would provide the benefit of a Section 3(o) exclusion to an employer who expressly included rather than exclude the activities of clothes changing and washing from its employees' compensable workday in a collective bargaining agreement" (Plaintiffs Brief, p. 3). C&D's case, *Hoover v. Wyandotte Chemical Corporation*, 455 F.2d 387 (5th Cir. 1972) actually hurts C&D's argument further for at least the following reasons:

1.  As Plaintiffs predicted, C&D cannot find any case in which the employer contractually promised to include clothes changing and showering as part of the compensable workday, but still claimed the benefit of a Section 3(o) exclusion. Wyandotte Chemical Company did not have an express provision in a contract governing clothes changing and showering. *Hoover*, 455 F.2d at 387-388. Moreover, the plaintiffs in that case actually agreed or conceded that they had agreed by custom or practice to exclude clothes changing and showering between 1964 and 1968. *Id.* at 388-389.

2.  The parties in *Hoover* agreed that the clothes changing and showering time were principal activities and not preliminary or postliminary activities. *Hoover*, 455 F.2d at 389 FN1. This opinion was written thirty-three (33) years prior to *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005). While the *Hoover* opinion is not clear in explaining whether the employer paid from the first principal activity - clothes changing - until the last principal activity - showering, there is no doubt under the law now that an employer must pay for a continuous workday. *IBP, Inc. v. Alvarez*, 546 U.S. at 33-37 and clothes changing and showering would have been the first and last principal activities in this case.

3. The *Hoover* opinion provides no clue regarding the method by which the employer measured its employees' paid work day. The opinion is very short. There is no mention of the point an employee punched in and out on the time clock. There is certainly no claim that employees were being paid for estimated time based upon a work schedule rather than paid for actual, measured time worked, as C&D pays the Plaintiffs now.

4. The employees in *Hoover* were paid additional overtime compensation for their fifteen minutes of clothes changing and showering. The activities were paid at an overtime premium and paid in addition to the employees' wages for their other work. *Hoover*, 455 F.2d at 388. Imagine if the Plaintiffs in this case had the same compensation plan as the *Hoover* plaintiffs - clothes changing and showering are still the first and last principal activities marking the start and end of the continuous workday, plus Plaintiffs receive 15 more minutes of pay at an overtime premium each day. Plaintiffs would gladly punch their time cards after changing into their safety clothes and prior to taking showers if C&D promised to pay for 15 minutes overtime each day.

Finally, and most importantly, *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) and *Sandifer v. U.S. Steel Corp.*, 678 F.3d 590 (7th Cir. 2012) are the precedents which govern the outcome of this litigation.

## IV. CONCLUSION

For all of the above and foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for partial summary judgment, determining that C&D's Section 3(o) defense, 29 USC §203(o), fails as a matter of law, determining that C&D's payment scheme whereby it paid employees only for scheduled hours of work rather than actual hours of work violates the

FLSA and is invalid, deny C&D's motion for partial summary judgment, and for all other just and proper relief in the premises.

Respectfully submitted,
HUNT, HASSLER & LORENZ LLP

By /s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, Indiana 47807
(812) 232-9691
kondras@huntlawfirm.net

## CERTIFICATE OF SERVICE

I certify that on September 7, 2012, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Martha M. Lemert
Samuel Conrad
FAEGRE BAKER DANIELS LLP
111 E. Wayne Street, Suite 800
Fort Wayne, IN 46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
Email: martha.lemert@faegrebd.com

Tareen Zafrullah
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Phone: (317) 237-0300
Fax: (317) 237-1000
E-mail: tareen.zafrullah@bakerd.com

HUNT, HASSLER & LORENZ LLP

By /s/Robert P. Kondras, Jr.
Robert Kondras, Jr.