UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JOSHUA D. JONES, *et al.*,              )
    *Plaintiffs,*              )
                              )
    *vs.*                      )          1:11-cv-01431-JMS-DKL
                              )
C&D TECHNOLOGIES, INC.,              )
    *Defendant.*               )

## ORDER

Presently before the Court in this action brought under the Fair Labor Standards Act ("FLSA") are Plaintiffs' Motion for Partial Summary Judgment, [dkt. 88], and Defendant C&D Technologies, Inc.'s ("C&D") Motion for Partial Summary Judgment, [dkt. 94]. For the following reasons, the Court grants Plaintiffs' motion in part and denies it in part, and grants C&D's motion in part and denies it in part.

### I.
#### UNDISPUTED FACTS

**A.  A Typical Day at C&D**

C&D's Attica facility manufactures industrial batteries.  [Dkt. 24 at 3, ¶ 8.]  The manufacturing process at the Attica plant requires C&D's employees to work with toxic materials, particularly lead.  [*Id.*; dkt. 78 at 3, ¶ 4.]  Due to these toxic materials, both C&D and governmental regulations require that C&D employees change into and out of safety clothes and shower.  [Dkt. 78 at 3, ¶ 4.]

C&D runs three eight-hour shifts: first shift, from 7:00 a.m. to 3:00 p.m.; second shift, from 3:00 p.m. to 11:00 p.m.; and third shift, from 11:00 p.m. to 7:00 a.m. [*Id.* at 3, ¶ 6.] An employee's shift begins and ends with safety-related activities, and generally proceeds as follows: (1) employees punch a yellow time card upon arrival at the Attica facility, [*id.* at 3, ¶ 5]; (2) employees change in a locker room from their personal clothes into C&D-issued safety clothing, and employees who wear respirators and/or safety helmets with full-face masks then walk from the locker room to a separate respirator area to pick up the respirators and/or safety helmets, [*id.* at 4, ¶ 9]; (3) employees walk to their "white time card area," where they punch a white time card, [*id.* at 3-4, ¶¶ 8-9]; (4) employees travel to their work station, don their respirator or helmet if they use one, and begin production work, [*id.* at 4, ¶ 9]; (5) after production work is complete, employees walk to the "white time card area," and punch out on their white time card (generally ten minutes prior to the end of their scheduled eight-hour shift), [*id.* at 4, ¶ 10]; (6) employees walk to a "wash out" room where they return safety equipment for cleaning (if they used safety equipment) and are able to vacuum their C&D-issued safety clothing if they wish, [*id.*]; (7) employees walk to the locker room, change out of their work clothes, take a required shower, and change back into their personal clothing, [*id.*]; and (8) employees punch out on their yellow card upon leaving the Attica facility, [*id.*].

The following diagram depicts the timeline for these different activities:

| "Pre-Donning Activities" | "Donning" | "Beginning Boundary Activities" | "Work Period" | "Ending Boundary Activities" | "Doffing/ Washing" | "Post-Doffing Activities" |
|---|---|---|---|---|---|---|
| [-------------] | [-----------] | [---------------] | [-------------] | [-------------] | [--------------------] | [--------------] |
| Arrive at plant<br><br>Punch yellow time card<br><br>Walk to locker room | Change from personal clothes into safety clothes | Walk from locker room to safety gear area and pick up safety gear (only some employees)<br><br>Walk to "white time card area"<br><br>Punch white time card<br><br>Walk to work area<br><br>Don safety gear (only some employees) | Work on the production line | Doff safety gear (only some employees)<br><br>Walk from work area to "white time card area"<br><br>Punch white time card<br><br>Walk to "wash out room" to return safety gear (only some employees) and vacuum safety clothing if desired<br><br>Walk to locker room | Doff safety clothes<br><br>Shower<br><br>Change back into personal clothes | Walk from locker room to "yellow time card area"<br><br>Punch yellow time card<br><br>Exit plant |

## B.  The Collective Bargaining Agreement

C&D's hourly manufacturing employees at the Attica facility have long been represented by the International Union of Electrical Workers, and Communication Workers of America IUE-CWA Local No. 84950 ("the Union") as their exclusive collective bargaining representative.  [*Id.* at 1, ¶ 1.]  The 2007-2012 Collective Bargaining Agreement ("CBA") entered into by C&D and the Union provides:

