## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSHUA D. JONES, JOEY PYCKE, | ) | |
| EDWARD PURCELL, | ) | |
| CHARLES R. IRONS, | ) | |
| RONDA THOMPSON, | ) | |
| KELLY SCHREIBER, et al. | ) | |
| | ) | **FLSA COLLECTIVE ACTION** |
| Plaintiffs | ) | **COMPLAINT UNDER** |
| | ) | **29 USC § 216(b)** |
| | ) | |
| vs. | ) | CASE NO. 1:11-cv-1431 JMS-DKL |
| | ) | |
| C & D TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT
## C & D TECHNOLOGIES, INC.'S SECOND CROSS-MOTION
## FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.    Introduction

C&D paid employees for all actual hours worked per shift, normally 8 hours per day.

Significantly, as the Court stated in its Order on the parties' first motions for partial summary

judgment (Docket No. 116), if the time that elapses from the initial white time card punch to the

ending white time card punch, plus the 5-minute and 10-minute allowances, plus any other time

within the Beginning Boundary Activities and the Ending Boundary Activities that ends up being

compensable, is less than or equal to eight (8) hours, then C&D is not violating the FLSA by

paying for eight (8) hours per shift.  Thus, an important issue in this case is what time within the

Beginning Boundary Activities and the Ending Boundary Activities constitutes compensable

hours worked.  Plaintiffs' meal breaks occur within the Beginning Boundary Activities and the

Ending Boundary Activities.  Though paid, Plaintiffs' meal breaks do not constitute compensable

hours worked.

Because there is no agreement to treat the meal break as non-worked time between C&D and the Union, C&D is correct in including pay for meal breaks in the regular rate for calculation of overtime. Further, the fact that C&D has included the meal break pay in the regular rate has nothing to do with the issue of whether or not the meal break time is working or non-working time.

Walking, respirator pick up, washing, and vacuuming occur within the Beginning Boundary Activities and the Ending Boundary Activities. Although C&D and Plaintiffs disagree as to whether these activities take 3.43 minutes or 8.343 minutes to perform, either way, the time is *de minimis* as Courts generally consider time less than ten minutes to be *de minimis*. The 7.96 differential between the white clock punch in and punch out time in the sampling does not help the Plaintiffs overcome the *de minimus* nature of their claim. If you take the 7.96, add 15 minutes for showering and changing, and the 8.343 high end estimate, you still come up with a total amount of time less than the 25 minutes afforded for meal breaks each day.

Based on the Court's Order (Docket No. 116), another issue is whether Plaintiffs performed less than eight (8) hours of compensable work each day. To the extent Plaintiffs claim they are entitled to additional compensation for unpaid time worked under 40 hours (i.e., gap time) in any given workweek, their claim fails because not only did C&D pay employees for eight (8) hours per day, but also, it paid employees extra compensation through a premium rate for hours worked in excess of eight per day or hours worked on the sixth or seventh day of the workweek. C&D is entitled to offsets for such premium payments, and Plaintiffs concede such in their brief.

Liquidated damages are not appropriately applied in this case. C&D acted pursuant to longstanding language in a Collective Bargaining Agreement ("CBA") that set aside time at the

beginning and end of each shift for beginning and ending boundary activities. The Court's Order (Docket No. 116) holding an employer and union cannot bargain about walking, washing, and vacuuming if they have agreed that changing and showering are compensable or partially compensable, is a decision of first impression on this particular issue. Accordingly, Plaintiffs cannot recover liquidated damages under the FLSA because C&D acted in good faith with reasonable grounds to believe its actions did not violate the FLSA. The FLSA's two (2) year statute of limitations, not three (3) year statute of limitations also applies because the violation was not willful.

Accordingly, C&D respectfully requests that the Court grants its Second Motion for Partial Summary Judgment.

## II.     Statement Of Material Facts Not In Dispute

### A.     Meal Breaks

1.      Several years ago, before the time period relevant to this lawsuit, C&D provided some employees 30 minutes of unpaid meal time and allowed them to leave the facility during the meal break; however, the Environmental Protection Agency ("EPA") disapproved because employees were potentially tracking lead into the community by exiting the facility without changing clothes or showering. Affidavit of Bruce Donovan ("Donovan Aff.") ¶ 5 [dkt. 262-2].

2.      As a result, C&D required employees to remain at the facility during meal breaks, reduced the meal time from 30 minutes to 20 minutes, and paid for the meal time. Donovan Aff. ¶ 6 [dkt. 262-2].

3.      During the time period relevant to this lawsuit, C&D provided 25 minutes of paid meal time each shift (i.e., 20 minutes to eat and walk plus five (5) minutes to wash up before eating). The meal breaks generally occur at a time of the day or shift

when people normally consume meals.  Donovan Aff. ¶ 7 [dkt. 262-2]; Deposition of Joshua Abernathy ("Abernathy Dep.") 17:24-25 [dkt. 262-10]; Deposition of Joshua Jones ("Jones Dep.") 38:22-39:5 [dkt. 262-17]; Deposition of Ramon Robbins ("Robbins Dep.") 14:21-22 [dkt. 262-7]; Deposition of Rickie Winchester ("Winchester Dep.") 11:9-18; 12:3-7 [dkt. 262-9]; Deposition of Mark Taylor ("Taylor Dep.") 13:3-15 [dkt. 262-8]; Deposition of Andrew Geyer ("Geyer Dep.") 18:2-4 [dkt. 262-11]; Deposition of Samuel Gritten ("Gritten Dep.") 18:1-3 [dkt. 262-6].

      4.      The only reference in the CBA to meal breaks is the provision providing a five (5) minute washup period before lunch.  Donovan Aff. ¶ 4 [dkt. 262-2]; Ex. A [dkt. 262-3], Article 18, Paragraph B; Winchester Dep. 10:4-11:8 [dkt. 262-9].

      5.      Video surveillance from May 2013 shows C&D employees enjoying sufficient, uninterrupted time to eat regular meals, and employees testified as such. Donovan Aff. ¶ 8 [dkt. 262-2]; Ex. B [dkt. 262-4]; Deposition of Ted Deckard ("Deckard Dep.") 13:13-15 [dkt. 262-5]; Gritten Dep. 22:13-24; 24:4-26:17; Ex. 7 [dkt. 262-6]; Robbins Dep. 19:15-20:1 [dkt. 262-7]; Taylor Dep. 12:25-13:8; 14:12-15:1; 16:7-20:8; Ex. 3 [dkt. 262-8]; Ex. 4 [dkt. 262-8].

