UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

J<span>OSHUA</span> D. J<span>ONES</span>, <span>ET AL</span>.,  )
    *Plaintiffs*,  )
                                  )
   *vs.*  )       1:11-cv-01431-JMS-DKL
                                  )
C&D T<span>ECHNOLOGIES</span>, I<span>NC</span>.  )
    *Defendant*.  )

### **ORDER**[1]

Presently pending before the Court is Defendant C&D Technologies, Inc.'s ("C&D") Motion to Consider Supplemental Authority. [Filing No. 271.] The Court held a hearing on the motion on March 12, 2014.

## I.
### BACKGROUND

The Court finds the following to be the undisputed facts, supported by admissible evidence in the record.[2]

**A. A Typical Day at C&D**

C&D's Attica facility manufactures industrial batteries. [Filing No. 24, at ECF p. 3.] The manufacturing process at the Attica plant requires C&D's employees to work with toxic materials, particularly lead. [Filing No. 24, at ECF p. 3; Filing No. 78, at ECF p. 3.] Due to

---

[1] As part of the Court's pilot program regarding hyperlinking in Court filings, this Order contains hyperlinks to documents previously filed in this case and to legal authority. Instead of the citation format "dkt. __ at __" used previously in this case, the Court now uses "Filing No. __, at ECF p. __" as its citation format.

[2] Some of the facts set forth herein were also set forth in the Court's October 3, 2012 Order granting in part and denying in part the parties' first Cross Motions for Partial Summary Judgment. [Filing No. 116.]

1

these toxic materials, both C&D and governmental regulations require that C&D employees change into and out of safety clothes and shower. [Filing No. 78, at ECF p. 3.]

C&D employees perform many duties during a typical work day, which are depicted in the following diagram:

| "Pre-Donning Activities" | "Donning" | "Beginning Boundary Activities"[3] | "Work Period" | "Ending Boundary Activities" | "Doffing/ Washing" | "Post-Doffing Activities" |
|---|---|---|---|---|---|---|
| Arrive at plant | Change from personal clothes into safety clothes | Walk from locker room to safety gear area and pick up safety gear (only some employees) | Work on the production line | Doff safety gear (only some employees) | Doff safety clothes | Walk from locker room to "yellow time card area" |
| Punch yellow time card | | | | | Shower | |
| Walk to locker room | | Walk to "white time card area" | | Walk from work area to "white time card area" | Change back into personal clothes | Punch yellow time card |
| | | Punch white time card | | Punch white time card | | Exit plant |
| | | Walk to work area | | Walk to "wash out room" to return safety gear (only some employees) and vacuum safety clothing if desired | | |
| | | Don safety gear (only some employees) | | | | |
| | | | | Walk to locker room | | |

[*See* Filing No. 78, at ECF pp. 3-4.]

---

[3] The Court devised the term "Boundary Activities" because of the gap created by C&D's dual time card system, because activities within the gap came after and before the first and last principal activities of the day, and because they included more than just travel time.

2

### B. The Collective Bargaining Agreement

C&D's hourly manufacturing employees at the Attica facility have long been represented by the International Union of Electrical Workers, and Communication Workers of America IUE-CWA Local No. 84950 (the "<u>Union</u>") as their exclusive collective bargaining representative. [Filing No. 78, at ECF p. 1.] The 2007-2012 Collective Bargaining Agreement ("CBA") entered into by C&D and the Union provides:

> **ARTICLE 18 – Health and Safety**
>
> (B) To ensure and safeguard the health and safety of all employees the Company has installed and maintains certain protective facilities and provides time for their use. An allowance time of five (5) minutes is provided between the start of the shift and the time [an] employee must be at his work station for changing into acid resistant or dust proof clothing. In addition, a wash-up allowance time of five (5) minutes before lunch and ten (10) minutes wash-up and shower period before quitting time is given to all employees. A fifteen (15) minute rest period in the mid-morning and mid-afternoon is given to all employees. The allowances for changing clothes, wash-up, shower and rest periods must be observed for the purposes for which they are established.

[Filing No. 78, at ECF p. 2; Filing No. 78-1, at ECF p. 20.]

Simply put, based on the terms of the CBA, C&D compensates its employees for a 5-minute allowance for "Pre-Donning Activities," and "Donning," and a 10-minute allowance for "Doffing/Washing," and "Post-Doffing Activities."

