UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JOSHUA D. JONES, ET AL.,                )
    *Plaintiffs*,                        )
                                         )
    *vs.*                                )     1:11-cv-01431-JMS-DKL
                                         )
C&D TECHNOLOGIES, INC.                   )
    *Defendant*.                         )

## **ORDER**[1]

Presently pending before the Court are: (1) Plaintiffs' Second Motion for Partial Summary Judgment, [Filing No. 260]; and (2) Defendant C&D Technologies, Inc.'s ("C&D") Second Cross-Motion for Partial Summary Judgment, [Filing No. 262]. The Court held a hearing on the cross motions on March 12, 2014.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P.

---

[1] As part of the Court's pilot program regarding hyperlinking in Court filings, this Order contains hyperlinks to documents previously filed in this case and to legal authority. Instead of the citation format "dkt. __ at __" used previously in this case, the Court now uses "Filing No. __, at ECF p. __" as its citation format.

56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record

for evidence that is potentially relevant to the summary judgment motion before them," *Johnson, 325 F.3d at 898*. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan, 614 F.3d 684, 691 (7th Cir. 2010)*. On cross-motions for summary judgment, the Court construes facts and draws inferences "in favor of the party against whom the motion under consideration is made." *Keck Garrett & Associates, Inc. v. Nextel Communications, Inc., 517 F.3d 476, 483 (7th Cir. 2008)* (quoting *In re United Air Lines, Inc., 453 F.3d 463, 468 (7th Cir. 2006)*).

## II.
### BACKGROUND

The Court finds the following to be the undisputed facts, supported by admissible evidence in the record.[2]

### A. A Typical Day at C&D

C&D's Attica facility manufactures industrial batteries. [Filing No. 24, at ECF p. 3.] The manufacturing process at the Attica plant requires C&D's employees to work with toxic materials, particularly lead. [Filing No. 24, at ECF p. 3; Filing No. 78, at ECF p. 3.] Due to these toxic materials, both C&D and governmental regulations require that C&D employees change into and out of safety clothes and shower. [Filing No. 78, at ECF p. 3.]

C&D employees perform many duties during a typical work day, which are depicted in the following diagram:

---

[2] Some of the facts set forth herein were also set forth in the Court's October 3, 2012 Order granting in part and denying in party the parties' first Cross Motions for Partial Summary Judgment. [Filing No. 116.]

| "Pre-Donning Activities" | "Donning" | "Beginning Boundary Activities"[3] | "Work Period" | "Ending Boundary Activities" | "Doffing/ Washing" | "Post-Doffing Activities" |
|---|---|---|---|---|---|---|
| Arrive at plant | Change from personal clothes into safety clothes | Walk from locker room to safety gear area and pick up safety gear (only some employees) | Work on the production line | Doff safety gear (only some employees) | Doff safety clothes | Walk from locker room to "yellow time card area" |
| Punch yellow time card | | | | | Shower | |
| Walk to locker room | | | | Walk from work area to "white time card area" | Change back into personal clothes | Punch yellow time card |
| | | Walk to "white time card area" | | | | Exit plant |
| | | Punch white time card | | Punch white time card | | |
| | | Walk to work area | | | | |
| | | Don safety gear (only some employees) | | Walk to "wash out room" to return safety gear (only some employees) and vacuum safety clothing if desired | | |
| | | | | Walk to locker room | | |

[*See* Filing No. 78, at ECF pp. 3-4.]

## B. The Collective Bargaining Agreement

C&D's hourly manufacturing employees at the Attica facility have long been represented by the International Union of Electrical Workers, and Communication Workers of America IUE-CWA Local No. 84950 (the "Union") as their exclusive collective bargaining representative.

---

[3] The Court devised the term "Boundary Activities" because of the gap created by C&D's dual time card system, because activities within the gap came after and before the first and last principal activities of the day, and because they included more than just travel time.

[Filing No. 78, at ECF p. 1.] The 2007-2012 Collective Bargaining Agreement ("CBA") entered into by C&D and the Union provides:

**ARTICLE 18 – Health and Safety**

(B) To ensure and safeguard the health and safety of all employees the Company has installed and maintains certain protective facilities and provides time for their use. An allowance time of five (5) minutes is provided between the start of the shift and the time [an] employee must be at his work station for changing into acid resistant or dust proof clothing. In addition, a wash-up allowance time of five (5) minutes before lunch and ten (10) minutes wash-up and shower period before quitting time is given to all employees. A fifteen (15) minute rest period in the mid-morning and mid-afternoon is given to all employees. The allowances for changing clothes, wash-up, shower and rest periods must be observed for the purposes for which they are established.

[Filing No. 78, at ECF p. 2; Filing No. 78-1, at ECF p. 20.]

Simply put, based on the terms of the CBA, C&D compensates its employees for a 5-minute allowance for "Pre-Donning Activities," and "Donning," and a ten-minute allowance for "Doffing/Washing," and "Post-Doffing Activities."

### C. Compensating C&D Employees

C&D does not pay its employees based on time calculated from either the yellow time card punches or the white time card punches, both shown in the diagram above. [Filing No. 78, at ECF pp. 3-4.] Rather, it pays based on the eight-hour scheduled shift. [Filing No. 78, at ECF p. 4.] When the safety-related activities discussed above, such as walking from the locker room to the work area, vacuuming clothes, picking up or dropping off respirators or safety helmets, changing into and out of the C&D-issued safety clothing, and showering, occur during the employee's eight-hour shift, he or she is compensated for them. [Filing No. 78, at ECF p. 5.] When those activities run outside of the eight-hour shift, the employee is not compensated for any time over and above eight hours. [Filing No. 78, at ECF p. 5.] "Employees have never been paid based on the time between their yellow time card punches." [Filing No. 78, at ECF p. 3.]