**ARTICLE 18 – Health and Safety**

(B)  To ensure and safeguard the health and safety of all employees the Company has installed and maintains certain protective facilities and provides time for their use.  An allowance time of five (5) minutes is provided between the start of the shift and the time [an] employee must be at his work station for changing into acid resistant or dust proof clothing.  In addition, a wash-up allowance time of five (5) minutes before lunch and ten (10) minutes wash-up and shower period before quitting time is given to all employees.  A fifteen (15) minute rest period in the mid-morning and mid-afternoon is given to all employees.  The allowances for changing clothes, wash-up, shower and rest periods must be observed for the purposes for which they are established.

[Dkts. 78 at 2, ¶ 3; 78-1 at 20.]

The predecessor to the CBA, an agreement first entered into by C&D and the Union in 1967, contains a virtually identical provision.  [Dkts. 78 at 2, ¶ 3; 78-2 at 11-12.]  Neither C&D nor the Union have located any notes or records reflecting any bargaining related to Article 18 and the time spent changing clothes or washing that would substantively change that language.  [Dkt. 78 at 2-3, ¶ 3.]

Simply put, based on the terms of the CBA, C&D compensates its employees for a five-minute allowance for "Pre-Donning Activities," "Donning," and "Beginning Boundary Activities," and a ten-minute allowance for "Ending Boundary Activities," "Doffing/Washing," and "Post-Doffing Activities."

**C.  Compensating C&D Employees**

C&D does not pay its employees based on time calculated from either the yellow time card punches or the white time card punches.  [*Id.* at 3-4, ¶¶ 5, 7-8.]  Rather, it pays based on the eight-hour scheduled shift.  [*Id.* at 4-5, ¶¶ 8, 11.]  Employees are paid for lunch and all breaks during this eight-hour shift.  [*Id.* at 5, ¶ 11.]  When the safety-related activities discussed above, such as walking from the locker room to the work area, vacuuming clothes, picking up or dropping off respirators or safety helmets, changing into and out of the C&D-issued safety clothing,

and showering, occur during the employee's eight-hour shift, he or she is compensated for them. [*Id.* at 5, ¶ 12.]  When those activities run outside of the eight-hour shift, the employee is not compensated for any time over and above eight hours.  [*Id.*]  "Employees have never been paid based on the time between their yellow time card punches."  [*Id.* at 3, ¶ 7.]

The following diagram depicts how C&D's employees are currently compensated:



### D.  The Lawsuit

Plaintiff Joshua Jones filed his Complaint on October 26, 2011, [dkt. 1], and Mr. Jones, Joey Pycke, Edward Purcell, Charles Irons, Ronda Thompson, and Kelly Schreiber filed the operative Amended Complaint on January 13, 2012, [dkt. 24].  Since then, numerous named plaintiffs have been added.  [*See* dkts. 55, 56, 57, 58, 65.]  Plaintiffs allege that C&D has violated the FLSA, 29 U.S.C. § 216(b), by failing to: (1) pay employees minimum and overtime wages for "donning and doffing" of safety clothing and equipment and washing up that occurs outside of the eight-hour shift, [dkt. 24 at ¶¶ 10-11]; and (2) pay employees for time spent undergoing medical testing related to their work with toxic material, [*id.* at ¶ 14].  They also alleged that C&D violated the Indiana Wage Payment Act ("<u>IWPA</u>"), Ind. Code § 22-2-5, for failure to compensate employees for those same types of activities.  [*Id.* at 10-11.]  On August 28, 2012, this Court granted C&D's Motion to Dismiss Plaintiffs' IWPA claims, finding they were preempted by the Labor-Management Relations Act, 29 U.S.C. § 185.  [Dkt. 97.]  Accordingly, only Plaintiffs' FLSA claims remain.