      6.      Although the video surveillance was conducted after the time period relevant to this lawsuit, the meal breaks were the same during both the time period relevant to this lawsuit and the time period the video surveillance was conducted, and employees testified as such.  Donovan Aff. ¶ 9 [dkt. 262-2]; Gritten Dep. 19:14-19 [dkt. 262-6]; Robbins Dep. 17:5-8 [262-7]; Taylor Dep. 14:2-11 [dkt. 262-8]; Winchester Dep. 13:4-11 [dkt. 262-9].

7.      Because employees work with large batteries and lead, employees cannot and do not eat on the production floor, and cannot and do not perform production work in the eating areas.  Also, due to the lead, C&D does not employ minors.  Donovan Aff. ¶ 10 [dkt. 262-2]; Abernathy Dep. 24:11-19; 25:23-26:4 [dkt. 262-10]; Deckard Dep. 14:11-25 [dkt. 262-5]; Geyer Dep. 18:23-19:1; 19:10-17 [dkt. 262-11]; Gritten Dep. 20:15-21; 21:6-9; 22:25-23:5 [262-6]; Robbins Dep. 17:17-18:4 [dkt. 262-7]; Taylor Dep. 15:13-16:6; 21:18-22 [dkt. 262-8]; Winchester Dep. 12:13-13:3 [dkt. 262-9].

8.      No employee ever filed a grievance complaining that he or she did not receive sufficient meal time.  The Union never made proposals in negotiations regarding meal breaks.  No written agreement regarding meal breaks exists.  Donovan Aff. ¶ 4, 11 [dkt. 262-2]; Deposition of Phyllis Hill ("Hill Dep.") 7:11-23; 29:20-23; 31:7-20 [dkt. 262-14]; Abernathy Dep. 22:11-13; 27:11-14 [dkt. 262-10]; Jones Dep. 45:17-22 [dkt. 262-17]; Winchester Dep. 15:25-16:3; 16:21-17:20 [dkt. 262-9]; Geyer Dep. 22:19-23; 24:7-9 [dkt. 262-11].

**B.      Gap Time And Premium Pay**

9.      The average wage rate at C&D's Attica, Indiana, facility is over $20 per hour.  Donovan Aff. ¶ 12 [dkt. 262-2].  C&D pays extra compensation in the form of a premium rate for shift differentials on 2nd and 3rd shifts, for hours worked in excess of eight (8) per day, and hours worked on the sixth or seventh day of the workweek whether or not employees worked in excess of 40 hours in a workweek whether or not employees worked in excess of 40 hours in a workweek.  Donovan Aff. ¶ 13 [dkt. 262-2]; Ex. A [dkt. 262-3], Article 4, Para. B, Article 6, Para. D.

## C. <u>Washing, Walking, And Vacuuming</u>

10.     C&D's expert Dr. Robert Radwin calculated that it takes a total of 3.43 minutes to perform walking and respirator pick up at the beginning and end of the shift; he observed employees at shift end, but did not observe employees perform vacuuming or washing at shift end before employees entered the locker rooms to change and shower. Deposition of Robert Radwin ("Radwin Dep.") 9:19-11:14; 19:21-20:20; Ex. 41 [dkt. 262-12].

11.     Radwin applied industrial engineering standards to measure the distance between each of the locker rooms and each white time clock location.  Radwin also measured the distance involved in walking to and from the respirator room.  Radwin had access to information regarding what lockers employees used as well as whether Plaintiffs had ever worn a respirator.  Radwin applied conservative estimates of walking speeds to arrive at an average amount of walking time at 3.43 minutes. Radwin Dep. 10:23-11:14; 16:7-17:18; 18:6-10; 20:3-16; Ex. 41 at 3-4, 7-8 [dkt. 262-12].

12.     Dr. Radwin's Supplemental Report, which is based on his observation of videos, states the average amount of time it takes to perform hand washing is 0.637 minutes.  Radwin Dep. 29:14-22; 30:18-25; Ex. 44 [dkt. 262-12].

13.     One of the Plaintiffs, Rick Winchester, timed himself on his phone one day stating it takes 3:07.4 minutes to perform walking and respirator pick up at the beginning of the shift and 5:13.2 minutes to perform walking, washing, respirator drop off and vacuuming at the end of the shift, for a total of 8:20.6 minutes or 8.343 minutes. Winchester Dep. 19:2-9; Ex. 11 [dkt. 262-9].

14.     Winchester performed vacuuming during his self timing, but Winchester admitted that other employees do not perform vacuuming every day.  Winchester Dep. 22:9-24:12 [dkt. 262-9].

15.     In his deposition, Winchester stated the vacuuming takes three (3) minutes and the washing takes three (3) minutes, which adds up to six (6) minutes;  Winchester also claimed the walking took up the bulk of the time at the beginning and end of the shift.  However, his time study stated the walking, washing, and vacuuming add up to 5:13.2 minutes.  Winchester Dep. 25:14-27:3 [dkt. 262-9].

16.     Winchester's self-timing measures only one employee (himself) on only one day and from only one white time clock location.  Winchester Dep. 18:2-18; 20:22-21:3 [dkt. 262-9].

17.     C&D acted pursuant to a Collective Bargaining Agreement in treating walking, washing, and vacuuming time together with showering and changing time. Donovan Aff. ¶ 4 [dkt. 262-2]; Ex. A [dkt. 262-3], Article 18, Paragraph B.

**D.     White time cards**

18.     Sampled work weeks of white time cards do show an average of 7.96 between white card punches.  Most cards showed punches on the end of the shift of ten minutes prior to the end of the shift.  Punch in times generally range from a few minutes after the start of the shift to about ten minutes prior to the start of the shift.   Affidavit of Margaret Sofio ("Sofio Aff.") ¶ 3; Ex. A [dkt. 262-16]; Jones Dep. 30:12-24; 31:17-32:11; Ex. 33 [dkt. 262-17]; Winchester Dep. 32:7-33:1; Ex. 12 [dkt. 262-9]; Taylor Dep. 23:14-24:4; 25:4-18; 25:24-26:7; 26:22-27:3; Ex. 5 [dkt. 262-8]; Geyer Dep. 24:24-25:15; 26:15-20; Ex. 6 [dkt. 262-11].

19.     At the beginning of a shift, some employees' white cards were inexplicably punched prior to the punch of their yellow card and prior to changing clothes.[1]  Yellow timecard stations are located at the two employee entrances at the outer perimeter of the facility.  Donovan Aff. ¶ 14.  White timecard stations during the relevant period of this lawsuit were located at various locations in the plant inside production areas.  In sampling, 5.59% of white timecards were punched before the yellow and are highlighted.  Donovan Aff. ¶ 14 [dkt. 262-2].  Sofio Aff. ¶ 3; Ex. A [dkt. 262-16]; Abernathy Dep. 32:23-33:7; 34:14-35:10; Ex. 2 [dkt. 262-10].