### C. Compensating C&D Employees

C&D does not pay its employees based on time calculated from either the yellow time card punches or the white time card punches, both shown in the diagram above. [Filing No. 78, at ECF pp. 3-4.] Rather, it pays based on the eight-hour scheduled shift. [Filing No. 78, at ECF p. 4.] When the safety-related activities discussed above, such as walking from the locker room to the work area, vacuuming clothes, picking up or dropping off respirators or safety helmets, changing into and out of the C&D-issued safety clothing, and showering, occur during the

employee's eight-hour shift, he or she is compensated for them. [Filing No. 78, at ECF p. 5.] When those activities run outside of the eight-hour shift, the employee is not compensated for any time over and above eight hours. [Filing No. 78, at ECF p. 5.] "Employees have never been paid based on the time between their yellow time card punches." [Filing No. 78, at ECF p. 3.]

The following diagram depicts the manner in which C&D represented (in a prior filing) that its employees were compensated during the relevant period:



### D. The Court's Decision on the First Round of Summary Judgment Motions

One of Plaintiffs' claims in this lawsuit is that C&D is violating the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), by failing to pay employees minimum and overtime wages for "donning and doffing" of safety clothing and equipment and washing up that occurs outside of the eight-hour shift. [Filing No. 24, at ECF pp. 9-10.] In their first Motion for Partial Summary Judgment, Plaintiffs argued that C&D violated the FLSA by paying its employees for donning, doffing, washing up, and changing based on the 5-minute allowance for the beginning of the day and the 10-minute allowance for the end of the day. [Filing No. 89, at ECF pp. 18-20.] The Court found that the CBA entered into between C&D and the Union "properly limited compensation for donning safety clothing at the beginning of a shift to a 5-minute allowance, and for showering at the end of a shift to a 10-minute allowance." [Filing No. 116, at ECF p. 12.] The Court also found that doffing safety clothing at the end of the day – while not specifically mentioned in the CBA – was properly included in the 10-minute end-of-day allowance "based on

4

the fact that C&D has been compensating in that fashion since 1967,…and because the CBA's ten-minute allowance indicates that the issue of compensating for doffing likely arose at the bargaining table while the allowance time was being discussed." [Filing No. 116, at ECF p. 13.]

Relevant to the pending motion is the Court's ruling on whether Beginning Boundary Activities and Ending Boundary Activities could properly be included in the 5- and 10-minute allowances. As for Beginning Boundary Activities (walking from the locker room to the safety gear area to pick up safety gear (only for some employees), walking to the "white time card area," punching the white time card, walking to the work area, and donning safety gear (again, only for some employees)) and Ending Boundary Activities (doffing safety gear (for some employees), walking from the work area to the "white time card area," punching the white time card, walking to the "wash out room" to return safety gear (for some employees) and vacuum safety clothing if desired, and walking to the locker room to begin the "Doffing/Washing" period), the Court found that C&D could not bargain to exclude compensation for those activities. [Filing No. 116, at ECF pp. 14-17.] Specifically, the Court held that:

- Section 203(o) only covers bargaining related to "changing clothes or washing at the beginning or end of each workday," so C&D and the Union could not bargain under that section to include Beginning Boundary Activities and Ending Boundary Activities in the 5-minute and 10-minute allowances, [Filing No. 116, at ECF p. 14];

- Section 254 only exempts from compensation preliminary activities occurring before the first principal activity of the day, and postliminary activities occurring after the last principal activity of the day. Donning is the first principal activity of the day, and doffing and showering are the last principal activities of the day. Accordingly, all activities in-between – including Beginning Boundary Activities and Ending Boundary Activities – are potentially compensable and do not properly fall within the 5- and 10-minute allowances, [Filing No. 116, at ECF p. 16]; and

- It is possible that some or all of the activities in the Beginning Boundary Activities and Ending Boundary Activities may not be compensable because they are *de minimis*, and the acts of punching the white time card right before

5

arriving at the work station, donning safety gear such as a respirator (if necessary), doffing that safety gear, and punching the white time card upon leaving the work station were all *de minimis* activities which are non-compensable under the FLSA, [Filing No. 116, at ECF pp. 17-18].