The following diagram depicts the manner in which C&D represented (in a prior filing) that its employees were compensated during the relevant period:

| "Pre-Donning Activities" | "Donning" | "Beginning Boundary Activities" | "Work Period" | "Ending Boundary Activities" | "Doffing/ Washing" | "Post-Doffing Activities" |
|---|---|---|---|---|---|---|
| [-----------------------------------------------------][-------------------][------------------------------------------------------------------] |
| Paid for 5-Minute Allowance | | | | Paid for 10-Minute Allowance | | |
| [-----------------------------------------------------------------------------------------------------------------------------------------------------] |
| Paid for Eight Hours Total | | | | | | |

## D. The First Round of Partial Summary Judgment Motions

One of Plaintiffs' claims in this lawsuit is that C&D is violating the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), by failing to pay employees minimum and overtime wages for "donning and doffing" of safety clothing and equipment and washing up that occurs outside of the eight-hour shift. [Filing No. 24, at ECF pp. 9-10.] In their first Motion for Partial Summary Judgment, Plaintiffs argued that C&D violated the FLSA by paying its employees for donning, doffing, washing up, and changing based on the 5-minute allowance for the beginning of the day and the 10-minute allowance for the end of the day. [Filing No. 89, at ECF pp. 18-20.] The Court found that the CBA entered into between C&D and the Union "properly limited compensation for donning safety clothing at the beginning of a shift to a 5-minute allowance, and for showering at the end of a shift to a 10-minute allowance." [Filing No. 116, at ECF p. 12.] The Court also found that doffing safety clothing at the end of the day – while not specifically mentioned in the CBA – was properly included in the 10-minute end-of-day allowance "based on the fact that C&D has been compensating in that fashion since 1967,…and because the CBA's ten-minute allowance indicates that the issue of compensating for doffing likely arose at the bargaining table while the allowance time was being discussed." [Filing No. 116, at ECF p. 13.]

As for Beginning Boundary Activities (walking from the locker room to the safety gear area to pick up safety gear (only for some employees), walking to the "white time card area," punching the white time card, walking to the work area, and donning safety gear (again, only for some employees)) and Ending Boundary Activities (doffing safety gear (for some employees), walking from the work area to the "white time card area," punching the white time card, walking to the "wash out room" to return safety gear (for some employees) and vacuum safety clothing if desired, and walking to the locker room to begin the "Doffing/Washing" period), the Court found that C&D could not bargain to exclude compensation for those activities under either Section 203(o) or Section 254 of the FLSA.[4]  [Filing No. 116, at ECF pp. 14-17.]  It further found, however, that the acts of punching the white time card before arriving at the work station, donning safety gear such as a respirator (if necessary), doffing that safety gear, and punching the white time card after leaving the work station were all *de minimis* activities which are non-compensable under the FLSA.  [Filing No. 116, at ECF pp. 17-18.]  This left travel time in both the Beginning Boundary Activities and Ending Boundary Activities periods – specifically, walking from the locker room to the safety gear area to pick up safety gear (for some employees), walking to the "white time card area," walking to the work area to begin work on the line, walking from the work area to the "white time card area," walking to the "wash out room" to return safety gear and vacuum clothes (for some employees), and walking back to the locker room.  The Court found that, based on the record before it, it could not determine whether

---

[4] This finding is the subject of C&D's Motion to Consider Supplemental Authority, [Filing No. 271], which the Court has denied in an Order also entered this day.

those activities were *de minimis* and non-compensable, or compensable. [Filing No. 116, at ECF p. 18-19.][5]

Plaintiffs also argued that C&D was violating the FLSA by not paying employees based on the actual time worked, but instead paying by the length of their shift. This issue is the crux of the Cross Motions for Partial Summary Judgment that are currently pending before the Court. The Court found that nothing in the FLSA makes paying based on the length of the shift a *per se* violation of the FLSA, but explained:

> From the facts before the Court, it is not possible to determine whether paying based on the eight-hour shift violates the FLSA. If the time which elapses from the initial white time card punch to the ending white time card punch, plus the 5-minute and 10-minute allowances, and plus any other time within "Beginning Boundary Activities" and "Ending Boundary Activities" which ends up being compensable is less than or equal to eight hours, then C&D is not violating the FLSA. If that total time is greater than eight hours, then paying just for the eight-hour shift does violate the FLSA.

[Filing No. 116, at ECF pp. 20-21.]

### E.  Facts Adduced After the Court's Ruling on the First Round of Cross Motions for Partial Summary Judgment

The Cross Motions for Partial Summary Judgment currently pending before the Court focus on whether C&D has violated the FLSA by paying based on the eight-hour shift rather than on actual time worked, and present facts not before the Court when it decided the first round of

---

[5] The Court also found that the "Pre-Donning Activities" and "Post-Donning Activities" – which include punching the yellow time card upon arrival at the plant and walking to the locker room at the beginning of the shift, and walking from the locker room to the "yellow time card area" and punching the yellow time card upon exiting the plant – were  not compensable under Section 254 of the FLSA because "they take place either before the first principal activity ('Donning') or after the last principal activity ('Doffing/Washing')." [Filing No. 116, at ECF p. 19.]

Cross Motions for Partial Summary Judgment. The following facts have been uncovered since that first ruling, and are undisputed.[6]

> 1. *White Time Card Punches, Plus 5- and 10-Minute Allowances and Travel Time*

C&D has taken the position that its white time cards are more reliable than its yellow time cards in accurately measuring work time performed by Plaintiffs. [Filing No. 261-3, at ECF pp. 23-24 ("Q: Mr. Young, on behalf of the company, does the company believe its yellow time card system or its white time card system more accurately reflects the actual work time performed by the Plaintiffs? A: The white time card system").] After significant discovery and discussion, Plaintiffs and C&D agree that the average time that has elapsed between the white time card punches – which reflect the work an average plaintiff performed on the line – is 7.9639 hours (or, rounded to the nearest minute, 7 hours, 58 minutes) each shift, from punch in to punch out. [Filing No. 261-3, at ECF p. 25 ("Q: Okay. Does the company admit that the average white time card punch in to punch out based on the sample C&D selected to produce is 7.9639 hours? A: Yes").] This time does not include additional compensable time for clothes changing, showering, or travel time. [Filing No. 261-2, at ECF p. 9.]

Clothes changing and shower time is properly compensable with the 5-minute and 10-minute allowances. [Filing No. 116, at ECF pp. 11-14.] C&D did not, however, add 15 minutes for changing and shower time to the time worked shown on the white time cards. [Filing No.

---

[6] The Court notes that Plaintiffs cited to evidence by referring to the name of the exhibit, rather than filing the exhibits as attachments to the motion and then citing to them by their docket number in the brief. The Court's Practices and Procedures, [Filing No. 180], provide that, to the extent possible, exhibits should be filed as attachments to motions, so that the brief can then use the docket citation when citing to the exhibit, and that "[d]oing so significantly facilitates review of the motion." [Filing No. 180, at ECF p. 3.] Plaintiffs' counsel should comply with this practice in the future, as failure to do so makes the Court's review of the briefs unnecessarily cumbersome.

261-2, at ECF p. 9.] Adding 15 minutes, or .25 hours, to the agreed 7.9639 hours brings the total compensable hours to 8.2139 (or, rounded to the nearest minute, 8 hours, 13 minutes).