Plaintiffs now seek summary judgment regarding their claims that C&D's policy of paying a five-minute allowance for the "Pre-Donning Activities," "Donning," and "Beginning Boundary Activities" periods, and a ten-minute allowance for the "Ending Boundary Activities," "Doffing/Washing," and "Post-Doffing Activities" periods, and its practice of paying its employees based on their eight-hour shift rather than based on the actual time worked, violate the FLSA.  [Dkt. 88.]  C&D seeks summary judgment regarding its argument that its compensation of employees based on the allowance times for the "Pre-Donning Activities," "Beginning Boundary Activities," "Donning," "Ending Boundary Activities," "Doffing/Washing," and "Post-Doffing Activities" periods does not violate the FLSA.  [Dkt. 94.][1]  The motions do not apply to the time spent undergoing medical testing, which the parties reserve for another day.  [Dkts. 79; 96.]

## II.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor.  *See* Fed. R. Civ. Pro. 56.  To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial.  Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts

---

[1] C&D does not seek summary judgment regarding the propriety of compensating its employees based on their eight-hour shift, rather than on actual time worked.  [Dkt. 94 at 1 ("This Motion for Partial Summary Judgment focuses solely on whether the compensation of pre- and post-shift activities for 15 minutes a day as agreed to between C&D and [the Union] is permissible pursuant to 29 U.S.C. §§ 203(o) and 254").]

of the record, including depositions, documents, or affidavits.  Fed. R. Civ. Pro. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. Pro. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. Pro. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment.  Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003).  Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment.  *Id*. at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact.  *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).  And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party."  *Celotex*, 477 U.S. at 330.

That cross-motions for summary judgment have been filed does not automatically mean that all questions of material fact have been resolved.  *Norwood Promotional Prods., LLC v.*

*KustomKoozies, LLC*, 835 F.Supp.2d 685, 691 (S.D. Ind. 2011).  The Court must evaluate each motion independently, making all reasonable inferences in favor of the nonmoving party with respect to each motion.  *Id.* at 691-92.

### III.
#### DISCUSSION

### A. Compensation for "Donning," "Beginning Boundary Activities," "Ending Boundary Activities," and "Doffing/Washing"

Plaintiffs argue in support of their Partial Motion for Summary Judgment that the FLSA requires C&D to compensate employees for all time spent donning safety clothes at the beginning of their shift, doffing those clothes and washing at the end of their shift, and all time in between.  [Dkt. 89 at 2.]  Specifically, Plaintiffs assert that Section 203(o) of the FLSA only exempts time spent donning, doffing, washing up, and changing from compensable time if the parties have agreed to totally exclude it in a collective bargaining agreement.  [*Id.* at 18-20.]  If the parties bargain to include even only part of that time as compensable time, as the Union and C&D have here, Plaintiffs argue that *all* of the time spent performing those activities is compensable.  [*Id.*]  Plaintiffs also argue that the Portal-to-Portal Act does not apply to any of the activities at issue here because they all take place after the first principal activity of the day, and before the last.  [Dkt. 106 at 14-16.]

C&D, on the other hand, argues that it bargained with the Union to include a certain amount of time for donning and doffing safety clothing, washing, and travel time to and from work areas as compensable up to a certain amount, and that bargain should be honored.  [Dkt. 95 at 4-11.]  It asserts that the fact that it bargained with the Union to include some of that time does not mean Section 203(o) does not apply, and that disregarding the CBA's bargained-for terms would undermine the purpose of Section 203(o).  [*Id.* at 9-16.]  Further, C&D argues that it was

entitled to bargain with the Union under the Portal-to-Portal Act regarding compensation for activities other than "Donning" and "Doffing/Washing" which take place during the five-minute allowance in the morning and the ten-minute allowance at the end of the day. [*Id.* at 6-11.]

The FLSA provides that an employer must pay its employees at least a minimum wage for all hours worked, and overtime of "not less than one and one-half times the regular rate at which he is employed" for hours worked in a week that exceed forty hours. 29 U.S.C. §§ 206(a), 207(a)(1). The FLSA does not define "work," and Congress attempted to address that void when it passed the Portal-to-Portal Act. *See* 29 U.S.C. §§ 251, *et seq.* Section 254 of the Portal-to-Portal Act states:

> (a) Activities not compensable. Except as provided in subsection (b), no employer shall be subject to any liability or punishment under the [FLSA]…on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after the date of the enactment of this Act –
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities….
>
> (b) Compensability by contract or custom. Notwithstanding the provisions of subsection (a) which relieve an employer from liability and punishment with respect to an activity, the employer shall not be so relieved if such activity is compensable by either –
>
> (1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

      (2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

    (c) Restriction on activities compensable under contract or custom.  For the purposes of subsection (b), an activity shall be considered as compensable under such contract provision or such custom or practice only when it is engaged in during the portion of the day with respect to which it is so made compensable.