20.     Other employees punched white cards after changing but before beginning production work.  Employees would wait for a supervisor to conduct a production meeting at five minutes after the start of the shift and then begin production work.  Jones Dep. 16:10-17:4 [dkt. 262-17]; Robbins Dep. 12:6-13:12 [dkt. 262-7]; Taylor Dep. 7:12-8:20 [dkt. 262-8]; Geyer Dep. 9:9-16 [dkt. 262-11].

21.     Employees understood that they needed to be at their work areas ready to start no later than five minutes after the start of their shifts and that was the latest they could punch their white cards.  Taylor Dep. 7:12-8:20 [dkt. 262-8]; Geyer Dep. 10:17-11-7 [dkt. 262-11].

22.     The Beginning Boundary activities of changing clothes, getting a respirator and walking to the work area took less time than the Ending Boundary

---

[1] Because of the location of the yellow and white timecards, the most plausible explanation is that employees have had white cards punched for them by early arriving employees on the front end of a shift.  It was admitted in deposition testimony that this occurs routinely on the back end of the shift.  Compare Abernathy Dep. 32:23-33;7; 34:14-35:10 [dkt. 262-10] and Robbins' Dep. 20:9-21:11; 22:1-23:10; 23:24-24:3 [dkt. 262-7].  At minimum, having white punches prior to yellow calls into question the sequence and timing of beginning boundary activities.

activities of walking to the lockers, turning in a respirator, washing, vacuuming, showering and changing. Jones Dep. 21:1-4 [dkt. 262-17]; Winchester Dep. 27:22-25-28:1-7 [dkt. 262-9].

23.     At the end of the shift, some employees left earlier than ten minutes before the end of the shift to start washing, showering and changing. It was not uncommon for one member of a department to stay behind and punch fraudulently others' time cards at ten minutes before the end of the shift while everyone else went up to shower. Robbins Dep. 20:9-21:11; 22:1-23:10; 23:24-24:3 [dkt. 262-7]; Hill Dep. 34:3-12 [dkt. 262-14]; Abernathy Dep. 31:13-32:9 [dkt. 262-10]; Geyer Dep. 14:19-15:15 [dkt. 262-11].

24.     Unless scheduled to work pre-shift overtime, no employee was required to show up prior to the start of the shift. C&D did allow employees to arrive early and did not bar them from entering the building when they did so. Donovan's Aff. ¶ 15 [dkt. 262-2].

## III.     Argument

### A.     PLAINTIFFS' Meal Breaks Do Not Constitute Compensable Hours Worked Under The FLSA

#### 1.     Under The Seventh Circuit's Predominant Benefits Test, Plaintiffs' Meal Breaks Do Not Constitute Compensable Hours Worked

Under the FLSA, the plaintiff has the burden of proving hours worked. *See* Posada v. James Cello, Inc., 2005 WL 1390133, *2 (11th Cir. 2005) (unpublished) ("the employee bears the initial burden to show the amount of hours worked"); *see also* Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003) ("An employee who sues for unpaid minimum wages or overtime compensation has the burden of providing that the employer did not compensate him for completed work"). Contrary to Plaintiffs' characterization of the issue, C&D is not arguing that it is entitled to a credit or offset for the pay employees received for meal time. Instead,

C&D is arguing that the meal time does not constitute hours worked.[2] Per the Court's Order (Docket No. 116), an important issue in this case is what time within the Beginning Boundary Activities and the Ending Boundary Activities constitutes compensable hours worked.

Meal periods ordinarily do not constitute compensable hours worked under the FLSA. *See* <u>Barefield v. Vill. of Winnetka</u>, 81 F.3d 704, 710 (7th Cir. 1996). Under the Seventh Circuit's predominant benefits test, C&D's meal breaks do not constitute hours worked if the employee's time is not spent predominantly for the employer's benefit. *See* <u>Leahy v. City of Chicago, Ill.</u>, 96 F.3d 228, 230 n.2 (7th Cir. 1996); <u>Barefield v. Vill. of Winnetka</u>, 81 F.3d 704, 710 (7th Cir. 1996); <u>Mitchell v. JCG Industries</u>, 929 F.Supp.2d 827 (N.D. Ill. 2013); <u>Edmonds v. Feralloy Midwest Corp.</u>, 2009 WL 1605156, *5 (N.D. Ind. 2009) (unreported); *see also* <u>Lee v. Coahoma County, Miss.</u>, 937 F.2d 220 (5th Cir. 1991) (court held 20 minute meal break constituted a bona fide meal period and was not compensable); <u>Blain v. Gen. Elec. Co.</u>, 371 F.Supp. 857 (W.D. Ky. 1971) (court held 18 minute meal break constituted a bona fide meal period and did not constitute hours worked). Here, the employees' meal breaks are not spent predominantly, or at all, for the employer's benefit. Instead, C&D employees enjoy sufficient, uninterrupted time to eat regular meals, and they cannot and do not perform production work while eating because they work with large batteries and lead.[3] Donovan Aff. ¶¶ 8, 10 [dkt. 262-2]; Ex. B [dkt. 262-4]; Abernathy Dep. 24:11-19; 25:23-26:4 [dkt. 262-10]; Deckard Dep. 14:11-25 [dkt. 262-5]; Deposition of Andrew Geyer ("Geyer Dep.") 18:23-19:1; 19:10-17 [dkt. 262-11]; Gritten Dep. 20:15-21; 21:6-9; 22:25-23:5 [dkt. 262-6]; Robbins Dep. 17:17-18:4 [dkt. 262-

---

[2] While Plaintiffs' attempt to characterize this as a credit, it is not an affirmative defense. Rather, it is a part of Plaintiffs' *prima facie* case to establish actual hours worked. *See Brown v. Family Dollar Stores of IN, LP,* 534 F.3d 593, 594 (7th Cir. 2008) ("An employee bears the burden of proving that she performed overtime work for which she was not properly compensated.")
[3] Contrary to Plaintiffs' assertion, C&D did not admit that it does not have any records of meal breaks; in fact, C&D's video surveillance from May 2013 shows employees receiving meal breaks. Deposition of Jason Young ("Young Dep.") 20:2-8; 21:22-22:1; Donovan Aff. ¶ 8 [dkt. 262-2].

7]; Taylor Dep. 15:13-16:6; 21:18-22 ; Winchester Dep. 12:13-13:3.  Thus, under the Seventh

Circuit's predominant benefits test, Plaintiffs' meal breaks do not constitute compensable hours

worked.