This left travel time in both the Beginning Boundary Activities and Ending Boundary Activities – specifically, walking from the locker room to the safety gear area to pick up safety gear (for some employees), walking to the "white time card area," and walking to the work area to begin work on the line, and walking from the work area to the "white time card area," walking to the "wash out room" to return safety gear and vacuum clothes (for some employees), and walking back to the locker room. The Court found that, based on the record before it, it could not determine whether those activities were *de minimis* and non-compensable, or compensable. [Filing No. 116, at ECF pp. 17-19.][4]

### E. The Motion to Consider Supplemental Authority

C&D filed a Motion to Consider Supplemental Authority on February 3, 2014. [Filing No. 271.] As discussed more fully below, C&D's motion focuses on the Court's finding in connection with the first round of Cross Motions for Partial Summary Judgment that C&D and the Union could not bargain to include the Beginning Boundary Activities and Ending Boundary Activities in the 5- and 10-minute allowances for donning, doffing, and showering. [Filing No. 272.] C&D bases its motion on the United States Supreme Court's recent decision in *Sandifer v. U.S. Steel Corp.*, --- U.S. ---, 134 S. Ct. 870, 187 L. Ed. 2d 729 (2014), and requests that the Court "reassess its ruling in Section III(A)(2) of its Prior Order and hold that the agreement

---

[4] The Court also found that the "Pre-Donning Activities" and "Post-Donning Activities" – which include punching the yellow time card upon arrival at the plant and walking to the locker room at the beginning of the shift, and walking from the locker room to the "yellow time card area" and punching the yellow time card upon exiting the plant – were not compensable under Section 254 of the FLSA because "they take place either before the first principal activity ('Donning') or after the last principal activity ('Doffing/Washing')." [Filing No. 116, at ECF p. 19.]

between C&D and the Union as to the compensability of time spent donning safety clothing, performing Beginning Boundary Activities and Ending Boundary Activities, doffing safety clothing, and showering, is lawful." [Filing No. 272, at ECF pp. 9-10.]

## II.
### STANDARD OF REVIEW

While C&D titles its motion as a "Motion to Consider Supplemental Authority," it brings the motion under Fed. R. Civ. P. 60(b)(6). [Filing No. 272, at ECF p. 1.] As such, the Court will treat the motion as a motion to reconsider. Fed. R. Civ. P. 60(b)(6) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:…any other reason that justifies relief." Under Rule 60(b), reconsideration is appropriate only "where the court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law occurred, or where significant new facts have been discovered." *Nerds On Call, Inc. (Ind.) v. Nerds On Call, Inc. (Cal.)*, 598 F.Supp.2d 913, 916 (S.D. Ind. 2008). "Relief under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances." *Rickabaugh v. Stanley Steemer of Evansville, Inc.*, 2012 WL 738588, *1 (S.D. Ind. 2012) (citing *Eskridge v. Cook Cnty.*, 577 F.3d 806, 809 (7th Cir. 2009)). Arguments that the court has already considered and rejected "should be directed to the court of appeals." *United States v. ITT Educ. Servs.*, 2012 WL 266943, *8 (S.D. Ind. 2012).

# III.
## DISCUSSION

### A. Section 203(o)

C&D argues that the Court erred in concluding that Section 203(o) did not allow it to bargain with the Union to include Beginning Boundary Activities and Ending Boundary Activities in the 5- and 10-minute allowances for donning, doffing, and showering. [Filing No. 272, at ECF pp. 5-7.] It asserts that the Supreme Court in *Sandifer* held that "if the majority of time is spent donning and doffing clothing and washing, then the employer and the union may agree under Section 203(o) that the entire time is noncompensable, even if some of the time is spent performing activities not referenced in Section 203(o), such as donning and doffing safety gear." [Filing No. 272, at ECF p. 5.] C&D contends that the majority of the time at issue is spent showering and changing in and out of clothes, that "Plaintiffs now concede and estimate that the amount of time it does take to shower and change is approximately fifteen minutes a day," and that C&D's expert estimates an average of 3.43 minutes was spent "in non 203(o) activities," which would only be 19% of the total time to change, shower, and travel. [Filing No. 272, at ECF pp. 5-6.]

Plaintiffs respond that the Supreme Court's *Sandifer* holding is limited to whether time spent donning and doffing protective gear constituted "changing clothes" under Section 203(o), and that the Supreme Court specifically noted that it was not expressing an opinion on travel time. [Filing No. 275, at ECF pp. 2-3.]