Based upon the Court's ruling on the first round of Cross Motions for Partial Summary Judgment, travel time would also need to be added to compensable time as long as it is not considered *de minimis*. [Filing No. 116, at ECF pp 16-19.] The parties disagree regarding the average travel time figure: C&D, based on a report submitted by Dr. Robert Radwin, [Filing No. 261-4, at ECF pp. 3-4], asserts that the average travel time for an entire work day is 3.43 minutes; Plaintiffs, based on measurements taken by C&D employee Rick Winchester, [Filing No. 261-5], assert that the average travel time for an entire work day is 8.343 minutes. Adding C&D's figure to the 8.2139 total thus far (the agreed 7.9639 hours for the white time card punch period, plus .25 hours for the 5-minute and 10-minute changing and showering allowances), yields 8.2711 hours (or, rounded to the nearest minute, 8 hours, 16 minutes). Using Plaintiffs' larger figure and adding it to the 8.2139 total yields 8.35295 hours (or, rounded to the nearest minute, 8 hours, 21 minutes).

The CBA requires C&D to pay Plaintiffs' wages at a rate of one and one-half times their "straight time average hourly rate" for any time worked in excess of eight hours in any 24-hour period during the regularly scheduled work week, or in excess of forty hours in any work week. [Filing No. 261-1, at ECF p. 6.] The CBA also provides that "an employee's straight time average hourly rate shall be determined by dividing his weekly straight time earnings by the straight time hours worked." [Filing No. 261-1, at ECF p. 6.][7]

---

[7] The CBA also contains provisions for the payment of time-and-a-half and double time for work performed on Saturdays or Sundays, under certain circumstances. [Filing No. 261-1, at ECF p. 6.]

## 2. *Lunch Breaks*

During the time period relevant to this lawsuit, C&D provided Plaintiffs with a paid 20-minute lunch break. [Filing No. 261-3, at ECF p. 3] Employees also receive a 5-minute wash-up allowance before lunch. [Filing No. 261-3, at ECF p. 3.] At an earlier time, however, C&D gave its employees a 30-minute unpaid lunch break, where employees were allowed to leave the factory. [Filing No. 261-3, at ECF pp. 6-7.] During the time that lunch breaks were 30 minutes and unpaid, C&D kept track of lunch periods on time cards by requiring employees to punch time cards out and punch time cards back in on days employees left the factory for the lunch break. [Filing No. 261-3, at ECF p. 6.]

The change from a 30-minute unpaid lunch break to a 20-minute paid lunch break took place sometime in 2006 or 2007, and was a result of negotiations between C&D and the Union. [Filing No. 261-3, at ECF p. 22 ("Q: And it was agreed to by the company with the plaintiffs who have a labor union that [the 20-minute lunch break] would be paid time; correct? A: Correct").] When lunch breaks changed to 20-minute paid breaks, C&D employees were not required to punch time cards out at the beginning of lunch and in at the end of lunch. [Filing No. 261-3, at ECF p. 17.] C&D does not currently maintain any records which would show whether Plaintiffs received a lunch break or instead worked through the lunch break on any given day. [Filing No. 261-3, at ECF p. 15.]

C&D has treated the 20-minute paid lunch breaks as "hours worked" under the FLSA. [Filing No. 261-3, at ECF pp. 13-14 ("Q: And as you speak on behalf of the company, does the company have any history or any record that would show that it ever treated during the period of time that [is] covered by the lawsuit…any record that it ever treated paid lunchtime as nonhours worked for purposes of calculating a regular rate for purposes of then calculating an overtime

rate of pay?  A: Not that I'm aware of"); ("Q: The company has treated paid lunch hours as simply minutes during the workday just as they would treat the paid breaks or other activities; correct?  A:  Correct"); Filing No. 261-3, at ECF pp. 21-23.]  C&D does not have any records indicating that it provided employees with extra compensation if they worked through their 20-minute paid lunch break.  [Filing No. 261-3, at ECF pp. 19-20.]

### III.
#### DISCUSSION

Plaintiffs argue that the white time card data shows that C&D is violating the FLSA by underpaying its employees.  [Filing No. 261, at ECF pp. 14-21.]  Specifically, Plaintiffs assert that the average time that elapses between white time card punches (7.9639 hours), plus the 5- and 10-minute allowances for changing and showering, adds up to 8.2139 hours, which exceeds 8 hours by 13 minutes.  [Filing No. 261, at ECF p. 17.]  Plaintiffs further note that adding the travel time in the "Beginning Boundary Activities" and the "Ending Boundary Activities" increases that total even more.  [Filing No. 261, at ECF pp. 17-18.]

In response and in support of its own Motion for Partial Summary Judgment, C&D asserts the following:

- Measuring production time by looking at the time that elapsed between the white time card punches is "not without flaw" because "neither the front end nor the back end punch times on the white cards show a precise minute-to-minute measurement of when production work would begin and when it would end," [Filing No. 263, at ECF pp. 20-22];

- Time spent traveling during Beginning Boundary Activities and Ending Boundary Activities is *de minimis*, [Filing No. 263, at ECF pp. 19-20];

- Plaintiffs' lunch breaks do not constitute compensable hours worked, and so should not be counted – essentially, that 20 minutes should be subtracted from the figure representing the time elapsed between the white time card punches, plus the allowances, plus the travel time, [Filing No. 263, at ECF pp. 9-18];

- Even if the white time card data is used and the allowances are added to that figure, work time is less than eight hours due to subtracting the lunch break and not including any travel time, [Filing No. 263, at ECF p. 22 ("the actual working day of Plaintiffs was indeed eight hours, give or take a minute or two")];

- Plaintiffs are not entitled to additional compensation for unpaid time worked under 40 hours ("Gap Time") in any given workweek, because there is no minimum wage violation since the average wage rate is over $20 per hour, [Filing No. 263, at ECF p. 18];

- C&D is entitled to offsets for premium payments provided by shift differentials, which is "a premium rate paid for hours worked in excess of eight (8) per day and hours worked on the sixth or seventh day of the workweek even when the employees worked fewer than 40 hours per workweek," [Filing No. 263, at ECF p. 23];

- Plaintiffs are not entitled to liquidated damages because C&D acted in good faith with reasonable grounds to believe its actions did not violate the FLSA, [Filing No. 263, at ECF pp. 23-26]; and

- A two-year statute of limitations applies rather than a three-year statute of limitations, [Filing No. 263, at ECF pp. 26-27].