    (d) Determination of time employed with respect to activities.  In the application of the minimum wage and overtime compensation provisions of the [FLSA]…, in determining the time for which an employer employs an employee with respect to walking, riding, traveling, or other preliminary or postliminary activities described in subsection (a) of this section, there shall be counted all that time, but only that time, during which the employee engages in any such activity which is compensable within the meaning of subsections (b) and (c) of this section.

29 U.S.C. § 254.

    Congress also amended the FLSA to add Section 203(o), which provides:

    (o) Hours Worked.  In determining for the purposes of sections 6 and 7 [29 USCS §§ 206 and 207] the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

29 U.S.C. § 203(o).

    While neither party analyzes the separate activities performed within the "Pre-Donning Activities," "Donning," "Beginning Boundary Activities," "Ending Boundary Activities," "Doffing/Washing," or "Post-Doffing Activities" periods, the Court finds this analysis integral to this case.  The Court will first address activities that the parties agree are covered by the CBA (although they differ as to whether that is proper), then work its way through the remaining activities.

- 10 -

*1.  "Donning" and "Doffing/Washing"*

*a.  The Terms of the CBA*

The CBA clearly provides that C&D will only pay for a five-minute "allowance" "between the start of the shift and the time [an] employee must be at his work station for changing into acid resistant or dust proof clothing."  [Dkts. 78-1 at 20; 78-2 at 11-12.]  Further, it provides that an allowance of "ten (10) minutes wash-up and shower period before quitting time is given to all employees," [*id.*] – arguably the "Doffing/Washing" time depicted above.  The first question is whether C&D and the Union could, under the FLSA, bargain to compensate only for the five-minute and ten-minute allowance times for "Donning" and "Doffing/Washing."

Time spent donning and doffing safety clothing is compensable where that safety clothing is "integral and indispensable" to the job.  *Steiner v. Mitchell*, 350 U.S. 247, 255-56 (1956).  Section 203(o) of the FLSA specifically states, however, that an employer and a union can, in a collective bargaining agreement, bargain to exclude "*any* time spent in changing clothes or washing at the beginning or end of each workday."  29 U.S.C. § 203(o) (emphasis added).

Issues relating to Section 203(o) generally arise where the company and the union have agreed to completely exclude compensation for donning and doffing/washing time.  At least one court, however, has considered a situation like the one at bar, where an employer compensated employees for a certain amount of time for those activities, based on an "allowance" pursuant to a collective bargaining agreement.  *Hoover v. Wyandotte Chemicals Corp.*, 455 F.2d 387 (5th Cir. 1972).  The *Hoover* court upheld the employer's custom and practice under a collective bar-

gaining agreement of compensating only for that allowance time, and did not require the employer to compensate for either no donning and doffing/washing time or all of it.  *Id.* at 389.[2]

The CBA here expressly addresses donning safety clothes at the beginning of the day and showering at the end of the day, and the Court finds that C&D and the Union properly provided for an allowance for those activities.  C&D need not compensate its employees for *all* of the time spent performing those activities because it properly bargained with the Union to exclude some of that time and compensate only for an allowance.  The plain language of Section 203(o) – which allows an employer and a union to agree to exclude *any* time spent changing clothes or washing at the beginning or end of each workday – does not require, as Plaintiffs argue, that the employer and the union either bargain to exclude *all* time or *no* time, and Plaintiffs have not pointed to any authority imposing such a limitation.  Therefore, the Court finds that the agreement between C&D and the Union, as evidenced in the CBA's express terms, properly limited compensation for donning safety clothing at the beginning of a shift to a 5-minute allowance, and for showering at the end of a shift to a 10-minute allowance.