> **2.    Under The Factors Considered by the U.S. Department Of Labor ,
> Plaintiffs' Meal Breaks Do Not Constitute Compensable Hours
> Worked**

Although 29 C.F.R. § 785.19 sets a general rule that meal periods at least 30 minutes in

length are non-compensable, it also states that meal periods shorter than 30 minutes in length are

non-compensable if special conditions are met, and no court has held or implied that a meal

period of less than 30 minutes is necessarily compensable.  *See* Blain v. Gen. Elec. Co.,

371 F.Supp. 857, 861 (W.D. Ky. 1971); *see also* Lee v. Coahoma Cnty., Miss., 937 F.2d 220,

225 (5th Cir. 2011); *cf.* Adventist Glenoaks Hosp. v. Sebelius, 2010 WL 3516118 (N.D. Ill.

2010), aff'd, 663 F.3d 939 (7th Cir. 2011).

Time spent walking to and from a meal is also considered part of the meal break.  *See*

Sepulveda v. Allen Family Foods, Inc., 591 F.3d 209, 216 n.4 (4th Cir. 2009) ("Lastly, the

employees seek compensation for the time they spend during their meal breaks donning and

doffing a few items, washing, and walking to and from the cafeteria.  This time is non-

compensable, however, because it is part of a bona fide meal period . . . and, in the alternative, de

minimis.").  Thus, the fact that employees wash, eat and walk during the 25 minutes given for

these activities instead of only eating during the 25 minutes does not mean the time constitutes

compensable hours worked.  Under the U.S. Department of Labor ("DOL") Field Operations

Handbook, meal breaks shorter than 30 minutes do not constitute hours worked if specified

conditions are met.[4]  *See* U.S. Dep't of Labor, Field Operations Handbook, Section 31b23.

Specifically, five factors must be met:  (1) work-related interruptions to the meal period are

_____

[4] Neither the statute nor the regulations define what is meant by "special conditions."  *See* 29 C.F.R. § 785.19.

sporadic and minimal; (2) employees have sufficient time to eat a regular meal; (3) the period

involved is a break to eat a full meal, comes at a time of the day or shift that meals are normally

consumed, and occurs with no more frequency than is customary; (4) there is an agreement

between the employees and employer that the period of less than 30 minutes is sufficient to eat a

regular meal; and (5) applicable state or local laws do not require meal periods in excess of the

period indicated.[5]

Here, all five factors are met. The first, second, and third factors are met because the

employees cannot and do not perform production work while eating because they work with

large batteries and lead, the employees enjoy sufficient, uninterrupted time to eat regular meals,

and the meal breaks occur once per shift at a time of the day or shift when people normally

consume meals. Donovan Aff. ¶¶ 7, 8, 10; Ex. B [dkt. 262-4]; Abernathy Dep. 24:11-19; 25:23-

26:4 [dkt. 262-10]; Deckard Dep. 14:11-25 [dkt. 262-5]; Deposition of Andrew Geyer ("Geyer

Dep.") 18:23-19:1; 19:10-17 [dkt. 262-11]; Gritten Dep. 20:15-21; 21:6-9; 22:25-23:5 [dkt. 262-

6]; Robbins Dep. 17:17-18:4 [dkt. 262-7]; Taylor Dep. 15:13-16:6; 21:18-22 [dkt. 262-8];

Winchester Dep. 12:13-13:3 [dkt. 262-9]. Regarding the fourth factor, although the CBA does

not specify the length of the meal break, no employee has ever filed a grievance complaining that

he or she did not receive sufficient meal time. Donovan Aff. ¶¶ 4, 11 [dkt. 262-2]; Ex. A [dkt.

262-3], Article 18, Paragraph B; Hill Dep. 29:20-23 [dkt. 262-14]; Abernathy Dep. 22:11-13;

27:11-14 [dkt. 262-10]; Jones Dep. 45:17-22 [dkt. 262-17]; Winchester Dep. 15:25-16:3; 16:21-

24 [dkt. 262-9]; Geyer Dep. 22:19-23; 24:7-9 [dkt. 262-11]. Nor has the union ever sought in

negotiations to lengthen the period of time for lunch. Hill Dep. 7:11-23 [dkt. 262-14];

Winchester Dep. 16:25-17:20 [dkt. 262-9]. In a unionized workplace, if the length of a meal

---

[5] Interestingly, the inclusion or exclusion of meal break pay in the regular rate for calculating overtime is not one of the factors identified by this field guide.

break were not sufficient to eat a regular meal, it is very likely that employees would have filed a grievance about it or that the Union would have sought to expand the amount of time in negotiations.    The fifth factor is met because there is no Indiana or local law requiring employers to provide meal breaks to employees.  Indiana law does not require meal breaks for adult employees or minor employees and, although Indiana law requires rest breaks for minor employees, C&D does not employ minors.  Donovan Aff. ¶ 10 [dkt. 262-2].  Accordingly, under the DOL's five factor test, Plaintiffs' meal breaks do not constitute compensable hours worked.[6]

### 3.    29 C.F.R. § 778.320 Does Not Mean Plaintiffs' Meal Breaks Constitute Compensable Hours Worked

Plaintiffs' argument that 29 C.F.R. § 778.320 means their meal breaks constitute compensable hours worked, is incorrect for multiple reasons.  First, the purpose of 29 C.F.R. § 778.320, is to allow someone to determine whether to include such payments in the regular rate, not to determine whether meal breaks constitute compensable hours worked.  *See* 29 C.F.R. § 778.320(a)-(b); 778.223.

Second, under 29 C.F.R. § 778.320, whether such payments qualify for inclusion in the regular rate depends on whether the parties have agreed to treat the time as hours worked, or have not agreed to treat the time as hours worked.  Here, no agreement exists between the parties about whether to treat the time as hours worked, as the CBA is silent on the issue, and C&D simply started paying for meal breaks in response to the EPA's disapproval of past practice of

---

[6] Contrary to Plaintiffs' assertion, C&D did not admit that the five factors were not satisfied.  On the contrary, Plaintiffs' testimony and the video evidence satisfy the five factor test. Abernathy Dep. 24:11-19; 25:23-26:4 [dkt. 262-10]; Deckard Dep. 14:11-25 [dkt. 262-5]; Deposition of Andrew Geyer ("Geyer Dep.") 18:23-19:1; 19:10-17 [dkt. 262-11]; Gritten Dep. 20:15-21; 21:6-9; 22:25-23:5 [dkt. 262-6]; Robbins Dep. 17:17-18:4 [dkt. 262-7]; Taylor Dep. 15:13-16:6; 21:18-22 [dkt. 262-8]; Winchester Dep. 12:13-13:3 [dkt. 262-9]; Hill Dep. 29:20-23 [dkt. 262-14]; Abernathy Dep. 22:11-13; 27:11-14 [dkt. 262-10]; Jones Dep. 45:17-22 [dkt. 262-17]; Winchester Dep. 15:25-16:3; 16:21-24 [dkt. 262-9]; Geyer Dep. 22:19-23; 24:7-9 [dkt. 262-11]; Hill Dep. 7:11-23 [dkt. 262-14]; Winchester Dep. 16:25-17:20 [dkt. 262-9]