Section 203(o) of the FLSA provides: "In determining for the purposes of section 6 and 7…the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or

8

practice under a bona fide collective-bargaining agreement applicable to the particular employee." 29 U.S.C. § 203(o). The Court previously held in connection with the first round of Cross Motions for Partial Summary Judgment that Section 203(o) allows an employer and a union to bargain to exclude any time spent in changing clothes or washing at the beginning or end of each workday, but did not require that the employer and the union either bargain to exclude *all* time or *no* time. [Filing No. 116, at ECF p. 11-12.] It went on to find that C&D and the Union could not properly bargain under Section 203(o) to negotiate an allowance for the Beginning Boundary Activities and Ending Boundary Activities, because they did not involve "changing clothes or washing at the beginning or end of each workday." [Filing No. 116, at ECF p. 14.]

The Supreme Court's decision in *Sandifer* does not change this Court's earlier ruling. In *Sandifer*, the employer and the union had bargained to exclude as compensable hours all time spent donning and doffing safety gear at the beginning and end of the work day. The District Court held that the employer and the union could properly exclude that time from compensable time under Section 203(o), and that donning and doffing the protective gear constituted "changing clothes" within the meaning of Section 203(o). *Sandifer v. U.S. Steel Corp.*, 2009 WL 3430222, *6-7 (N.D. Ind. 2009). The District Court also found that even if some of the items employees donned and doffed – such as the hardhat, safety glasses, and earplugs – were not "clothes," the time spent donning and doffing them was *de minimis*. *Id.* at *6. The Seventh Circuit Court of Appeals upheld the District Court's decision on those issues. *Sandifer v. U.S. Steel Corp.*, 678 F.3d 590, 593-95 (7th Cir. 2012).

On appeal to the Supreme Court, the employees argued that "clothes" as used in Section 203(o) did not include any "items designed and used to protect against workplace hazards," and

9

so the employer and the union could not properly bargain to exclude time spent donning and doffing that gear from compensable time. *Sandifer*, 134 S. Ct. at 877. The Supreme Court dealt only with that very narrow issue.

The specific safety gear involved in *Sandifer* included "a flame-retardant jacket, pair of pants, and hood; a hardhat; a 'snood'; 'wristlets'; work gloves; leggings; 'metatarsal' boots; safety glasses; earplugs; and a respirator." *Sandifer*, 134 S. Ct. at 874. The Supreme Court agreed with the District Court and the Seventh Circuit Court of Appeals that most of these items constitute clothing for purposes of Section 203(o), stating:

> We see no basis for the proposition that the unmodified term "clothes" somehow omits protective clothing. Petitioners' proffered distinction, moreover, runs the risk of reducing § 203(o) to near nothingness. The statutory compensation requirement to which § 203(o) provides an exception embraces the changing of clothes only when that conduct constitutes "an integral and indispensable part of the principal activities for which covered workmen are employed."….But protective gear is the *only* clothing that is integral and indispensable to the work of factory workers, butchers, longshoremen, and a host of other occupations. Petitioners' definition of "clothes" would largely limit the application of § 203(o) to what might be called workers' costumes, worn by such employees as waiters, doormen, and train conductors.

*Id.* at 877 (emphasis in original).

The Supreme Court also held that while "changing" in the phrase "changing clothes" may have a connotation of "substitution" rather than placing safety gear over clothing, such an interpretation would allow employees to opt into or out of the FLSA's coverage depending on "'something as trivial as whether the employee did or did not take off the t-shirt he wore into work that day.'" *Id.* at 879 (quoting *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 216 (2009)). Ultimately, the Supreme Court held that the employer and the union could bargain to exclude time spent donning and doffing the flame-retardant jacket, pair of pants, hood, hardhat, snood, wristlets, work gloves, leggings, and metatarsal boots as they were all properly

considered "clothing." *Sandifer*, 134 S. Ct. at 879-80. It also found that, while the safety glasses, earplugs, and respirator were not clothes, the time spent donning and doffing those items did not need to be deducted from noncompensable time because "if the vast majority of the time is spent in donning and doffing 'clothes' as we have defined that term, the entire period qualifies, and the time spent putting on and off other items need not be subtracted." *Id.* at 881.

C&D seizes on this last finding by the Supreme Court – that if the vast majority of time is spent donning and doffing clothes, then the entire period in question should be considered noncompensable. C&D argues that: (1) all time spent donning and in Beginning Boundary Activities should be treated as one period, covered by the 5-minute allowance; and (2) all time spent in Ending Beginning Activities, doffing, and showering should be treated as one period, covered by the 10-minute allowance. [Filing No. 272, at ECF pp. 5-7.] C&D's reliance on *Sandifer* for this argument is misplaced, however. The Supreme Court in *Sandifer* determined only that certain "time spent putting on and off other items" – where those other items are not properly considered "clothing" – could be excluded from compensable time where "the vast majority of the time is spent in donning and doffing 'clothes' as we have defined that term." 134 S. Ct. at 881.