Plaintiffs readily concede on reply that C&D will be entitled to some offset credits against unpaid overtime damages based on premium payments it made to some plaintiffs. [Filing No. 266, at pp. 16-17.]  Plaintiffs argue, however, that C&D is not entitled to a 20-minute credit for the lunch break because: (1) C&D has admitted it treated lunch breaks as hours worked; (2) C&D is bound by the testimony of its Fed. R. Civ. P. 30(b)(6) witness, and cannot create an issue of material fact by submitting affidavits which contradict that testimony; (3) the lunch break is not a bona fide meal period under the FLSA; (4) it is irrelevant that C&D's agreement with the Union to treat the lunch break as hours worked is not in writing; (5) C&D did not subtract lunch breaks from total hours and recalculate each plaintiff's regular rate of pay when determining a rate and determining if enough hours were worked to pay overtime compensation; and (6) C&D has no evidence of any bona fide meal period taken by any Plaintiff

or any other credit against unpaid overtime hours related to lunch breaks. [Filing No. 266, at ECF pp. 18-28.]

Plaintiffs also argue that there remain genuine issues of fact precluding summary judgment on the issues of whether they are entitled to liquidated damages and whether the three year statute of limitations should apply to their claims. They further argue that C&D's Gap Time argument relates to damages and not liability, that travel time is not *de minimis*, and that Dr. Radwin's report is not reliable. [Filing No. 266, at ECF pp. 28-38.]

In its surreply, C&D argues that it never admitted it treated meal breaks as compensable hours worked, that Plaintiffs did not address its arguments relating to 29 C.F.R. § 778.320, that there was no agreement to treat meal breaks as hours worked, and that "it is doubtful that any damages would be owed to Plaintiffs" if payment for meal breaks are included in the regular rate and deemed non-working time. [Filing No. 267, at ECF pp. 2-7.] It also asserts that liquidated damages and a three-year statute of limitations are inappropriate, that C&D is entitled to offsets for premium payments, that Plaintiffs are not entitled to recover for Gap Time, that time spent after the paid meal time, Gap Time, and offsets are taken into account is *de minimis*, and that Dr. Radwin's testimony and report are not flawed. [Filing No. 267, at ECF pp. 7-9.]

### A. Paying Based on an Eight-Hour Shift

#### *1. What the White Time Card Data Shows*

C&D has taken the position that using the white time cards is the best way to measure actual time worked by its employees, rather than using the yellow time cards. [*See, e.g.*, Filing No. 261-3, at ECF pp. 23-24.] It is undisputed that the average time which elapses between employees punching in their white time cards and punching out their white time cards is 7.9639 hours (or, rounded to the nearest minute, 7 hours, 58 minutes). [Filing No. 261-3, at ECF pp. 24-

25.]  The Court has already found that C&D may compensate employees for changing and showering by paying them for a 15-minute allowance (a 5-minute allowance at the beginning of the day, and a 10-minute allowance at the end of the day).  [Filing No. 116, at ECF p. 12.] Adding .25 hours to the 7.9639 average brings the total time per day to 8.2139 (or, rounded to the nearest minute, 8 hours, 13 minutes).

The Court has also found that C&D must compensate employees for the travel time encompassed in the "Beginning Boundary Activities" and "Ending Boundary Activities" periods, to the extent those times are not *de minimis*.  [Filing No. 116, at ECF pp. 15-19.]  Using C&D's lower travel time figure of 3.43 minutes, or .0572 hours, the total rises to 8.2711 hours (or, rounded to the nearest minute, 8 hours, 16 minutes).  Using Plaintiffs' higher travel time figure of 8.343 minutes, or .13905 hours, the total rises to 8.35295 hours (or, rounded to the nearest minute, 8 hours, 21 minutes).  Either way, the white time card punches show that C&D employees' compensable time exceeds eight hours.

### 2. Travel Time

Plaintiffs and C&D have submitted conflicting evidence regarding the length of the time spent traveling during the Beginning Boundary Activities and Ending Boundary Activities periods.  Plaintiffs submit testimony from C&D employee Rick Winchester, who measured his total daily travel time to be 8.343 minutes.  [Filing No. 261-5.]  C&D submits a report from Dr. Robert Radwin which states that the average total daily travel time is only 3.43 minutes.  [Filing No. 262-12, at ECF pp. 28-43.]  There is a factual dispute regarding the average total daily travel time and, accordingly, the Court will not grant summary judgment regarding which amount should be used.

The Court will consider whether the time spent traveling during the Beginning Boundary Activities and Ending Boundary Activities periods is *de minimis* based on either figure, and whether it must be compensated. Under the *de minimis* doctrine, time that is otherwise compensable need not be included in the "hours worked" calculation where the time period "as a practical administrative matter, cannot be adequately recorded for payroll purposes." *Alexander v. Wackenhut Corp.*, 2008 WL 2697163, *6 (E.D. La. 2008). As the United States Supreme Court noted in *Sandifer v. United States Steel Corporation*, --- U.S. ---, 134 S. Ct. 870, 187 L. Ed. 2d 729 (2014), however, "[a] *de minimis* doctrine does not fit comfortably within the statute at issue here, which, it can fairly be said, is *all about* trifles – the relatively insignificant periods of time in which employees wash up and put on various items of clothing needed for jobs. Or to put it in the context of the present case, there is no more reason to *disregard* the minute or so necessary to put on glasses, earplugs, and respirators, than there is to *regard* the minute or so necessary to put on a snood." *Id.* at 880 (emphasis in original). In determining whether the *de minimis* doctrine applies, courts consider "the amount of time spent on the extra work, the practical administrative difficulties of recording additional time, the regularity with which the additional work is performed, and the aggregate amount of compensable time." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176 (7th Cir. 2011).

Consideration of these factors leads the Court to conclude that the time spent traveling within the Beginning Boundary Activities and Ending Boundary Activities periods is not *de minimis*. The amount of time spent in those activities is disputed by the parties, and likely lies somewhere in the range of 3.43 minutes to 8.343 minutes. Even though C&D's lower figure of 3.43 minutes for travel time may seem small, C&D has not presented any evidence demonstrating "the practical administrative difficulties of recording" the time. Indeed, the white

time cards already capture some of this time (walking from the white time card area to the work area at the beginning of the day, and walking from the work area to the white time card area at the end of the day), and C&D may have already devised[8] a punch card system to capture all of the travel time within the Beginning Boundary Activities and Ending Boundary Activities periods (including walking from the locker room to the white time card area at the beginning of the day, and walking from the white time card area to the locker room at the end of the day).[9] The fact that C&D employees engage in the same pattern of activity every day also indicates that it would be possible to measure how much time all of that activity takes. *See, e.g., id.* at 176-77 ("Since [plaintiff] testified that she typically performed the same kinds of activities every day, it would have been possible to compute how much time [she] spent on compensable activities"); 29 C.F.R. § 785.47 ("An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him"). Because C&D can

---

[8] At oral argument counsel for C&D acknowledged that it had moved the white card punch clock closer to the donning and doffing/shower location. This change caused Plaintiffs to cap their request for damages as of February, 2013, as C&D began paying from white card punch to white card punch plus the 15 minutes for donning and doffing.