### b.  Custom and Practice

While the CBA mentions donning safety clothing at the beginning of the day and showering at the end, it does not specifically address doffing the safety clothing at the end of the day.  Under Section 203(o), an employer and a union can agree to exclude time (or partial time) spent donning, doffing, and washing even where those activities are not set forth in the CBA, if a custom or practice of non-compensation (or, in this case, partial compensation) has been established over time.  *See Marshall v. Amsted Rail Co.*, 817 F.Supp.2d 1066, 1078 (S.D. Ill. 2011) (non-

---

[2] *Helmert v. Butterball, LLC*, 805 F.Supp.2d 655 (E.D. Ark. 2011), relied upon by Plaintiffs, did not involve employees represented by a union, and the court there did not discuss Section 203(o) at all.

payment for donning and doffing protective equipment established by custom or practice where employer and union had negotiated several collective bargaining agreements over the years, and union never challenged policy of nonpayment); *Arcadi v. Nestle Food Corp.*, 38 F.3d 672, 675 (2d Cir. 1994) ("If the parties to a collective bargaining agreement negotiate over an issue and have an understanding that resolves it, then a 'practice' exists, even in the absence of express written terms"); *Hoover*, 455 F.2d at 389 (union's abandonment of demand for 23-25 minute paid donning/doffing/washing time constituted union's acquiescence to employer's custom and practice pursuant to collective bargaining agreement of compensating for only 15-minute allowance).

The Court finds that, to the extent "doffing" the safety clothing is not specifically mentioned in the CBA,[3] it falls within the ten-minute allowance provided for in the CBA based on the fact that C&D has been compensating in that fashion since 1967, [dkt. 78 at 2, ¶ 3], and because the CBA's ten-minute allowance indicates that the issue of compensating for doffing likely arose at the bargaining table while the allowance time was being discussed.  *Hoover*, 455 F.2d at 389.  *Cf. Figas v. Horsehead Corp.*, 2008 U.S. Dist. LEXIS 87199, * 50 (W.D. Pa. 2008) (court declined to find custom and practice of excluding donning, doffing, and washing time from compensation where there was no evidence union "had informally considered and abandoned efforts to seek compensation for…employees' donning and doffing time").

Accordingly, the Court finds as a matter of law that the five-minute allowance at the beginning of the day and the ten-minute allowance at the end of the day properly compensates

---

[3] The paragraph in question does specifically reference "changing clothes" and it must be noted that an employee cannot shower without doffing safety clothing. The Court concludes that C&D and the Union must have intended that the act of doffing be included in the ten-minute allowance for showering.

C&D employees for all time spent donning safety clothing, doffing that clothing, and showering under Section 203(o), the CBA's express terms, and C&D's custom and practice under the CBA.

2. *"Beginning Boundary Activities" and "Ending Boundary Activities"*

Having determined that the "Donning" and "Doffing/Washing" periods are compensable activities properly limited by the five-minute allowance at the beginning of a shift and the ten-minute allowance at the end of a shift, the Court turns next to whether all or part of the "Beginning Boundary Activities" and "Ending Boundary Activities" properly fall within those allowances as well. As set forth above, "Beginning Boundary Activities" include walking from the locker room to the safety gear area to pick up safety gear (only for some employees), walking to the "white time card area," punching the white time card, walking to the work area, and donning safety gear (again, only for some employees). "Ending Boundary Activities" include doffing safety gear (for some employees), walking from the work area to the "white time card area," punching the white time card, walking to the "wash out room" to return safety gear (for some employees) and vacuum safety clothing if desired, and walking to the locker room to begin the "Doffing/Washing" period.

a. *Section 203(o)*

C&D does not explicitly argue that it and the Union were entitled to bargain under Section 203(o) regarding the other activities which take place before and after an employee punches his or her white card, *i.e.*, "Beginning Boundary Activities" and "Ending Boundary Activities." Rightly so, because Section 203(o) does not provide C&D with an avenue to negotiate an allowance for those types of activities. Section 203(o) only covers bargaining related to "changing clothes or washing at the beginning or end of each workday," 29 U.S.C. §203(o). *See, e.g., Sala-*

- 14 -

*zar v. Butterball, LLC*, 644 F.3d 1130, 1143 (10th Cir. 2011) (Section 203(o) only applies to changing clothes at beginning and end of day, and not walking time).