permitting employees to have lunch offsite.  Donovan Aff. ¶¶ 4, 5, 6-11 [dkt. 262-2]; Ex. A [dkt. 262-3], Article 18, Paragraph B; Hill Dep. 7:11-23; 29:20-23; 31:7-20 [dkt. 262-14]; Abernathy Dep. 22:11-13; 27:11-14 [dkt. 262-10]; Jones Dep. 45:17-22 [dkt. 262-17]; Winchester Dep. 15:25-16:3; 16:21-17:20 [dkt. 262-9]; Geyer Dep. 22:19-23; 24:7-9 [dkt. 262-11].  Under 29 C.F.R. § 778.320, simply because the employer pays for the time does not mean the parties have agreed to treat the time as hours worked.  *See* <u>Reich v. Lucas Enterprises, Inc.</u>, 1993 WL 307080 (6th Cir. 1993) (unpublished); <u>O'Hara v. Menino</u>, 253 F.Supp.2d 147 (D. Mass. 2003).

Third, contrary to Plaintiffs' contention, careful review of the FLSA regulations indicate that pay for meal breaks should normally be <u>included</u> in the regular rate.  All 29 C.F.R.§ 778.320 states is that where it appears that the parties <u>have agreed</u> "to exclude such activities from hours worked, payments for such time will be regarded as qualifying for exclusion from the regular rate under the provisions of § 7(e)(2), <u>as explained in § 778.216-778.224.</u>" (Emphasis added.)  §§ 778.216-778.224 indicate that the pay received for meal breaks <u>should be</u> included in the regular rate.  §778.216 states:

> "§ 7(e)(2) of the Act provides the term 'regular rate' shall not be deemed to include 'payments made for **occasional periods** when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause… ."

29 U.S.C. § 778.218(a) states:

> "(a) General rules.  Payments which are made for occasional periods when the employee is not at work due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause…are not made as compensation for his hours of employment.  Therefore, such payments may be excluded from the regular rate of pay… ."

But, section (b) of 29 U.S.C. § 778.218 states:

> "<u>Limitations on exclusion.</u>  This provision of section 7(e)(2) deals with the type of absences which are infrequent or sporadic or

> unpredictable.  It has no relation to regular "absences" **such as lunch periods** nor to regularly scheduled days of rest."

29 U.S.C. § 778.218(b) (emphasis added).  These regulations state that because lunch periods are not sporadic or unpredictable in nature the pay for lunch periods should not be excluded from the regular rate.

So contrary to plaintiffs' contentions, FLSA regulations suggest that pay for meal breaks should normally be *included* in the regular rate absent clear agreement between the parties otherwise.  Here, we have no explicit agreement with the union on treating the lunch break as being either included or excluded from hours worked.  C&D simply began, under pressure from the EPA, to require employees to eat in its facility and paid for the meal break.

29 U.S.C. § 778.223 further underscores the notion that pay for meal breaks is normally included in the regular rate and is a separate analysis from whether the meal break is working time or not.  § 778.223 states in pertinent part:

> "Some of the hours spent by employees, under certain circumstances, in such activities as waiting for work, remaining 'on call', traveling on the employer's business or to and from workplaces, and in meal periods and rest periods are regarded as working time and some are not.  The governing principles are discussed in part 785 of this chapter and part 790 of this chapter. To the extent that these hours are regarded as working time, payment made as compensation for these hours obviously cannot be characterized as 'payments not for hours worked.'  Such compensation is treated in the same manner as compensation for any other working time and is, of course, included in the regular rate of pay.  Where payment is ostensibly made as compensation for such of these hours as are not regarded as working time under the Act, the payment is nevertheless included in the regular rate of pay unless it qualifies for exclusion from the regular rate as one of a type of 'payments made for occasional periods when no work is performed due to *** failure of the employer to provide sufficient work, or other similar cause' as discussed in § 778.218 or is excludable on some other basis under section 7(e)(2)." (Emphasis added.)

The regulations are admittedly somewhat obtuse and circuitous. To assist the court, C&D presents the decision tree graph outlining how it believes these regulations should be read on this question:



These regular rate regulations suggest that even where the meal break pay is for non-work time, it should nonetheless be included in the regular rate, unless a basis for exclusion exists. Here, because there was no documented agreement between the parties on this question,

the pay for the meal breaks even though non-work time should nonetheless be included in the regular rate. [7]

Finally, § 778.320(b) merely states that where there is an agreement to treat the meal break as non-working time, the pay "will be regarded as qualifying for exclusion from the regular rate." 29 C.F.R. § 778.320(b) (emphasis added). This provision, does not state that the pay for the meal break must be excluded from the regular rate. Rather it simply states that it qualifies for exclusion meaning perhaps that this is another option that the parties could reach agreement on.

At minimum these regulations can lead employers to different conclusions on whether pay for meal periods should normally be excluded or included from the regular rate. Regardless, the fact that C&D included meal break pay in its calculation of the regular rate is not dispositive on the issue of whether those breaks are working time.

### 4. Plaintiffs' Case Law Is Distinguishable

The Scott v. City of New York case Plaintiffs cite on page 25 of Plaintiffs' Brief in Support of Second Motion for Partial Summary Judgment (Docket No. 261) ("Plaintiffs' Brief") is distinguishable from this case because the employees in Scott were police officers who regularly performed work during their meal breaks, whereas here, the employees work with large batteries and lead and cannot and do not perform production work during their meal breaks. Donovan Aff. ¶ 10 [dkt. 262-2]; Abernathy Dep. 24:11-19; 25:23-26:4 [dkt. 262-10]; Deckard Dep. 14:11-25 [dkt. 262-5]; Deposition of Andrew Geyer ("Geyer Dep.") 18:23-19:1; 19:10-17

---

[7] If the court rules that meal break pay must be excluded from the regular rate then this would also result in some overtime being owed due to recalculated overtime rates for employees. If meal breaks are deemed non-working time but that C&D appropriately included the meal pay in its calculation of the regular rate for employees, then it is doubtful that any damages would be owed Plaintiffs.

[dkt. 262-11]; Gritten Dep. 20:15-21; 21:6-9; 22:25-23:5 [dkt. 262-6]; Robbins Dep. 17:17-18:4 [262-7]; Taylor Dep. 15:13-16:6; 21:18-22 [dkt. 262-8]; Winchester Dep. 12:13-13:3 [262-9].

The <u>Scott</u> case is also distinguishable because the employer and the employees in <u>Scott</u> agreed that the employer would pay for the meal time, whereas here, C&D pays for the meal time but did not reach any formal or written agreement with the union that the meal time would be paid but has done so as a matter of practice. Donovan Aff. ¶¶ 4, 5, 6 [dkt. 262-2]; Ex. A [dkt. 262-3], Article 18, Paragraph B.