This Court will not expand the Supreme Court's holding in *Sandifer* to lump non-"changing" activities such as travel time in with donning and doffing, such that time spent on those activities will also be included in the 5- and 10-minute allowances. Nothing in the Supreme Court's opinion supports such a reading and, indeed, the Supreme Court specifically noted that the employees sought "backpay for time spent traveling between the locker rooms where they don and doff at least some of the protective gear and their workstations," "[t]he District Court denied that portion of [the employer's] motion for summary judgment…and the

11

Seventh Circuit reversed," and "[t]hat issue is not before this Court, so we express no opinion on it." Id. at 874, n.4. The Supreme Court's decision in *Sandifer* does not warrant reconsideration of this Court's earlier finding that Section 203(o) did not provide C&D with an avenue to negotiate to include the Beginning Boundary Activities and Ending Boundary Activities in the 5- and 10-minute allowances agreed to between C&D and the Union.[5]

## B. Section 254

C&D argues that the Supreme Court's decision in *Sandifer* is "consistent with other legal authorities indicating that activities such as the Beginning Boundary Activities and Ending Boundary Activities can be noncompensable under Section 254." It further argues that *Sandifer* is consistent with Congress' intent in passing Section 254, which was to expand bargaining rights; and that the National Labor Relations Act prohibits sequential bargaining. C&D criticizes the Court's decision on the first round of Cross Motions for Partial Summary Judgment as requiring sequential bargaining because "it holds an employer and union may bargain about walking, washing, and vacuuming only after they have agreed that changing and showering will not be wholly or partially compensable." [Filing No. 272, at ECF pp. 7-9.]

Plaintiffs respond that *Sandifer* is distinguishable because the employer and the union there had negotiated an exclusion of clothes changing from compensable work, so travel time also was not compensable under Section 254 because "the employees would not begin to be paid until they worked their first principal activity of the day." [Filing No. 275, at ECF pp. 3-4.]

---

[5] The Court is mindful of the Seventh Circuit Court of Appeals' very recent decision in *Mitchell v. JCG Indus.*, 2014 WL 1027714 (7th Cir. March 18, 2014), and has also considered the parties' filings regarding that case, [*see* Filing No. 277; Filing No. 278]. The facts and legal issues considered in *Mitchell* – whether donning and doffing protective gear before and after a lunch break is compensable – are distinguishable from the facts and legal issues considered here. Further, *Mitchell* did not alter the principles from *Sandifer* upon which this Court relies.

Plaintiffs argue that because C&D bargained to include clothes changing and showering as part of Plaintiffs' compensable work day, "all activity afterward, including travel time to and from locker rooms, remained compensable as well." [Filing No. 275, at ECF p. 4.]

The Supreme Court's decision in *Sandifer* does not affect this Court's earlier decision. The parties here bargained to compensate the donning and doffing activities, thereby rendering them the first principal activity of the day and the last principal activity of the day. Having done so Beginning Boundary Activities and Ending Boundary Activities fall within the work day, and are – unless *de minimis* – compensable under Section 254(a). Indeed, *Sandifer* presents a scenario which is opposite of the facts here. In *Sandifer*, the employer and the union bargained to *exclude* from compensable time the time spent donning and doffing clothing, and the Seventh Circuit found that since donning and doffing clothes were noncompensable activities, they were not principal employment activities. 678 F.3d at 596 ("If [clothes-changing time] is not work time – the workers aren't being paid and their union has agreed to their not being paid – how can it be one of the 'principal…activities which [the] employee is employed to perform'?"). It further held that time spent traveling from locker rooms to work stations was noncompensable under § 254(a) because it occurred before or after the first and last principal activity of the day, which was working at the work station. *Id.* ("Had the clothes-changing time in this case not been rendered noncompensable pursuant to section 203(o), it would have been a principal activity. But unless changing into and changing out of work clothes are principal activities even when made noncompensable pursuant to section 203(o), the exemption in section 254(a) applies, and [the employer] need not compensate for travel time"); *see also* 29 U.S.C. § 254(a) (making noncompensable "activities which are preliminary to or postliminary to [the employee's] principal activity or activities").