[9] The Court is mindful of its finding in connection with the first round of Cross Motions for Partial Summary Judgment that time spent donning and doffing respirators (for those employees who use them) is *de minimis*. [Filing No. 116, at ECF pp. 17-18.] When the Court made that finding, there was no evidence before it regarding how long it took to accomplish any of the activities included in Beginning Boundary Activities and Ending Boundary Activities, such as any of the time spent traveling. While the evidence now before the Court lends some clarity to that issue – or at least presents the parties' differing points of view on the issue – and to the issue of how feasible it was to measure the entire amount of time spent in Beginning Boundary Activities and Ending Boundary Activities (through the newly-located white card punch clocks), Plaintiffs have not asked the Court to reconsider whether time spent donning and doffing respirators is, in fact, *de minimis*.

measure the time spent traveling within the Beginning Boundary Activities and Ending Boundary Activities periods, it is not *de minimis* and must be compensated.[10]

### 3. Lunch Breaks

C&D's primary attempt to bring the total amount of compensable time under eight hours is its argument that Plaintiffs' 20-minute lunch break does not constitute hours worked. [*See* Filing No. 263, at ECF pp. 9-18.] C&D argues that meal periods ordinarily do not constitute compensable hours worked under the FLSA if "the employee's time is not spent predominantly for the employer's benefit." [Filing No. 263, at ECF p. 10.] C&D goes on to cite 29 C.F.R. § 785.19, which provides that certain meal periods of less than 30 minutes may be excluded from worktime "under special conditions." 29 C.F.R. § 785.19(a). [Filing No. 263, at ECF pp. 11-13.] C&D also argues that 29 C.F.R. § 778.320 does not make the lunch breaks compensable hours worked. [Filing No. 263, at ECF pp. 13-17.]

Plaintiffs argue that the 20-minute lunch break has always been paid, and should be considered hours worked. [Filing No. 261, at ECF pp. 21-33.] While the Court ultimately agrees that the lunch break should be treated as hours worked, the issue is not quite as clear-cut as Plaintiffs paint it.

At the outset, the Court rejects C&D's attempt to categorize the 5-minute allowance for washing up before the lunch break as part of a noncompensable lunch break totaling 25 minutes. [*See* Filing No. 263, at ECF pp. 11-12.] The 5-minute allowance is to comply with OSHA regulations by allowing employees to wash up from working with lead before eating, which is

---

[10] The Court also finds significant the fact that time spent traveling within the Beginning Boundary Activities and Ending Boundary Activities periods when aggregated for all C&D employees – even using C&D's lower average figure of 3.43 minutes – is substantial. With 195 employees, using C&D's figure would yield 668.85 unpaid minutes total per day. And, for one employee, the lower figure of 3.43 minutes would still add over 15 minutes per week to that employee's total time worked.

not a trivial process, and is covered by a 5-minute allowance provided by C&D.  It is not part of a meal break.  *Cf. Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 216 (4th Cir. 2009), relied upon by C&D, which held that "donning and doffing a few items, washing, and walking to and from the cafeteria" was "non-compensable…because it is part of a bona fide meal period."  Here, unlike in *Sepulveda*, C&D has given its employees a 5-minute allowance to accomplish the important task of washing lead off of their hands before eating.  C&D has not provided any legal authority to support the proposition that the 5-minute allowance is really part of the 20-minute lunch break, and should be combined with it to form a 25-minute lunch break.  The lunch break is properly considered to be 20 minutes and, as such, is compensable under 29 C.F.R. § 785.18 ("Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry….They must be counted as hours worked").

Even if the lunch break were considered to be 25 minutes, so that 29 C.F.R. § 785.18 did not apply, the Court finds that the lunch break would still be compensable.  According to C&D's own Rule 30(b)(6) witness, the lunch break has always been paid since it was reduced from a 30-minute break.  [Filing No. 261-3, at ECF p. 3; Filing No. 261-3, at ECF p. 14; Filing No. 261-3, at ECF pp. 21-23.]  Further, C&D's Rule 30(b)(6) witness testified that C&D does not have any documents to support a contention that lunch breaks were treated as anything other than hours worked.  [Filing No. 261-3, at ECF pp. 13-14 ("Q: And as you speak on behalf of the company, does the company have any history or any record that would show that it ever treated during the period of time that [is] covered by the lawsuit…any record that it ever treated paid lunchtime as nonhours worked for purposes of calculating a regular rate for purposes of then calculating an overtime rate of pay?  A: Not that I'm aware of").]  And C&D has not presented any evidence that there was an agreement to treat the lunch break time as anything other than hours worked,

and indeed testified through its corporate representative that it had an agreement with Plaintiffs, who are represented by the Union, to treat the lunch break as paid time. [Filing No. 261-3, at ECF p. 22.[11]

C&D still argues, however, that even if employees were historically paid for the lunch breaks, that does not necessarily mean that the lunch breaks were treated as hours worked. [*See, e.g.*, Filing No. 263, at ECF p. 14.][12] 29 C.F.R. § 785.19 provides:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest period. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions….

C&D sets forth these "special conditions," which it contends include "(1) work-related interruptions to the meal period are sporadic and minimal; (2) employees have sufficient time to

---

[11] The Court finds C&D's assertion that any agreement regarding the lunch breaks was not in writing, [Filing No. 263, at ECF p. 5], irrelevant. The Court also rejects C&D's attempt to categorize the decision to switch to a shorter, unpaid lunch break as "unilateral," [*see, e.g.*, Filing No. 267, at ECF p. 4]. The Affidavit C&D submits to support that contention only states that C&D changed the lunch break from 30 minutes to 20 minutes and a 5 minute wash-up time, but does not state that the decision was "unilateral." [Filing No. 262-2, at ECF p. 3.]