### b.  Section 254

C&D does argue that the activities included in "Beginning Boundary Activities" and "Ending Boundary Activities" are the types of pre- and post-shift activities whose compensation can be bargained for under Section 254.  [Dkt. 95 at 6.]  It asserts that travelling to and from locker rooms, work stations, wash areas, and the vacuum and respirator storage area, plus "any other incidental activities," are impliedly covered by the CBA's language regarding the five- and ten- minute allowances.  [*Id.* at 7-8.]  Plaintiffs respond that Section 254 does not apply because the "Beginning Boundary Activities" and "Ending Boundary Activities" do not occur preliminary to the first principal activity of the day – donning safety clothing – and postliminary to the last principal activity of the day – doffing and washing.  [Dkt. 106 at 14-16.]

An activity is considered "principal" when it is an "integral and indispensable part of the principal activities" for which the employee is employed.  *Steiner*, 350 U.S. at 256.  If an employee is required to don and doff work clothes to perform their work, then donning and doffing are considered principal activities.  *Id.*  Some courts have held that donning and doffing are rendered *not* principal activities when they are exempted from compensation under Section 203(o).  *See Sandifer v. United States Steel Corp.*, 678 F.3d 590, 596-97 (7th Cir. 2012) ("If clothes-changing time is lawfully not compensated [under Section 203(o)], we can't see how it could be thought a principal employment activity…").  But that is not the case here, where C&D and the Union agreed to include those activities for compensation purposes – albeit perhaps only partial-

ly.[4]  Accordingly, the Court finds that donning safety clothing is the first principal activity of the day for C&D employees, and doffing that clothing and showering is the last principal activity of the day.

Given this finding, the Court must consider whether C&D and the Union could bargain to limit compensation for "Beginning Boundary Activities" and "Ending Boundary Activities" within the five-minute and ten-minute allowances.  It is well-settled that Section 254 only exempts from compensation preliminary activities occurring before the first principal activity of the day, and postliminary activities occurring after the last principal activity of the day.  *See Sandifer*, 678 F.3d at 596; *IBP, Inc. v. Alvarez*, 546 U.S. 21, 27 (2005).  Because the Court finds that donning is the first principal activity of the day, and doffing and showering are the last principal activities of the day, it follows that all of the activities in-between – including "Beginning Boundary Activities" and "Ending Boundary Activities" – are potentially compensable and do not properly fall within the five- and ten-minute allowances.  *See Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 174 (7th Cir. 2011) (work performed after first principal activity compensable and not excluded by Portal-to-Portal Act); *IBP, Inc.*, 546 U.S. at 36-37 (when donning is first principal activity, time spent walking from locker room to worksite and from worksite to locker room is not time spent walking to and from a principal activity, but is time walking *between* principal activities, so does not fall within Section 254's exemption from compensation; donning and doffing define "the outer limits of the workday").

C&D argues that Section 254(b) allows an employer and a union to agree to compensate for activity otherwise rendered noncompensable by Section 254(a) through an express provision in a contract or a custom or practice.  [Dkt. 95 at 6.]  It also argues that Section 254(c) makes ac-

---

[4] The Court is in no position to determine whether the bargained for allowances are sufficient time to accomplish the activities meant to be accomplished within them.  There is no evidence.

tivities covered by Section 254(b) compensable only when they are engaged in "during the portion of the day with respect to which it is so made compensable," and that Section 254(d) allows employers and unions to agree to compensate for only part of the time spent performing activities covered by Section 254(a).  [*Id.* at 10.]  The problem with C&D's reliance on Sections 254(b), (c), and (d), however, is that those provisions only apply to activities covered by Section 254(a).  Because the "Beginning Boundary Activities" and "Ending Boundary Activities" fall between the first principal activity of the day ("Donning") and the last ("Doffing/Washing"), they do not fall within Section 254(a) in the first instance and, consequently, none of the provisions that follow apply.  Accordingly, the Court finds as a matter of law, that C&D could not bargain to exclude compensation for the "Beginning Boundary Activities" or "Ending Boundary Activities" based on the stipulated facts.

### c.  The De Minimus Doctrine

It is possible, however, that some or all of those activities may not be compensable because they are *de minimus*.  Under the *de minimus* doctrine, time that is otherwise compensable need not be included in the "hours worked" calculation where the time period "as a practical administrative matter, cannot be adequately recorded for payroll purposes."  *Alexander v. Wackenhut Corp.*, 2008 U.S. Dist. LEXIS 50070, *18 (E.D. La. 2008); s*ee also Sandifer*, 678 F.3d at 593 ("'Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act.  It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved'") (citation omitted).