Accordingly, Plaintiffs' meal breaks do not constitute compensable hours worked.

**B.**     **Plaintiffs Are Not Entitled To Additional Compensation For Unpaid Time Worked Under 40 Hours (Gap Time) In Any Given Workweek**

To the extent Plaintiffs claim they are entitled to additional compensation for unpaid time worked under 40 hours (i.e., gap time) in any given workweek, their claim fails. There is no minimum wage violation in this case because the average wage rate is over $20 per hour. Donovan Aff. ¶ 12 [dkt. 262-2]. Thus, Plaintiffs are not entitled to additional compensation for unpaid time worked (i.e., gap time) in any given workweek. *See* <u>Braddock v. Madison County</u>, 34 F.Supp.2d 1098, 1112 (S.D. Ind. 1998); *see also* <u>Lundy v. Catholic Health Sys. of Long Island Inc.</u>, 711 F.3d 106, 116 (2d Cir. 2013).

Based on the Court's Order (Docket No. 116), one of the issues is whether Plaintiffs performed less than eight (8) hours of compensable work each day. Therefore, to the extent Plaintiffs allege they worked under 40 hours per workweek, it helps C&D because it suggests the amount of compensable work time was less than eight (8) hours per day.

**C.** **Any Time Spent After The Paid Meal Time, Gap Time, And Offsets Are Taken Into Account Is *De Minimis***

Plaintiffs' brief in support of their second motion for partial summary judgment does not address the issue of whether the beginning and ending boundary activities of walking, respirator pick up (if applicable), washing and vacuuming are *de minimus*. The reason for this is that both Radwin's and Winchester's time measurements showed *de minimus* amounts of time.

**1.** **Radwin's Time Study is More Reliable than Rick Winchester's Self Timing**

One of the Plaintiffs, Rick Winchester, timed himself on one day from one location taking 8.343 minutes to perform walking, getting a respirator, washing, and vacuuming, whereas C&D's expert calculated that on average using the distances traveled by all Plaintiffs it takes 3.43 minutes to perform walking and getting a respirator.[8]   Radwin Dep. 9:19-11:14; Ex. 41 [dkt. 262-12]; Winchester Dep. 18:2-18; 19:2-9; Ex. 11 [dkt. 262-9].

As an initial matter, the Court should not consider Winchester's self timing because it is irrelevant and inadmissible because (1) Winchester's time study measures only one employee (himself) on only one day from only one location.  Radwin Dep. 9:19-11:14; Ex. 41 [dkt. 262-12]; Winchester Dep. 18:2-18; 19:2-9; 20:22-21:3; 25:14-27:3; 43:16-24; Ex. 11 [dkt. 262-9]. *See* Secretary of Labor v. DeSisto, 929 F.2d 789 (1st Cir. 1991) (in FLSA case where one employee testified as to hours worked, Court stated one employee cannot adequately represent hundreds of employees holding a variety of positions); White v. Washington Gas, 2005 WL 544733 (D. Md. 2005) (unreported) (granting summary judgment to employer in FLSA case

---

[8] C&D's expert did not see any employee perform vacuuming.  Dr. Radwin also did not observe employees washing hands at the end of the shift change he observed but did review video tape showing employees washing before a break or meal period and estimated that time at being 0.637 minutes on average.  Radwin Dep. 19:21-20:20; 29:14-22; 30:18-25; Ex. 44 [dkt. 262-12].  Winchester also admitted that the bulk of the time spent in his self timing was spent on walking and that not all employees vacuumed Winchester Dep. 22:9-24:12; 25:14-27:3.  Thus, even if time for vacuuming activity is added in, it would still be *de minimus* in nature.

where employee's affidavit was inconsistent with his timesheets); <u>BASF Corp. v. Old World</u> <u>Trading Co., Inc.</u>, 1992 WL 232078 (N.D. Ill. 1992) (unreported) (anecdotal evidence, unless accompanied by testimony that such evidence is statistically significant, is irrelevant) (2) Winchester performed vacuuming whereas C&D's expert did not see any employee perform vacuuming, and Winchester admitted other employees do not perform vacuuming every day, and (3) Winchester's deposition testimony is inconsistent with his time study .

In contrast, Radwin's time study applied industrial engineering standards to measure the distances between each of the locker rooms and each white timecard clock location within the plant. Radwin Dep. 16:7-17:18; Ex. 41 at 3-4, 7-8 [dkt. 262-12]. Radwin also measured the distance involved in walking to and from the respirator room. Radwin Dep.18:6-10; Ex. 41 at 3-4, 7-8 [dkt. 262-12]. Radwin used information regarding each Plaintiffs' locker location, whether or not those Plaintiffs had ever worn a respirator and applied conservative estimates of walking speeds to arrive at his average amount of walking time of 3.43 minutes. Radwin Dep. 20:3-16; Ex. 41 at 3-4, 7-8 [dkt. 262-12].

But even assuming Winchester's self timing is relevant and admissible, the time is *de minimis* because courts generally consider time less than ten minutes to be *de minimis*. *See* <u>Kellar v. Summit Seating Inc.</u>, 664 F.3d 169, 177 (7th Cir. 2011). Accordingly, although C&D and Plaintiffs disagree as to whether these activities take 3.43 minutes or 8.343 minutes to perform, either way, the time is *de minimis*.

> 2. **The White Time Cards Touted by Plaintiffs Do not Make Their Case that More than Eight Hours of Work was Performed on a Typical Work Day by Plaintiffs**

First, contrary to Plaintiffs' contentions, the FLSA makes clear that the use of time clocks is not required. *See* 29 C.F.R. § 785.48(a), This regulation states:

"Use of Time Clock. (a) Differences between clock records and actual hours worked. Time clocks are not required. In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time do not have to be paid for such periods provided of course that they do not engage in any work. The early or late clock punching may be disregarded. Minor differences between the clock records and actual hours worked cannot ordinarily be avoided but major discrepancies should be discouraged since they raise a doubt as to the accuracy of the records of the hours actually worked."