13

Here, it is the opposite situation. C&D and the Union bargained to provide compensation for donning, doffing, and showering. C&D asks the Court to change its finding that donning is the first principal activity of the day, and doffing/showering is the last principal activity, and instead find that "[t]he first principal work activity is whichever one of these boundary activities a particular employee happens to be doing at the start of the work shift, and the last principal work activity is whichever one of these boundary activities a particular employee happens to be doing at the end of a particular shift." [Filing No. 272, at ECF p. 7.] But C&D does not explain how the Supreme Court's decision in *Sandifer* – which affirmed the Seventh Circuit's decision, relied upon by this Court – would mandate that new finding, and it does not. Before the Supreme Court, both parties in *Sandifer* agreed that clothes changing was not a principal activity because it was noncompensable under Section 203(o). *Sandifer*, 134 S. Ct. at 876. Because the other boundary activities in *Sandifer* which took place before reaching the work station and after leaving the work station did not take place between the first principal activity and the last principal activity,[6] *Sandifer* is not relevant to the Section 254 issue in this case. And reliance on the Supreme Court's decision, which affirmed the Seventh Circuit's decision, is misplaced.

C&D argues that the Court's finding that Beginning Boundary Activities and Ending Boundary Activities are not rendered noncompensable by Section 254 "requires sequential bargaining because it holds an employer and union may bargain about walking, washing, and vacuuming only after they have agreed that changing and showering will not be wholly or partially compensable." [Filing No. 272, at ECF pp. 8-9.] The Court notes some irony in C&D's argument. The Court's decision on the first round of Cross Motions for Partial Summary

---

[6] Again, the Supreme Court in *Sandifer* specifically declined to address compensation for travel time between the locker rooms and the workstations – one of the specific periods at issue here. 134 S. Ct. at 874, n.4.

14

Judgment operated to – at C&D's request – enforce the agreement that C&D and the Union made through the CBA. The CBA does not mention any of the Beginning Boundary Activities or the Ending Boundary Activities as being covered by the 5- and 10-minute allowances, yet C&D asks the Court to read those activities into C&D's and the Union's negotiations and into the CBA's language, and to ignore the law. But the law is clear regarding when the first and last principal activities of a work day occur, and that activities falling in between must be compensated. Once C&D and the Union agreed that donning, doffing, and showering would be compensated through the 5- and 10-minute allowances, the activities included in the allowances became principal and all other activities not addressed at the bargaining table and falling in between became compensable. C&D chose a timekeeping system that did not account for their own agreement. Not surprisingly then, C&D's practices did not comport with either the CBA or the FLSA, plain and simple.[7]

In sum, the Court finds that the Supreme Court's decision in *Sandifer* does not change its earlier holding that Section 203(o) does not provide C&D with an avenue to negotiate an allowance for the Beginning Boundary Activities and Ending Boundary Activities, that donning safety clothing is the first principal activity of the day for C&D employees and doffing that clothing and showering is the last principal activity of the day, and that Beginning Boundary

---

[7] C&D also relied upon other subsections of Section 254 in support of its first Motion for Partial Summary Judgment, and discussed those sections at the March 12, 2014 hearing on this motion, in arguing that Beginning Boundary Activities and Ending Boundary Activities were included in the 5- and 10-minute allowances. The Court has already rejected that argument because "those provisions only apply to activities covered by Section 254(a)," and since the Beginning Boundary Activities and Ending Boundary Activities "do not fall within Section 254(a) in the first instance…consequently[] none of the provisions that follow apply." [Filing No. 116, at ECF p. 17.] In any event, the Supreme Court's decision in *Sandifer* did not deal with that argument in any way.

Activities and Ending Boundary Activities fall between the first principal activity and the last principal activity so are compensable and do not fall within Section 254(a).

# IV.
## CONCLUSION

For the foregoing reasons, the Court **GRANTS** C&D's Motion to Consider Supplemental Authority, [Filing No. 271], only to the extent that it has considered the Supreme Court's decision in *Sandifer v. U.S. Steel Corp.*, but **DENIES** the Motion to Consider Supplemental Authority, [Filing No. 271], to the extent that it declines to change its previous ruling contained in Section III(A)(2) of its October 3, 2012 Order, [Filing No. 116].

**Distribution via ECF only to all counsel of record**