[12] C&D cites several cases to support its argument that the lunch break is a bona fide meal period and should be treated as non-compensable. Those cases, however, are all distinguishable from this one in significant ways. *See, e.g., Barefield v. Village of Winnetka*, 81 F.3d 704, 711 (7th Cir. 1996) (lunch break was 30 minutes and, while court held that paying for lunch breaks does not necessarily transform it into "work" time, it also noted that the employer "paid the employees overtime only when their work time actually exceeded eight hours in a day" – C&D did not, but instead included the lunch break in the total of hours paid at the regular rate); *Lee v. Coahoma County*, 937 F.2d 220 (5th Cir. 1991) (holding lunch break for law enforcement personnel that often lasted less than 30 minutes was non-compensable bona fide meal period because employees logged off at beginning of time and were not on duty, and fact that they could be called if an emergency arose did not mean that they remained on duty. Employees were not compensated for time, so there was no issue relating to being paid for noncompensable time. Additionally, court based its decision, at least in part, on 29 C.F.R. § 553.223, which relates specifically to meal breaks for law enforcement personnel and is not relevant here); *Blain v. Gen. Elec. Co.*, 371 F.Supp. 857 (W.D. Ky. 1971) (employer and employee agreed to 18-minute meal period but, unlike here, there was never an agreement that employees would be paid for it).

eat a regular meal; (3) the period involved is a break to eat a full meal, comes at a time of the day or shift that meals are normally consumed, and occurs with no more frequency than is customary; (4) there is an agreement between the employees and employer that the period of less than 30 minutes is sufficient to eat a regular meal; and (5) applicable state or local laws do not require meal periods in excess of the period indicated." [Filing No. 263, at ECF pp. 11-12.]

Here, the fourth factor is the only factor in dispute. As to the fourth factor, there is no evidence that C&D and its employees agreed that the lunch break should be considered a bona fide meal period. Indeed, the evidence establishes that C&D and its employees intended that the lunch break would be compensated as paid hours worked. [Filing No. 261-3, at ECF p. 22 ("Q: And it was agreed to by the company with the plaintiffs who have a labor union that [the 20-minute lunch break] would be paid time; correct? A: Correct").]

Even if the lunch break were considered a bona fide meal period under 29 C.F.R. § 785.19, an analysis under 29 C.F.R. § 778.320 also leads the Court to conclude that the lunch break was compensable hours worked. 29 C.F.R. § 778.320 provides that the employer and employee can agree to include as hours worked time that would not otherwise be hours worked if not paid for, 29 C.F.R. § 778.320(a), or can agree not to treat that time as hours worked, 29 C.F.R. § 778.320(b). In determining whether such an agreement exists, 29 C.F.R. § 778.320 instructs that "[t]he agreement of the parties to provide compensation for such hours may or may not convert them into hours worked, depending on whether or not it appears from all the pertinent facts that the parties have agreed to treat such time as hours worked."

As discussed above, the Court has concluded that there is no evidence that C&D and the Union agreed to treat the lunch break time as anything other than hours worked, so 29 C.F.R. § 778.320(b) does not apply. And, in any event, C&D has not kept the records it would need to

keep in order to invoke the provisions of 29 C.F.R. § 778.320(b). The regulation provides that "[t]he payment for such hours cannot, of course, qualify as overtime premiums creditable toward overtime compensation under section 7(h) of the Act," and that "payments for such time will be regarded as qualifying for exclusion from the regular rate under the provisions of section 7(e)(2)…." 29 C.F.R. § 778.320(b). The undisputed evidence establishes that C&D did not keep track of lunch break time – it did not require employees to clock out for the lunch break and then back in, did not otherwise monitor whether employees took a lunch break, and did not compensate employees extra when they worked through or skipped a lunch break. [Filing No. 261-3, at ECF pp. 19-20; Filing No. 261-3, at ECF p. 23; Filing No. 261-2, at ECF pp. 14-15.] And further, C&D's 30(b)(6) witness testified that C&D does not have "any history or any record…that it ever treated paid lunchtime as nonhours worked for purposes of calculating a regular rate for purposes of then calculating an overtime rate of pay." [Filing No. 261-3, at ECF p. 13; *see also* Filing No. 261-2, at ECF pp. 10-11 (C&D's Payroll Administrator testified that a nonincentive employee would be paid for the lunch break at the same regular hourly rate of pay as for other job duties).] Therefore, C&D cannot invoke 29 C.F.R. § 778.320(b) because – absent these records – it cannot comply with the regulation's requirements regarding overtime premiums and exclusion from the regular rate.

The Court finds that as a matter of law, the lunch break is compensable hours worked. There is no evidence that C&D and its employees, through the Union, agreed to treat that time as a noncompensable bona fide meal period. Moreover, there is no evidence that C&D kept records showing that it tracked lunch breaks and/or excluded that time from the regular rate of pay or from overtime premiums creditable toward overtime compensation, as it would have been required to do to invoke the provisions of 29 C.F.R. § 778.320(b).

### 4. Gap Time Credit

C&D argues that it is entitled to a credit for Gap Time because "the only time under the FLSA compensation is due for work performed of less than 40 hours per week is when there is a minimum wage violation," and there is no minimum wage violation because all of C&D's hourly production workers make "far greater than the minimum wage of $7.25/hour." [Filing No. 267, at ECF p. 8.] Plaintiffs contend that the Gap Time issue is really a damages issue and not a question of liability, and that "most of the weeks at issue involved weeks in which Plaintiffs worked more than forty (40) hours and were paid at least forty (40) hours." [Filing No. 266, at ECF pp. 33-34.]

Gap Time is the time for which employees worked and were not paid, but when added to the total time worked still would not make that total exceed the threshold for overtime under the FLSA. *See Braddock v. Madison County, 34 F.Supp.2d 1098, 1101 (S.D. Ind. 1998).* C&D argues that, even when adding in Gap Time, the hourly wage would still exceed the minimum wage of $7.50 per hour so C&D is not required to compensate Plaintiffs for Gap Time. [Filing No. 263, at ECF p. 18 (citing *Braddock, 34 F.Supp.2d 1098; Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 115 (2d Cir. 2013)* ("An employee who has not worked overtime has no claim under FLSA for hours worked below the 40-hour overtime threshold, unless the average hourly wage falls below the federal minimum wage").] Plaintiffs argue, on the other hand, that employees are entitled to straight pay for Gap Time, regardless of whether averaging the hourly wage would still be above minimum wage. [Filing No. 266, at ECF pp. 33-34 (citing *Lamon v. Shawnee, 972 F.2d 1145 (10th Cir. 1992)* (plaintiffs entitled to regular rate for Gap Time hours up to overtime threshold); *Schmitt v. Kansas, 844 F.Supp. 1449 (D. Kan. 1994)* (same principle).]