The Court finds that the acts of punching the white time card right before arriving at the work station, donning safety gear such as a respirator (if necessary), doffing that safety gear, and

punching the white time card upon leaving the work station are all *de minimus* activities which are non-compensable under the FLSA. *Von Friewalde v.  Boeing Aero. Operations, Inc.*, 339 Fed. Appx. 448, 454 (5th Cir. 2009) ("clocking in and out on AutoTime (a process that normally took seconds), and donning and doffing generic safety gear (*e.g.*, hearing and eye protection) involved a *de minimus* amount of time and therefore were non-compensable activities under the FLSA").

The Court is left with the "Beginning Boundary Activities" of walking from the locker room to the safety gear area to pick up safety gear (for some employees), walking to the "white time card area," and walking to the work area to begin work on the line, and the "Ending Boundary Activities" of walking from the work area to the "white time card area," walking to the "wash out room" to return safety gear and vacuum clothes (for some employees), and walking back to the locker room.  These remaining activities may or may not be *de minimus* – the Court simply cannot tell based on the record before it.  The parties have not presented any evidence regarding how far each of these distances is, or how long it might take an employee to follow this path.  Is the safety gear area a ten-minute walk from the locker room, or is it next-door? Does it take two minutes to walk from the work area to the locker room at the end of a shift or eight?  Does the time and distance vary based on where the employee works on the line?  The questions are numerous, and currently there are no answers before the Court.  Accordingly, the Court denies summary judgment for both C&D and Plaintiffs regarding whether these remaining "Beginning Boundary Activities" and "Ending Boundary Activities" are compensable.  *See Alexander*, 2008 U.S. Dist. LEXIS 50070 at *20 ("Because the parties' treatment of [the amount of time to perform certain activities] in their briefs and supporting evidence is not sufficiently tai-

lored to the inquiry outlined herein, however, the Court is unable to render summary judgment in either side's favor on this issue at this juncture").

### B.  Compensation for "Pre-Donning Activities" and "Post-Doffing Activities"

The "Pre-Donning Activities" and "Post-Doffing Activities" are few, and include punching the yellow time card upon arrival at the plant and walking to the locker room at the beginning of the shift, and walking from the locker room to the "yellow time card area" and punching the yellow time card upon exiting the plant.  None of these activities are compensable under Section 254 because they take place either before the first principal activity ("Donning") or after the last principal activity ("Doffing/Washing").  *See, e.g., IBP, Inc.*, 546 U.S. at 27.  Accordingly, the Court finds as a matter of law that any activities occurring before the "Donning" period and after the "Doffing/Washing" period are not compensable under Section 254 of the Portal-to-Portal Act.

### C.  Compensation Based Upon An Eight-Hour Shift

The parties stipulated that C&D pays its employees based on the time they are scheduled to work.  [Dkt. 78 at 3, ¶¶ 6, 8, 11.][5]  If an employee is scheduled for an eight-hour shift, he or she is paid eight hours.  [*Id.* at 5, ¶ 11.]  C&D stipulated that it does not pay, and has never paid, its employees based on the time that elapses between the yellow time card punches or the white time card punches.  [*Id.* at 3-4, ¶¶ 7-8.]

---

[5] The Court notes some confusion, however, regarding how C&D actually pays its employees. Contrary to its stipulation discussed above, C&D implies that it pays its employees for the time that elapses between the white time card punches, plus fifteen minutes (the five-minute allowance at the beginning of the day, and the ten-minute allowance at the end).  [Dkt. 95 at 23 ("C&D does keep track of production work via the use of the white timecards which must be punched by employees no later than 5 minutes after the start of their shift and 10 minutes before the end of their shift….C&D then pays employees for the additional 5 and 10 minute timeframes allotted for these pre- and postshift…activities").]

Plaintiffs argue that C&D is violating the FLSA by not paying employees based on the actual time worked, but instead paying by the length of their shift. [Dkt. 89 at 29-31.] C&D responds that it has not violated any recordkeeping provisions of the FLSA because it does keep track of actual time worked through the white time card punches. [Dkt. 95 at 23-24.]