In this case, C&D did keep time records, in fact two sets of time records. C&D admits that the white time cards are a better measurement of production time than yellow cards but they are not without flaw as discovery in this case has revealed. First, while the average punch discrepancy from the sampling done of white time cards showed a 7.96 differential, the bulk of that discrepancy appears on the front end of the shift, not the back. See Sofio Affidavit, Ex. A [dkt. 262-16]. White card punch ins are spread out prior to five minutes after the start of the shift. White card punch outs consistently show punch out times of ten minutes before the end of the shift. But as the testimony of various plaintiffs revealed, these punch-in and punch-out times on the white cards do not necessarily reflect that the employee was punching their own card or that production work was being performed from the moment those white cards were punched in to the moment those white cards were punched out each day. On the front end, some white cards were punched before the yellow card.[9] Employees admitted that they did not begin actual production work until the supervisor met with them at five minutes after the start of their shift for a production meeting. Jones Dep. 16:10-17:4 [dkt. 262-17]; Robbins Dep. 12:6-13:12 [dkt. 262-7]; Taylor Dep. 7:12-8:20 [dkt. 262-8]; Geyer Dep. 9:9-16 [dkt. 262-11]. What everyone

---

[9] See Donovan Aff. ¶ 14 [dkt. 262-2]. Sofio Aff. ¶ 3; Ex. A [dkt. 262-16]; Abernathy Dep. 32:23-33:7; 34:14-35:10; Ex. 2 [dkt. 262-10].

understood was that they had to be at their workstation no later than five minutes after the start of their shift.[10]  Taylor Dep. 7:12-8:20 [dkt. 262-8]; Geyer Dep. 10:17-11-7 [dkt. 262-11].

On the back end, employees would sometimes leave the production floor prior up to ten minutes before the end of the shift to come up early to shower and change.  It was revealed that punch times uniformly showed ten minutes before the end of the shift because one or more employees in each  department would stay behind and punch others' white time cards while everyone else went up earlier to shower and change.  Robbins Dep. 20:9-21:11; 22:1-23:10; 23:24-24:3 [dkt. 262-7]; Hill Dep. 34:3-12 [dkt. 262-14]; Abernathy Dep. 31:13-32:9 [dkt. 262-10]; Geyer Dep. 14:19-15:15 [dkt. 262-11].   Hence, neither the front end nor the back end punch times on the white cards show a precise minute-to-minute measurement of when production work would begin and when it would end.  In large part, it is the employees' own practices with respect to punching white timecards that caused the white timecards to overstate time worked at the beginning and end of the shift.  Many of these same employees now appear before the Court as Plaintiffs and demand extra pay based on the minute-to-minute accuracy of white timecards.  Plaintiffs should not be rewarded for their own fraudulent timecard practices.  Nonetheless, if you accept Plaintiffs' contention that the 7.96 time period all constituted production work and added the 15 minutes a day for showering and changing plus even Rick Winchester's time of 8.343 minutes from the beginning and ending boundary activities you still arrive at 23.343 minutes or less than the 25 minutes received for meal breaks each day.

Hence, the actual working day of Plaintiffs was indeed eight hours, give or take a minute or two.[11]

---

[10] Further, to the extent Plaintiffs are now trying to argue that they engaged in preproduction work at the frontend of their shift based on these early white card punch times, such a claim was not made in their original or amended complaint and no attempts have been made to amend their complaint accordingly.  Thus, it should be deemed waived at this late stage.

**D.**     **C&D Is Entitled To Offsets For Premium Payments**

The FLSA entitles employers to credits toward minimum wage and overtime compensation for extra compensation provided by shift differentials, a premium rate paid for hours worked in excess of eight (8) per day and hours worked on the sixth or seventh day of the workweek even when the employees worked fewer than 40 hours per workweek. *See* 29 C.F.R. § 778.201(a); *see also* 29 C.F.R. § 778.200(a)(5)-(7); Laboy v. Alex Displays, Inc., 2003 WL 21209854, *3-5 (N.D. Ill. 2003) (unreported); Nolan v. City of Chicago, 125 F.Supp.2d 324, 330 (N.D. Ill. 2000).

Here, C&D paid extra compensation, through a premium rate, for shift differentials, hours worked in excess of eight (8) per day and hours worked on the sixth or seventh day of the workweek. Donovan Aff. ¶ 13 [dkt. 262-2]; Ex. A [dkt. 262-3], Article 4, Paragraph B; Article 6, Paragraph D.

Thus, C&D is entitled to offsets for premium payments, and Plaintiffs concede such on pages 3 and 34 of Plaintiffs' Brief (Docket No. 261).


**E.**     **Plaintiffs Cannot Recover Liquidated Damages Because C&D Acted In Good Faith With Reasonable Grounds To Believe Its Actions Did Not Violate The FLSA**

Liquidated damages are inappropriate where the employer acted in good faith with reasonable grounds to believe its actions did not violate the FLSA. *See* Morse v. MER Corp., 2010 WL 4812792 (S.D. Ind. 2010) (unreported); Pennington v. G.H. Hermann Funeral Homes, Inc., 2010 WL 3326815 (S.D. Ind. 2010) (unreported); Braddock v. Madison County, 34 F.Supp.2d 1098 (S.D. Ind. 1998).

---

[11] As indicated earlier in this brief, that is not to say that there may not be damages associated in this case since if the court rules that pay for meal breaks must be excluded from the regular rate there may be damages for the recalculation of overtime for weeks in which they worked overtime. *See* earlier footnote 7, *infra.*

Here, C&D acted in good faith with reasonable grounds to believe its actions did not violate the FLSA. C&D acted pursuant to a collective bargaining agreement. Also, the Court's Order (Docket No. 116, pp. 16-17) holding an employer and union cannot bargain about walking, washing, and vacuuming if they have agreed that changing and showering are compensable or partially compensable, is the first decision on this particular issue.

As explained in greater detail on pages 1-5 of Defendant C & D Technologies, Inc.'s Sur-Reply to Plaintiffs' Reply Brief (Docket No. 115, pp. 1-5) ("C&D's Sur-Reply"), Congress passed Sections 254 and 203(o) to expand bargaining rights. *See* 93 Cong. Rec. 2179 (1947) (colloquy between Sens. Donnell and Hawkes); 95 Cong. Rec. 11210 (statement of Rep. Herter) (1949). The Court's Order (Docket No. 116, pp. 16-17), however, constricts bargaining rights by holding an employer and union cannot bargain about walking, washing, and vacuuming if they have agreed that changing and showering are compensable or partially compensable.