It does not appear that the United States Supreme Court or the Seventh Circuit Court of Appeals has ruled upon the issue of how compensation for Gap Time is calculated. While there is some disagreement among other circuits, the Court follows the reasoning in *Braddock*, 34 F.Supp.2d 1098, a case decided by Judge Hamilton while he served as a district judge within this district. There, employees sought compensation at their regular (or straight time) rate for, among other things, Gap Time – hours they worked above the minimum scheduled 35 hours per week but below the 40-hour overtime threshold. *Id.* at 1109. The *Braddock* court agreed with the Fourth Circuit Court of Appeals analysis in *Monahan v. County of Chesterfield*, 95 F.3d 1263 (4th Cir. 1996), stating:

> The FLSA does not provide a federal remedy for any and all breaches of payment obligations under employment contracts. The core rights and obligations the FLSA creates are the minimum wage levels and entitlement to overtime pay for work above specified maximum hours set forth in 29 U.S.C. §§ 206 and 207….There is no doubt that the plaintiffs in this case have been the victims of FLSA violations of their right to overtime pay for hours worked above the 40 hour threshold that applies to most employees under the FLSA. The court will award relief for those violations. But with or without that relief, these plaintiffs do not claim that their compensation ever fell below the minimum wage required by the FLSA.

*Braddock*, 34 F.Supp.2d at 1112. *See also Monahan*, 95 F.3d at 1273 ("if the mutually agreed upon terms of an employment agreement do not violate the FLSA's minimum wage/maximum hour mandates and provide compensation for all nonovertime hours up to the overtime threshold, there can be no viable claim for straight gap time under the FLSA if all hours worked above the threshold have been properly compensated at a proper overtime rate").

The Court agrees with the *Braddock* Court's reasoning, which is consistent with the FLSA's dual purpose of setting minimum wage levels and guaranteeing overtime pay for work above the overtime threshold. Accordingly, the Court grants C&D's Partial Motion for Summary Judgment to the extent that, should it be determined that any Plaintiffs were not

compensated for Gap Time, C&D will only owe wages for that time to the extent that the average hourly rate for time worked during the relevant period falls below the minimum wage.[13]

### 5.  *Premium Payments Offset*

C&D argues that it paid extra compensation, through a premium rate, for "shift deferentials, hours worked in excess of eight (8) per day and hours worked on the sixth or seventh day of the workweek."  [Filing No. 263, at ECF p. 23.]  Plaintiffs "openly concede[] that C&D will be entitled to some offset credits against unpaid overtime damages based upon premium payments it made to some of the Plaintiffs," but that "[t]his is not an issue which can be resolved on summary judgment, however, as Section 7(h)(2) offset credits must only be applied on a pay period by pay period basis and can only apply as an offset in pay periods when overtime is already owed."  [Filing No. 266, at ECF p. 16.]

29 U.S.C. § 207(h)(2) provides that "Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this section."  Paragraphs 5 and 6 relate to extra compensation provided by a premium rate paid for "certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee…or in excess of the employee's normal working hours or regular working hours…" or for "work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in

---

[13] The Court notes Plaintiffs' statement that "most of the weeks at issue involved weeks in which Plaintiffs worked more than forty (40) hours and were paid at least forty (40) hours.  In many weeks, many of the plaintiffs worked significant overtime hours over forty (40) in a week.  The additional compensation owed based upon unpaid clothes changing, showering and travel time will all be overtime compensation owed and C&D has conceded that it is liable for this unpaid time…."  [Filing No. 266, at ECF p. 33.]

nonovertime hours on other days." 29 U.S.C. § 207(e)(5), (6). *See also* 29 C.F.R. § 778.201(c) ("Section 7(h) of the [FLSA] specifically states that the extra compensation provided by these three types of [premium] payments may be credited toward overtime compensation due under section 7(a) for work in excess of the applicable maximum hours standard").

C&D's request for summary judgment on this issue is not supported by any evidence regarding particular Plaintiffs, but only by general statements that C&D, pursuant to the CBA, pays "extra compensation, through a premium rate, for shift differentials, hours worked in excess of eight (8) per day, and hours worked on the sixth or seventh day of the workweek in each case whether or not an employee worked in excess of 40 hours in a workweek." [Filing No. 262-2, at ECF p. 4.] Accordingly, the Court grants summary judgment in favor of C&D only to the extent that it finds – and Plaintiffs agree – that C&D will be entitled to premium payments offset credits where C&D shows that, for a particular Plaintiff, the requirements for the application of 29 U.S.C. § 207(h)(2) have been met.

In sum, because the white time card data (which the parties have agreed to use to measure the average time worked) shows that the average amount of hours worked, plus the 5- and 10-minute allowances, exceeds eight hours, the Court finds that C&D's practice of compensating employees based on the eight-hour shift rather than on actual hours worked violates the FLSA as a matter of law, and grants summary judgment in favor of Plaintiffs on that issue. Plaintiffs' lunch breaks have been, and are, treated as compensable time and cannot be subtracted from the total hours worked. Further, C&D must compensate its employees for travel time occurring during the Beginning Boundary Activities and Ending Boundary Activities periods, although the Court cannot conclude as a matter of law what that average travel time is. Plaintiffs are only entitled to payment for Gap Time to the extent that including Gap Time results in an average

hourly payment for the relevant time period that falls below the minimum wage. Additionally, C&D is entitled to premium payments offsets for those Plaintiffs who C&D can show meet the requirements of 29 U.S.C. § 207(h)(2).

### B. Liquidated Damages

C&D argues that Plaintiffs are not entitled to liquidated damages because it acted in good faith, and with reasonable grounds to believe its actions did not violate the FLSA. [Filing No. 263, at ECF pp. 23-26.] Specifically, C&D argues that Sections 254 and 203(o) were passed to expand bargaining rights and the Court's Order on the first round of Cross Motions for Partial Summary Judgment restricts bargaining and requires sequential bargaining; that C&D had no reason to believe the Court would interpret those two sections the way that it did; that C&D's "worst crime in this case appears to be lax enforcement of punch in and out practices by Plaintiffs on white timecards;" and that the FLSA's regulations regarding the lunch break are "at best not entirely clear on that question." [Filing No. 263, at ECF pp. 25-26.]

Plaintiffs respond that it is C&D's burden to show that it acted in good faith, that C&D kept yellow cards but did not use them, that it did not use the white time cards to pay Plaintiffs, that it promised to pay Plaintiffs for the 5- and 10-minute allowances but instead only paid by scheduled hours of work, that it represented to the Court that it added the allowances to the white time card measured time but really it did not, and that on average C&D underpaid each Plaintiff by 16.27 minutes or more every shift. [Filing No. 266, at ECF pp. 28-31.]