The Court finds nothing in the FLSA that makes paying based on the length of the shift a *per se* violation, so long as the employer keeps adequate records of the actual time worked and is, in fact, paying for all of that time. The cases Plaintiffs point to all involved situations where the employer was not keeping records at all, and paid based on the length of the shift because that is the only information it had. *See, e.g., Williams v. Tri-County Growers, Inc.*, 747 F.2d 121 (3d Cir. 1984) (employer violated FLSA by failing to keep records of actual hours worked and compensating employees based on periodic observations of their work in the fields and number of bushels of fruit they picked); *Wirtz v. Williams*, 369 F.2d 783 (5th Cir. 1966) (practice of paying truck drivers by estimated time trip should take, rather than actual driving time, violated FLSA where employer kept no records of actual driving time). Plaintiffs have not alleged that C&D is not keeping records of actual time worked, only that it does not pay its employees based on those records.

From the facts before the Court, it is not possible to determine whether paying based on the eight-hour shift violates the FLSA. If the time which elapses from the initial white time card punch to the ending white time card punch, plus the 5-minute and 10-minute allowances, and plus any other time within "Beginning Boundary Activities" and "Ending Boundary Activities" which ends up being compensable is less than or equal to eight hours, then C&D is not violating the FLSA. If that total time is greater than eight hours, then paying just for the eight-hour shift

does violate the FLSA.[6]  *See Helmert*, 805 F.Supp.2d at 668 ("In order to recover the plaintiffs will have to establish that they were paid less than minimum wage for any hours worked up to forty hours per week or that they were compensated at a rate less than time and a half for hours worked in excess of forty hours per week…. If Butterball's pay practices…meet these minimum wage and overtime requirements, then the plaintiffs will not be entitled to relief.  No evidence has been presented as to whether Butterball's pay practices meet these requirements, so neither party is entitled to summary judgment on this issue").  Because the facts presented by the parties do not allow the Court to make that determination, Plaintiffs' Motion for Partial Summary Judgment on the propriety of paying by the eight-hour shift is denied and this issue will need to be determined at trial.

## IV.
### CONCLUSION

For the foregoing reasons, C&D's Motion for Partial Summary Judgment, [dkt. 94], is **GRANTED** only to the extent that the Court finds as a matter of law that: (1) C&D's and the Union's agreement that employees be compensated for a five-minute allowance for "Donning" and a ten-minute allowance for "Doffing/Washing" is proper under 29 U.S.C. § 203(o); and (2) time spent before the "Donning" period and after the "Doffing/Washing" period is not compensable under 29 U.S.C. § 254.  The remainder of C&D's Motion for Partial Summary Judgment is **DENIED**.  Plaintiffs' Motion for Partial Summary Judgment, [dkt. 88], is **GRANTED** only to the extent that the Court finds as a matter of law that C&D cannot properly include activities in the "Beginning Boundary Activities" and "Ending Boundary Activities" periods that are other-

---

[6] Plaintiffs argue that "C&D even admits that it owes money for additional time worked if wages were calculated using its yellow time card punches."  [Dkt. 89 at 29.]  All C&D "admits," how-ever, is that "whenever [the yellow time card punches] fell outside the scheduled shift times…" it would pay its employees for additional time worked if it paid them based on the yellow time card punches.  [Dkt. 78 at 3, ¶ 7.]  This says nothing about whether, or how often, this might occur.

wise compensable in the five-minute allowance at the beginning of a shift and the ten-minute allowance at the end of a shift, and must compensate for the time spent performing those activities.  The remainder of Plaintiffs' Motion for Partial Summary Judgment is **DENIED**.

10/03/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Samuel K. Conrad
FAEGRE BAKER DANIELS LLP - Fort Wayne
samuel.conrad@faegrebd.com

Robert Peter Kondras Jr.
HUNT HASSLER & LORENZ LLP
kondras@huntlawfirm.net

Martha Moorehead Lemert
FAEGRE BAKER DANIELS LLP - Fort Wayne
martha.lemert@faegrebd.com

Tareen  Zafrullah
FAEGRE BAKER DANIELS LLP - Indianapolis
tareen.zafrullah@faegrebd.com