As explained in greater detail on pages 8-10 of C&D's Sur-Reply (Docket No. 115, pp. 8-10), the National Labor Relations Act ("NLRA") prohibits sequential bargaining.[12] The Court's Order (Docket No. 116, pp. 16-17), however, requires sequential bargaining because it holds an employer and a union may bargain about walking, washing, and vacuuming only after they have agreed that changing and showering will not be wholly or partially compensable. C&D had no

---

[12] *See also* Oneita Knitting Mills, Inc., 150 NLRB 689, 704 n.69 (1964) ("Even the fact that the parties may have reached an impasse on one item 'constitutes no defense to a refusal to bargain with respect to other matters.'"); Excello Dry Wall Co., 145 NLRB 663, 673 n.21 (1963) ("It is well settled that the mere fact that a given subject is a 'mandatory' one does not leave a party free to insist that agreement be reached on that disputed matter before bargaining may proceed on other 'mandatory' subjects."); McGregor & Werner, Inc., 136 NLRB 1306, 1313-14 (1962) ("It is well settled that 'the Act clearly requires an employer to bargain on all matters involving the employees' terms and conditions of employment' and even the fact that the parties may have reached an impasse on one item 'constitutes no defense to a refusal to bargain with respect to other matters.'"); Chambers Mfg. Corp., 124 NLRB 721, 734 (1959), enf'd, 278 F.2d 715 (5th Cir. 1960) ("The 'Act clearly requires an employer to bargain on all matters involving the employees' terms and conditions of employment' and the fact that the parties had reached an impasse on wages 5 months earlier, constitutes no 'defense to a refusal to bargain with respect to other matters which the Union requested be considered.'").

reason to believe a Court would interpret Sections 254 and 203(o) in such a manner so as to require C&D and the union to engage in sequential bargaining.

C&D had no reason to believe a Court would interpret Sections 254 and 203(o) in this manner – a manner contrary to C&D's own good faith interpretation of the law. A decision contrary to C&D's position is one thing, but a further conclusion that C&D's interpretation was in bad faith without reasonable grounds to believe that it was acting lawfully is unwarranted given the novelty of the issue.

In passing Sections 254 and 203(o), Congress wanted to avoid creating unexpected liabilities upon employers, but awarding liquidated damages would create unexpected liabilities in contravention of the purpose of Sections 254 and 203(o). *See* <u>Sandifer v. U.S. Steel Corp.</u>, 678 F.3d 590, 597 (7th Cir. 2012), <u>cert. granted</u>, 133 S.Ct. 1240 (2013) (citing 29 U.S.C. § 251(a)).

C&D did allow punch ins on white cards a few minutes early. In no instance was an employee required to show up at the factory before his or her 8-hour shift started. If they did show up a few minutes early, C&D did not bar them entry or make them stay in the parking lot - it let them in. Donovan Aff. ¶ 15 [dkt. 262-2]. C&D did not aggressively police fraudulent activity such as employees punching others cards or punching white cards before yellow cards. But C&D was not even required by the Act to keep those timecards. As the regulations make clear, minor differences between the clock hours and actual hours worked cannot ordinarily be avoided. *See* 29 C.F.R. § 785.48(a) C&D's worst crime in this case appears to be lax enforcement of punch in and out practices by Plaintiffs on white timecards. It did so under the belief that it could pay employees based on a scheduled eight hour work day and that it was meeting its obligations under the Collective Bargaining Agreement if it afforded employees the

first five minutes of their shift to change their clothes and walk out to their work area, and ten minutes at the end of their shift to walk back, shower and change. As long as employees perform those functions during those timeframes they were paid but if employees chose to conduct those activities outside those time parameters they were not paid. See (Docket entry 78, Stipulated Fact ¶ 12).

Further, to the extent the court finds that meal break pay should not have been included in the regular rate, as explained in section III.A.3. *infra*, liquidated damages should not apply because the regulations themselves are at best not entirely clear on that question. *See* <u>Marshall v. Baptist Hosp., Inc.</u>, 668 F.2d 234 (6th Cir. 1981) (FLSA case; Department of Labor guidance was ambiguous; Court held employer acted in good faith). Employers reading those sections could certainly come to the conclusion that normally such meal pay should be included in the regular rate. At minimum, employers could reach different conclusions as to whether or not the pay for a meal period should be included or excluded from the regular rate. Nor to our knowledge have any courts weighed in on the regular rate discrepancies created by these regulation provisions.

F.  <u>The FLSA's Two (2) Year Statute Of Limitations, Not Three (3) Year Statute Of Limitations, Applies</u>

Under the FLSA, for the three (3) year statute of limitations to apply, the violation must be willful. *See* 29 U.S.C. § 255. The plaintiff carries the burden of proving that a violation is willful. *See* <u>Bankston v. State of Ill.</u>, 60 F.3d 1249 (7th Cir. 1995); <u>Hardrick v. Airway Freight Sys., Inc.</u>, 63 F.Supp.2d 898 (N.D. Ill. 1999). A violation is willful if the employer knew its conduct violated the FLSA or showed reckless disregard for whether its actions complied with the FLSA. *See* <u>Bankston v. State of Ill.</u>, 60 F.3d 1249 (7th Cir. 1995); <u>Hardrick v. Airway Freight Syss., Inc.</u>, 63 F.Supp.2d 898 (N.D. Ill. 1999); <u>Cunningham v. Gibson Elec. Co., Inc.</u>,

43 F.Supp.2d 965 (N.D. Ill. 1999). If an employer acts unreasonably or negligently, but not recklessly, in determining its obligations under the FLSA, then its actions are not willful. *See* Hardrick v. Airway Freight Syss., Inc., 63 F.Supp.2d 898 (N.D. Ill. 1999).

Here, C&D acted pursuant to a collective bargaining agreement and language in the agreement that had existed unchallenged and unchanged for at least fifty years. Prior to this suit, no one, including the DOL, had ever challenged C&D's reliance on its CBA language. Also, the Court's Order (Docket No. 116) holding an employer and union cannot bargain about walking, washing, and vacuuming if they have agreed that changing and showering are compensable or partially compensable, is the first decision on this particular issue. For the same reasons that liquidated damages are not appropriate, neither is a willful violation finding appropriate. Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 357 (4th Cir. 1994) (whether the employer acted non-willfully for purposes of the statute of limitations is relevant to whether the employer acted in good faith for purposes of liquidated damages).

Thus, the violation was not willful and, therefore, the two (2) year statute of limitations, not the three (3) year statute of limitations, applies.

**IV.    Conclusion**

With respect to the above issues, there is no genuine issue of material fact, and C&D is entitled to judgment as a matter of law. Accordingly, C&D respectfully requests that the Court grant its Second Motion for Partial Summary Judgment.

Respectfully submitted,

FAEGRE BAKER DANIELS LLP


By: /s/Martha M. Lemert
Martha M. Lemert (#20961-02)
111 E. Wayne Street, Suite 800
Fort Wayne, IN  46802
Telephone: (260) 424-8000
Facsimile:  (260) 460-1700
Email:  martha.lemert@faegrebd.com

Tareen Zafrullah (#25892-49)
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Phone:  (317) 237-0300
Fax:      (317) 237-1000
E-mail:  tareen.zafrullah@faegrebd.com

ATTORNEYS FOR DEFENDANT
C&D TECHNOLOGIES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

> Robert Peter Kondras, Jr.
> Caitlin M. Miller
> Hunt Hassler & Lorenz LLP
> 100 Cherry Street
> Terre Haute, IN  47807


s/Martha M. Lemert