Under the FLSA, "liquidated damages are mandatory, unless the trial court determines that the employer, while acting in good faith, reasonably believed that its conduct was consistent with the law." *Jackson v. Go-Tane Servs.*, 56 Fed. Appx. 267, 273 (7th Cir. 2003). *See also* 29 U.S.C. § 260 ("if the employer shows to the satisfaction of the court that the act or omission

giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 16 of such Act"). An employer seeking to avoid the award of liquidated damages under the FLSA "bears a *substantial burden* in showing that it acted reasonably and with good faith." *Bankston v. Illinois*, 60 F.3d 1249, 1254 (7th Cir. 1995) (emphasis added).

Based on the record before it, the Court cannot conclude as a matter of law that C&D acted reasonably and with good faith. Indeed, the Court points to two circumstances which weigh against that conclusion: first, that C&D failed to add the 5- and 10-minute allowances to the white time card punch times, and second, that C&D kept two sets of time cards, and did not use either of them to calculate the actual amount of time its employees were working. Additionally, C&D has not presented any evidence that it did any spot checks or data analysis to see if paying based on the eight-hour scheduled work day was fully compensating employees, or that it sought any guidance from counsel regarding whether its payment practice complied with the FLSA. *See, e.g., Braddock*, 34 F.Supp.2d at 1113 (where employer received advice from attorney that employees were entitled to receive compensation and "took no action to comply with the advice of that attorney," employer did not meet burden of showing that its FLSA violations were reasonable and in good faith). For those reasons, the Court denies C&D's Partial Motion for Summary Judgment requesting a finding that Plaintiffs are not entitled to liquidated damages, and leaves that issue for trial.

### C. Statute of Limitations

C&D seeks summary judgment on its argument that a two-year statute of limitation applies to Plaintiffs' claims, rather than a three-year period. It argues that Plaintiffs have the

burden of showing that C&D's violation of the FLSA was willful, and that the violation here was not because "C&D acted pursuant to a collective bargaining agreement and language in the agreement that had existed unchallenged and unchanged for at least fifty years." [Filing No. 263, at ECF p. 27.] It also asserts that the Court's decision on the first round of Cross Motions for Partial Summary Judgment "is the first decision on this particular issue." [Filing No. 263, at ECF p. 27.]

Plaintiffs respond that "C&D essentially argues that it could not have willfully violated the FLSA because it got away with its wage violations for so many years without a lawsuit or grievance from its employees." [Filing No. 266, at ECF p. 31.] Plaintiffs argue that C&D disregarded the two types of time cards it used, choosing instead to underpay them based on scheduled hours of work, which was a reckless disregard of the FLSA. [Filing No. 266, at ECF p. 32.] Plaintiffs also point to C&D's representation to the Court in connection with the first round of Cross Motions for Partial Summary Judgment that it used the white time cards to measure Plaintiffs' time and added fifteen more paid minutes. [Filing No. 266, at ECF p. 32.][14] Plaintiffs assert that "C&D presents no evidence that it made any inquiry into the legality of its wage practices – using schedules instead of available time cards." [Filing No. 266, at ECF pp. 32-33.]

_____

[14] The Court is disturbed that C&D made this representation, which proved to be inaccurate. C&D's counsel stated at the March 12, 2014 hearing that the representation was based on an examination of Plaintiff Joshua Jones' time records, which seemed to indicate that the time between his white time cards plus the 5- and 10-minute allowances was less than eight hours. The Court is concerned that counsel did not analyze a broader sample of time records – all in the client's possession – or ask C&D's payroll administrator what C&D's practice was. Either path would have uncovered the inaccuracy of the representation. Further, counsel is reminded that Fed. R. Civ. P. 11 provides that, by presenting a paper to the court, counsel is certifying "that to the best of [counsel's] knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*…the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery…." (emphasis added).

29 U.S.C. § 255(a) provides that where the cause of action accrues on or after the date of enactment of the FLSA, an action "may be commenced within two years after the cause of action accrued…, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." Plaintiffs bear the burden of showing that C&D's conduct was willful for purposes of the statute of limitations. *See Walton v. United Consumers Club*, 786 F.2d 303, 310 (7th Cir. 1986). "It is the jury's province to decide which limitations period, two or three years, applies in light of the plaintiffs' evidence that the defendants acted willfully." *Bankston*, 60 F.3d at 1253-54 (noting that "[i]t is easier for a plaintiff to receive liquidated damages under the FLSA than it is to extend the statute of limitations for FLSA claims"). An employer acts willfully in this context when it "knows or shows reckless disregard for whether [its] actions are unlawful under the FLSA." *Id.* at 1253 (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

Like the liquidated damages issue, the Court denies C&D's Motion for Partial Summary Judgment on the statute of limitations issue because it cannot conclude as a matter of law that C&D did not act willfully. While the circumstances discussed above surrounding C&D's time payment system may tend to indicate willfulness, the Court finds that this issue is more properly considered at trial rather than on summary judgment.

## IV.
### CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiffs' Second Motion for Partial Summary Judgment, [Filing No. 260], to the extent that – based on the average white time card punches, which the parties agreed to use as a measure of average hours worked – it finds that C&D's practice of compensating employees based on the eight-hour shift rather than on actual hours worked violates the FLSA as a matter of law. The Court also **GRANTS** Plaintiffs' Second

Motion for Partial Summary Judgment, [Filing No. 260], and **DENIES** C&D's Second Cross-Motion for Partial Summary Judgment, [Filing No. 262], to the extent that it finds that Plaintiffs' 20-minute lunch breaks have been, and are, treated as compensable time and cannot be subtracted from the total hours worked.

Further, the Court **DENIES** C&D's Second Cross-Motion for Partial Summary Judgment, [Filing No. 262], to the extent that travel time occurring within the Beginning Boundary Activities and Ending Boundary Activities periods is not *de minimis* and must be compensated. The Court **GRANTS IN PART** C&D's Second Cross-Motion for Partial Summary Judgment, [Filing No. 262], to the extent that it finds that Plaintiffs are only entitled to payment for Gap Time to the extent that including Gap Time results in an average hourly payment for the relevant time period that falls below the minimum wage, and that C&D is entitled to premium payments offsets for those Plaintiffs who C&D can meet the requirements for application of 29 U.S.C. § 7(h)(2). Finally, the Court **DENIES** C&D's Second Cross-Motion for Partial Summary Judgment, [Filing No. 262], to the extent that it finds that genuine issues of fact remain on both the liquidated damages and statute of limitations issues.

**Distribution via ECF only to all counsel of record**